1  **JENNIFER HOLLIDAY, ESQ. (SBN 261343)**

2  7190 W. Sunset Blvd. #1430

3  Los Angeles, CA 90046

4  jhollidayesq@protonmail.com

5  dir. (805) 622-0225

6

7

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| No. | |
| Genevieve Morton, an individual, | **COMPLAINT** |
| v. | 1. COPYRIGHT INFRINGEMENT, 17 U.S.C. §106; |
| Twitter, Inc., a Delaware Corporation; SpyIRL.com; Does 1-100. | 2. SESTA-FOSTA; 17 U.S.C. § 1595 |
| | 3. RIGHT OF PUBLICITY, CALIFORNIA CIVIL CODE § 3344 |
| | 4. FALSE ADVERTISING, 15 U.S.C. § 1125 |
| | 5. FALSE LIGHT |
| | 6. DEFAMATION, CALIFORNIA CIVIL CODE § 44, et seq. |
| | 7. UNFAIR COMPETITION / FRAUD, CAL. BUSINESS & PROFESSIONS CODE §17200, et. seq. |
| | 8. EMOTIONAL DISTRESS |
| | 9. UNJUST ENRICHMENT |
| | **JURY TRIAL REQUESTED** |
| | **INJUNCTIVE RELIEF REQUESTED** |

PLAINTIFF GENEVIEVE MORTON, by and through her attorney of

1

record, Jennifer Holliday, Esq., alleges as follows:

## **INTRODUCTION**

1.      PLAINTIFF is a professional model best known internationally for her work in the *Sports Illustrated Swimsuit Issue*, having appeared in six consecutive issues in the past ten years and maintains a Verified Account, as defined herein, on Twitter.com, one of the world's largest and most influential social media websites with over 330,000,000 users.

2.      Defendant Twitter, Inc. (hereinafter "Twitter") is a publicly traded company on the New York Stock Exchange and operates Twitter.com, grossing annual revenue in excess of $3.5 billion from various revenue streams including collecting and selling user data.

3.      SpyIRL.com, a Content Partner of Pornhub.com and purveyor of a type of illegal pornography called "voyeur video"[1] involving spy cameras, nonconsensual nudity, child sexual exploitation and human trafficking, maintains a Twitter.com account under @SpyIRL.

4.      Video voyeurism is an international crisis involving human trafficking.  In South Korea, for example, this type of nonconsensual, illegal pornography is called "molka," and investigators have found more than thirty hidden cameras in hotel rooms, including waterproof cameras that surreptitiously capture unsuspecting people in states of undress or engaging in sexual activity.

5.      SpyIRL.com is not only advertising and selling illegal pornography on Twitter.com, but is also pursuing unlawful, fraudulent, and abusive marketing

---

[1] Voyeur video is video content obtained without the consent of the people who appear in the video, including young women and children, at least some of whom *do not know they are being filmed* by hidden cameras in places like public bathrooms, school locker rooms, retail clothing store dressing rooms, hotel rooms, gyms, and more.  Distinguishing features of the people who appear in the videos are sometimes blurred, so it is difficult to determine the identities of those who have been illegally captured on hidden cameras.  SpyIRL.com purchases footage from anyone, anywhere in the world for amounts between $10 to $1000 according to their website. No ages, names, release forms appear to be required in order to immediately sell the footage to SpyIRL.com.

tactics by misrepresenting that images of professional models like Ms. Morton are associated with or available on the SpyIRL.com website. In this way, SpyIRL.com attempts to capture the fans of legitimate, professional models and defraud the fans into purchasing a SpyIRL.com subscription, or, alternatively, effortlessly collect affiliate fees or other valuable consideration by driving user traffic to external websites where Twitter.com can gather personal user data.

6.     As alleged herein with more particularity, SpyIRL.com used Defendant's Twitter.com to falsely advertise Ms. Morton's products, make false and defamatory statements, and infringe Ms. Morton's copyrighted works while fraudulently using her name, likeness and copyrighted images, without authorization, to drive user traffic as well as to promote and sell pornography featuring child sexual exploitation and nonconsensual nudity obtained from hidden cameras in public places in violation of state and federal law. True and correct copies of screenshots of the Tweets containing the infringement the form the basis of claims are attached as Exhibit A.

7.     Plaintiff immediately notified Twitter, Inc. of SpyIRL.com's misconduct and demanded take down the series of Tweets that form the basis of this action as it is legally obligated to do, and suspend the account in accordance with its own policies against accounts that advertise and promote illegal pornography. Although Twitter confirmed receipt of the Notice and Takedown request, Twitter refused to suspend the account or remove the Tweets. True and correct copies of Twitter, Inc.'s acknowledgement of receipt of the requests are attached as Exhibit B.

8.     After Ms. Morton complained of the infringement, the @SpyIRL user posted a tweet that contained false and defamatory statements that Twitter refuses to remove. A true and correct copy of the fourth Tweet is attached as Exhibit C. Twitter eventually removed the copyrighted media pursuant to Ms. Morton's request, but removes that media piecemeal and in a way that burdened Ms. Morton

as alleged herein. A true and correct copy of screen shots of the Tweets with media being partially removed is attached as Exhibit D.

9.     Plaintiff is informed and believes, and on that basis, alleges that Twitter.com derives substantial amounts of user traffic, data and other forms of valuable consideration from accounts like @SpyIRL that use Twitter.com to promote and advertise illegal pornography and therefore does not enforce its policies or block links that have no proper purpose on Twitter and facilitate criminal and other high-risk financial transactions involving pornography.

10.    SpyIRL.com owns and operates at least two accounts on Twitter.com to sell or otherwise promote illegal pornography in violation of a number of Twitter's policies, but Twitter does not enforce its policies regarding pornography or having multiple accounts against SpyIRL.com even though it uses Twitter to promote and sell criminalized pornography derived in furtherance of human trafficking, child sexual exploitation, and hidden cameras.

11.    In the series of Tweets that form the basis of this lawsuit, Defendant SpyIRL.com used Ms. Morton's copyrighted photographs containing her nude image, as well as her name, Twitter username, and likeness, without her authorization, knowledge, or consent to attract her fanbase for the purpose of misrepresenting a professional affiliation with Ms. Morton while advertising, promoting and selling a highly offensive and illegal form of pornography in violation of many of Twitter's policies as well as the laws of the State of California and the laws of the United States.

12.    Due to Twitter's refusal and failure to suspend the user or delete the Tweets, Ms. Morton's professional reputation and commercial brand have been and continue to be severely damaged, and absent this court's intervention, Twitter will continue to profit from the exploitation of Ms. Morton and their flagrant disregard for the laws of the United States and of California.

13.     SpyIRL.com is a "Content Partner" of Pornhub.com, and a petition started earlier this year has garnered over 2,000,000 signatures demanding that Pornhub.com be held accountable for its contribution to the rape, trafficking, and exploitation of women and children worldwide.  The ongoing damage to Ms. Morton's image, professional reputation, copyrighted Images and emotional wellbeing by the misconduct of and association with these entities is catastrophic.

14.     While social media websites have been immunized from liability from third party misconduct by provisions of the Digital Millennium Copyright Act and the Communications Decency Act, these immunity provisions rest upon assumptions and circumstances that no longer exist because, *inter alia,* Twitter, Inc. has substantially changed its business structure and technology and now operates its own Content Delivery Network, obtaining a substantial competitive advantage in terms of its ability to store, process and deliver larger quantities of data at faster speeds by ignoring statutory duties to copyright holders like Ms. Morton as alleged throughout this Complaint.

15.     On information and belief as alleged herein, Twitter, Inc. fails to police accounts like @SpyIRL because certain pornography companies' affiliate marketing schemes enable Twitter.com to deceptively inflate metrics used to establish the value of Twitter, Inc. as well as to collect users' marketing data on third-party pornography websites and across various sites on the Internet.

        Plaintiff respectfully asks this Court to enjoin SpyIRL.com from continuing to falsely advertise Ms. Morton's copyright protected images and to enjoin Twitter, Inc. from continuing deceptive business practices, to enforce its policies as set forth on the website, to disgorge profits, to compensate Plaintiff for her losses and injuries, for statutory damages related to copyright infringement, for punitive damages, and for the further relief as the ends of justice require.

**JURISDICTION AND VENUE**

16. Pursuant to 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims arising under federal law and jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367 because all state law claims stem from the same common facts as the claims of violations of federal law.

17. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(3), and this Court has personal jurisdiction over Defendants and each of them, by reason of the fact that, among other things: (1) the Defendants' businesses are accessible in the County of Los Angeles; (2) the Defendants, or their parent entities, maintain physical offices in the County of Los Angeles; (3) their interactive websites are accessible in the County of Los Angeles; (4) any foreign Defendants are the agents, parents, or subsidiaries of the others as herein alleged. Defendants are subject to the personal jurisdiction of this Court and are amenable to service of process pursuant to the California Long-Arm statute, California Code of Civil Procedure Section 413.10 and Federal Rule of Civil Procedure 4(e).

**THE PARTIES**

18. Plaintiff GENEVIEVE MORTON, a Permanent Resident of the United States and resident of California, is an individual, and earns a living as a professional model, particularly for global swimwear and lingerie brands.

19. Defendant TWITTER, INC. ("Twitter, Inc."), a publicly traded corporation organized under the laws of the state of Delaware with headquarters in San Francisco, California, owns and operates Twitter.com and is engaged in the business of content delivery, advertising and the collection and sale of data. Twitter, Inc. owns and operates its own content

delivery network (CDN)[2] that gives it a substantial competitive advantage over its competitors and substantial control of Twitter.com's operations.

20.    Defendant SPYIRL.COM is an online provider of highly illegal and extremely offensive pornography known as "video voyeurism" as defined herein. Although it is currently unknown to Plaintiff who or what entity owns SpyIRL.com, the website SpyIRL.com is privately registered through Enom.com using a reseller named M3 Server, Inc., a delinquent corporation organized under the laws of the State of Washington. SpyIRL.com has listed its address as: "Limassol, 1243 Cyprus," but SpyIRL.com maintains a secondary Twitter account, @SpyIRL_Discount, that purports to be located in Los Angeles according to their Twitter account biography.  SpyIRL.com is also a Pornhub.com "Content Partner," as defined herein, who uses the Pornhub account handle "@Spythereman," a verified account holder who has 8,267 subscribers, 2,833 friends, and 5,107,920 video views.[3]  To the extent that SpyIRL.com is a "Content Partner" of Pornhub.com, the @SpyIRL User was acting on behalf of not only Pornhub.com but also of Twitter, Inc. at all relevant times for the purpose of driving user traffic by using Twitter.com to attract user attention and post media and a link to a third-party pornographic website where Twitter, Inc. could follow user traffic and collect valuable user data.

---

[2] A content delivery network is a global, highly-distributed platform or network of proxy web servers and their data centers, or Points of Presence (PoP) that work together to provide fast delivery of content by reducing the physical distance between the server and the user.

[3] A Pornhub "Content Partner" earns money from Defendant Pornhub.com through Defendant MG Billing Limited located at 195-197 Old Nicosia-Limassol Road, Dali Industrial Zone 2540, Block 1, Cyprus. A Google search reveals the address to belong to a company called Albourne Partners, an investment company located in San Francisco, London, New York, and Limassol specializing in alternative investments.

Twitter exercised control at all times over the @SpyIRL User by virtue of the fact that it provided the instrumentality for the @SpyIRL User's misconduct.

21. The true names and capacities of the defendants DOES 1 through 100, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff is informed and believes, and thereon alleges that each of the Defendants designated herein as DOE is legally responsible for the events and happenings herein alleged and legally caused injury and damages proximately thereby to Plaintiff as alleged herein.  Plaintiff will seek leave to amend this Complaint to show the true names and capacities of defendants DOES 1 through 100, inclusive, when the same have been ascertained.  Plaintiff is also informed and believes and thereon alleges that DOES 1 through 100 were empowered to act as the agent, servant and/or employees of the other, and/or were the agents, principals, officers, directors, employees, and/or alter egos of Defendants, at all times herein relevant, and that they are therefore liable for the acts and omissions of said Defendants, and that all acts alleged to have been done by each of them were authorized, approved, and ratified by each of them.

22. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants participated in and is in some manner responsible for the acts described in this Complaint and any damages resulting therefrom.

23. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants acted in concert and participation with each other concerning the claims in this Complaint.

**FACTUAL BACKGROUND:**

24.     Plaintiff GENEVIEVE MORTON (hereinafter "Plaintiff" or "Ms. Morton") is a world-famous model who has appeared in the renowned *Sports Illustrated Swimsuit Issue* six times in a row, earning her a worldwide fan base and a social media following of over 3,500,000 people across various platforms.  Ms. Morton was named by *Sports Illustrated* as one of the Top 50 Greatest Swimsuit Models of All Time and "The Sexiest Woman in the World" in 2012 by publication FHM. Ms. Morton was the face of Maserati worldwide from 2015-2016, and Ms. Morton earns her living as a model and spokesperson for global brands and, although she has modeled swimwear and lingerie, has never appeared in pornographic content.

25.     Ms. Morton has been and remains the holder of the exclusive rights under the Copyright Act of 1976 (17 U.S.C. §§ 101 et. seq. and all amendments thereto) (the "Copyright Act") of black-and-white pictorial works ("Images") registered with the U.S. Copyright Office. The proof of registration with the U.S. Copyright Office is available both on the U.S. Copyright website and true and correct copies of screenshots of the registration are attached as Exhibit E.

26.     After declining professional opportunities to pose nude for publications over the course of her career, Ms. Morton elected to only pose nude in a manner whereby she could create the work, protect the Images and control the dissemination of her nude image.

27.     Ms. Morton incurred significant expenses in producing photo shoots to create the Images, and incurred costs associated with the production of the photo shoot.  Ms. Morton spent extensive time preparing for, shooting, editing, and creating the website and calendars for sale of the Images.

28.  Ms. Morton never displayed these Images for free or on any social media platforms, but offered the Images for purchase on her website www.genevievemorton.com in curated collections.

29.  Ms. Morton has maintained a Verified Account with Twitter.com under the handle @genevievemorton since 2009.

**INFRINGEMENT**

30.  On May 19, 2020 at approximately 9:20 PM PST, Ms. Morton noticed a post on Twitter.com featuring her name and likeness from an account with the handle @SpyIRL that featured advertisements for a pornographic website as well as four images substantially similar to Ms. Morton's aforementioned copyrighted Images and a link to purchase a subscription and discovered three Tweets posted on the @SpyIRL account containing her Images. A true and correct copy of screenshots featuring the Tweets, redacted for nudity, are attached as Exhibit A. The Tweets contained the following language, hashtags and media:

a.  TWEET #1:  "#Genevieve #Morton. Perfect. Use the #SpyIRL #Discount #Link below and get a much #Cheaper #Membership. If youre into #School #Spy #Cams #Teacher #Upskirts #See #Through #Yogapants. #Join now this spyirl #Deal ends soon! -> http://links.verotel.com/resellerbanner?vercode=9804000001062255%3A9804000001056315&websitenr=108807&URL=http://spyirl.com/top-rated/"

b.  TWEET #2: "@genevievemorton. More Perfection. If you want a #Discount #Link on #SpyIRL. #Premium #Spy #IRL #Members get 1000's of #Hidden #Amateur #Voyeur #Videos & #Pics for #Cheaper now. #Signup now - This SpyIRL #Sale is a Limited #Deal! ~> http://links.verotel.com/resellerbanner?vercode=9804000001062255%3A9804000001056315&websitenr=108807&URL=http://spyirl.com/"

c.  TWEET #3: "@genevievemorton . Holy Goddess. Also get a #Discount on #SpyIRL #Paysite below for much #Cheaper. Be the first as a #Spy #IRL #Member to watch 1000's of #Hidden #Private #Amateur #Vids & #Pics. Treat yourself this SpyIRL #Promo is a Limited #Offer! -> http://links.verotel.com/resellerbanner?vercode=9804000001062255%3A 9804000001056315&websitenr=108807&URL=http://spyirl.com/

31.  The Images had been altered by virtue of being cropped and resized, with the emphasis of the image on the nudity of Plaintiff rather than the broader context of the photograph itself, making the photographs appear to be more of a pornographic nature than in their original, intended fixed expression.

32.  Ms. Morton, by and through her representatives, immediately filed a notice and takedown request to Twitter, including a demand to suspend the user. True and correct copies of the e-mail confirmations of receipt of Plaintiff's Notice and Takedown requests are attached as Exhibit B.

33.  The link that appears in the Tweets takes a user to a website operated by payment processor, Verotel, that once existed as an entity under the laws of the State of California, but now operates out of Amsterdam. The link offered the user a subscription to pornography for $29.99.

34.  Plaintiff is informed and believes SpyIRL.com received a fee or other valuable consideration from Verotel each time a user clicked on the link.

35.   Twitter responded to Plaintiff's initial request, but did not immediately remove the media.

36.   Twitter never removed the Tweets or suspended the @SpyIRL account.

37.   After Twitter began to partially remove Plaintiff's Images, the @SpyIRL User posted the following Tweet: "@genevievemorton , even though she copyrighted my images...she is a goddess who should be worshiped I

1       <sic> suggest you go check her out...absolute perfection". A true and

2       correct copy of a screenshot of this tweet is attached as Exhibit C.

3  38.  Ms. Morton noticed the Tweets implied that she had endorsed @SpyIRL

4       and that her name, likeness, and image were used to promote a link to a

5       payment processing website where a user can purchase a subscription, not

6       to an authorized version of Ms. Morton's images, but to illegal

7       pornography obtained by and offered on SpyIRL.com.

8  39.  Plaintiff is informed and believes that Twitter, Inc. and Twitter.com knew

9       or should have known Verotel is widely known as a payment processor for

10      and almost exclusively associated with the pornography industry and that

11      any tweet advertising a transaction involving Verotel would likely violate

12      Twitter's policies.

13  40.  The @SpyIRL Twitter account regularly promotes and advertises its

14      subscription model to pornography claimed in their Twitter profile as "the

15      hottest real #amateur #school #spy #candid #pics and #hidden #voyeur

16      #vids now only at @spyirl get your #spyirl #discount #premium account

17      for a limited account using this link" and a link to a payment site operated

18      by Verotel.

19  41.  On its website, linked to the Twitter account, SpyIRL.com claims to

20      purchase video footage and makes the following offer: "Sell your high-

21      quality voyeur videos to us. We offer anywhere from $10 to $1000

22      depending on the quality and quantity of your submission. Send us a

23      preview of your video below and we will respond with an offer. You can

24      request a face blur on your submission. What we look for in videos:

25      currently not accepting beach, creep shots and non-nude submissions."

26  42.  SpyIRL.com does not list any age requirements or any other qualifications

27      for video content.  The seller of content does not have to represent or

28      warrant that the people who appear in the videos have consented to being

filed.  In fact, it appears that the footage is obtained without the knowledge or consent of the people who appear in it, and it appears to be taken from hidden cameras in public restrooms, retail clothing store dressing rooms, fitness center showers, school bathrooms, and places where members of the public have a reasonable expectation of privacy. There is no contact information for SpyIRL.com apart from the submission form.  On their homepage, SpyIRL.com has over 750 videos including videos featuring very young, nude females who appear to be unaware that they are being filmed, and categories like "Bathroom," "Changing Room," "Down Blouse," "Masturbation Spy Cams," and "Teens."

43.   The creation of these videos, presuming they are authentically the hidden camera footage they purport to be, involves the commission of a violation of California Penal Code Section 647j, which criminalizes photographing, or recording a person under the clothing or without their knowledge for the purpose of sexual arousal.

44.   The purchase, sale and display of the "video voyeurism" is, a separate criminal offense, classified as a misdemeanor in a number of states, including California, and is federally criminalized under 18 U.S. Code § 1801 known as the "video voyeurism law."

45.   In addition to being criminalized, video voyeurism is also controversial because "voyeuristic disorder" is classified alongside the sexual disorders in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) that include Exhibitionistic Disorder, Frotteuristic Disorder, Sexual Masochism Disorder, Sexual Sadism Disorder, Pedophilic Disorder, and other paraphilias that cause harm to other people. Voyeuristic disorder may be diagnosed when an individual continuously experiences strong sexual arousal from observing an unsuspecting person who is either naked, undressing, or engaging in sexual activity.

46.     If a user clicks the on the @SpyIRL link to Verotel to purchase the SpyIRL.com subscription advertised in the Tweet alongside Plaintiff's name and Twitter handle and the unauthorized, copyright-protected Images of her nude likeness, the user is redirected to Defendant SpyIRL.com, and content on that website links to or is embedded with video content from Pornhub.com.  A sample of the video content embedded from Pornhub.com or bearing its Pornhub Community logo includes a range of obscene, lewd, and offensive titles such as: "Great Ass on See-Through Leggings on the Street," "Ladies Room Voyeur #029," "Red-haired Teen Masturbates Hidden Cam," "Asian Hottie is Caught Masturbating through the Door by Her Brother Peeping Through the Door," "Blonde Slut Goes Shopping with a Toy on Her Ass and Pees on an Unbought Glass," "Public Upskirt with No Panties at Outdoor Club," "Teen Masturbating in the Bathroom with a Tampon Caught by Hidden SpyCam."

47.     Videos on SpyIRL.com have in excess of 250,000 views.  SpyIRL.com also displays this illicitly obtained content as a Content Partner on Pornhub.com under the account username @spythereman, and links SpyIRL.com to its Pornhub.com page.

48.     Ms. Morton had not authorized the use of her name or likeness to advertise this website, and she was has suffered great distress that her name and professional reputation would be affiliated with this criminalized pornography website, this paraphilic content, and the sexual exploitation of children and of victims of human trafficking.

49.     Twitter could easily offer a resource for its Verified Users to report abuse including the type of commercial misappropriation Ms. Morton suffered, but it does not do so and unjustly benefits from its failure to do so.

50.   Ms. Morton received a notification in less than twenty-four hours that her copyright notice and takedown requests were under investigation, but Twitter did not immediately remove the Images, and they were not removed all at once, but rather image by image.

51.   Twitter.com could remove entire tweets that contain copyrighted material, but does not do so.  Twitter could, but does not, mitigate copyright infringement by offering users the opportunity to upload only one image at a time, or at least, the maximum number of images it can reasonably handle when a takedown request is submitted.  Instead, Twitter offers users the ability to upload four images in one tweet and removes copyrighted images piecemeal because Twitter does not want to compromise the competitive advantage this method affords Twitter.com in terms of the speed of the CDN as well as the increased data capacity of the network as alleged further herein.

52.   The partial removal of Ms. Morton's Images could give a reasonable person the false impression that the remaining images were not protected under copyright within the first critical hours during which most of an audience is likely to encounter new posts on their Twitter feeds. A true and correct copy of a screenshot showing the removal of some but not all of the media is attached as Exhibit D.  Eventually, Twitter removed all of the images, but left the Tweets visible. A true and correct copy of screenshots of the tweets showing the removed media is attached as Exhibit H.

53.   Even though Twitter removed the media, it did not remove the false and defamatory text or the links to the illegal pornography subscription.

54.   Twitter did not suspend the @SpyIRL account.  As of the date of this Complaint, the tweets still appear on Twitter with empty space that merely reads, "Media not displayed This image has been removed in response to a report from the copyright holder." However, Ms. Morton's name still

1 appears in the body of the tweet, falsely advertising and implying that Ms.

2 Morton's image is accessible by purchasing subscription on the linked to

3 Verotel's website for $29.99.

4 55. After Ms. Morton demanded Twitter take down the copyrighted material

5 and suspend the account, Ms. Morton began to lose followers, and Ms.

6 Morton has lost over one thousand followers since the initial reports were

7 submitted.

8 56.  Ms. Morton has submitted subsequent notices and takedown requests to

9 Twitter on additional instances of infringement, and Twitter ignored for

10 months.  Plaintiff issued a report of copyright infringement on another

11 tweet on July 23, 2020, and although Twitter, Inc. acknowledged and

12 confirmed receipt of the notice, Twitter, Inc. did not remove or respond to

13 the demand for takedown until October 28, 2020, three months after

14 Plaintiff notified Twitter.  Subsequently, Twitter, Inc. issued an auto-

15 confirmation acknowledging a copyright report issued by Plainitff on

16 September 10, 2020, but did not respond until October 19, 2020

17 confirming the removal of the access to the content, almost six weeks after

18 the report of infringement was submitted.  Defendant's report case number

19 is 0172275586.

20 57. Although Twitter.com did not remove @SpyIRL's tweets as demanded by

21 Ms. Morton and as their policy dictates, Twitter.com actually does remove

22 entire tweets in response to a copyright report and replaces the entire tweet

23 with this message: "This Tweet from @(USERNAME) has been withheld

24 in response to a report from the copyright holder. Learn more."

25 58. Ms. Morton has been targeted by Twitter users recently who send

26 disturbing e-mails to her website administrator's account.  It is unknown at

27 this time how many times Defendants have used Ms. Morton's image in

28 unauthorized ways to attract and defraud and upset Ms. Morton's fans, and

16

the damage to Ms. Morton's personal and professional reputation as the result of the very public mentions of Ms. Morton in connection with illegal pornography is incalculable.

59.   Ms. Morton has had a rash of pornographic accounts follow her account in the wake of the Tweets that are the subject of this action.  Twitter's undisclosed, proprietary algorithm appears to direct pornographic accounts to Ms. Morton's account despite the fact that Ms. Morton is not following any pornographic accounts or engaging with any pornographic accounts.

60.    Ms. Morton has blocked over 250 extremely graphic pornographic accounts that have followed her. Instead of maintaining a safe, reasonable method of blocking pornographic accounts, a Twitter user must actually visit the pornographic account's user page and manually choose to block it while being exposed to extremely graphic, obscene material.

61.   For over ten years, Ms. Morton has made her living from modeling and representing family-friendly brands in commercials and other advertising and promotional vehicles.  In order to make a living, Ms. Morton depends on maintaining a professional reputation that is appealing to brands and their customers.

62.   Ms. Morton posts regularly on social media platforms to connect with fans and brands alike.

63.   Plaintiff, like many social media influencers and celebrities, is occasionally paid to post on social media platforms about products, brands and services to promote a company or product she endorses in exchange for payment or other valuable consideration, and the fee is negotiable based on the brand or product.

64.   In the past several years, brands have increasingly used Twitter.com to drive traffic to their own websites and links by paying a celebrity Verified

1    User to use their image, likeness and name in a tweet from the brand's
2    official Twitter account.

3    65.   Although Defendants benefited from driving user traffic using Ms.
4          Morton's name and image in the precise way other brands pay Ms. Morton
5          for the use of her name and image to drive traffic, Defendants have never
6          paid Ms. Morton.

7    66.    Defendants have not sought authorization from Ms. Morton or her
8          representatives for the use of her name, likeness, and Images.

9    67.   Defendants have not compensated Ms. Morton for the use of her name and
10         likeness or her Images.

11   68.   Brands and advertisers pay close attention to the types of products and
12         brands a celebrity endorses, and Ms. Morton chooses her projects
13         carefully. In an age of quantifiable data, certain metrics determine a
14         celebrity's reach and value and whether their audience is an appropriate fit
15         for a brand.

16   69.    Approximately 83,000 Twitter .com users "follow" Ms. Morton, meaning
17         that 83,000 Twitter subscribers elected to receive her posts automatically
18         each time she makes one, and this quantity factors into the determination
19         of an endorsement fee. Ms. Morton had 85,000 followers prior to
20         demanding that Twitter take down her Images.

21                              **TWITTER**

22   70.   Defendant Twitter Inc. ("Twitter, Inc.") has been a publicly traded
23         company on the New York Stock Exchange since 2013 and owns and
24         operates the website www.twitter.com, ("Twitter") an online
25         microblogging site and social media service which boasted over
26         330,000,000 active users and 145,000,000 daily users as of September

27

28

2019.[4]  Twitter's current success and valuation is expressed by its "mDAU," a term it coined that translates to "monetizable Daily Active Usage," which increased substantially in the first quarter of 2020 when Twitter earned approximately $800,000,000.[5]  The mDAU is a measurement of how many actual, monetizable users are on Twitter.  In short, the more actual users Twitter can capture, the more money Twitter earns and the higher its share price. Under this business model, Twitter has no incentive to limit the number or type of subscribers and users.

71.   In 2020, Twitter has grown its mDau to 186,000,000, a 34% year-over-year increase in Q2, "the highest quarterly year-over-year growth rate [Twitter has] delivered since [Twitter] began reporting mDau growth."[6] Twitter earned $683,000,000 in the second quarter of 2020.

72.   Twitter, Inc. uses Twitter.com to collect valuable user data and sell it, and this is a primary revenue stream for Twitter, Inc.

73.   One of the most lucrative areas of high finance is the sale of data to hedge funds who incorporate the large volume of data into computers for analysis and trend forecasting to obtain a competitive advantage in investment strategy.[7]

---

[4] Twitter, Inc. https://s22.q4cdn.com/826641620/files/doc_financials/2019/q1/Q1-2019-Slide-Presentation.pdf (accessed Sept. 23, 2020).

[5] Kanter, Jake. Deadline.com, "Twitter's revenue of $808M Beats Expectations Despite Coronavirus Biting in March" *available at:* https://deadline.com/2020/04/twitter-q1-2020-earnings-1202921904/ (accessed Sept. 20, 2020).

[6] Dorsey, Jack. Twitter announces second quarter 2020 results, July 23, 2020, *available at:* https://s22.q4cdn.com/826641620/files/doc_financials/2020/q2/Q2-2020-Earnings-Press-Release.pdf (accessed Sept. 20, 2020).

[7] Detrixhe, John. Quartz.com. "Selling Data to Feed Hedge Fund Computers is One of the Hottest Areas of Finance Right Now" *available at*:

74.    Twitter, Inc. is valued at $30 billion and earns its approximate $3.46 billion in annual revenue from collecting and selling private user data, incorporating the data it collects into its own advertising model and selling targeted advertisements and promoted tweets on its internet property www.twitter.com.

75.    Twitter.com expressly and unequivocally states that pornography companies are precluded from purchasing advertising and promoted tweets on their website.

76.    Twitter.com offers "Verified Accounts" to celebrities and other public figures, including Ms. Morton on her @GenevieveMorton account, to assure users that public figures using the website are authentic and not imposters.[8]   Part of the appeal of Twitter.com, and what enabled it to quickly become one of the most successful social media websites in the world, is the ability to interact with public figures that have Verified Accounts.  Twitter has succeeded where other companies have failed due to the cooperation, participation, and support of thousands of Verified Account holders like Ms. Morton.

77.    Twitter offers accounts subject to its Terms of Service, a user agreement that has changed since Twitter began, but Twitter does not notify users of changes in a way that requires that a user must review and consent to changes to continue using the service.[9]

---

https://qz.com/1082389/quant-hedge-funds-are-gorging-on-alternative-data-in-pursuit-of-an-investing-edge/ (accessed Sept. 20, 2020)

[8] Twitter.com, FAQ, Verified Accounts, https://help.twitter.com/en/managing-your-account/twitter-verified-accounts (accessed Sept. 23, 2020).  The Verified Accounts program is currently on hold, and Twitter will no longer verify accounts.

[9] Twitter, Terms of Service, *available at*: https://twitter.com/en/tos (accessed Sept. 7, 2020).

78.     Twitter reserves the right to regulate and suspend user accounts and maintains strict policies regarding, among other things, copyright, intellectual property, pornography, child sexual exploitation, and human trafficking.

79.      Twitter expressly states that it refuses to permit paid advertising of "Adult Sexual Content" and Plaintiff relied on this representation when she opened her Twitter account in 2009.[10]

80.     Twitter expressly states that nonconsensual nudity and the type of content that the @SpyIRL account shares, advertises and promotes is strictly prohibited, but does not suspend the account or remove the posts that advertise, promote and link to illegal pornography.

81.     Although Twitter.com once had a feature that permitted a user to "opt out" of data collection, it no longer offers this option, and Twitter, Inc. collects Twitter.com users' data across the web on third party websites, including Pornhub.com. Boasting 120,000,000 unique user visits per day, Pornhub.com is almost certainly one of Twitter's most valuable sources of monetizable user data.[11]

82.     Twitter does not appear to enforce their strict and unequivocal policies against affiliates and/or "Content Partners" of Pornhub.com (@pornhub) and its owners, subsidiaries, affiliates and related companies.  The @Pornhub Verified Twitter account has approximately 2,100,000 followers and @PornhubModels unverified Twitter account has 420,000 followers.

_____

[10] Twitter, Ad Content Policies, Adult or sexual products and services, *available at* https://business.twitter.com/en/help/ads-policies/ads-content-policies/adult-or-sexual-products-and-services.html (accessed Sept. 20, 2020).

[11] Pornhub, The Year in Review, Dec. 11, 2019 *available at:* https://www.pornhub.com/insights/2019-year-in-review (accessed July 24, 2020).

83.  Twitter once was a mere social media platform that hosted unadjusted user feeds of posts in chronological order.  As Twitter grew, it ceased merely posting user's tweets in chronological order and began to curate its users' timelines, selecting and arranging tweets via undisclosed, proprietary algorithms.  In practice, this process limits and rearranges what content, advertisements, and tweets a user sees. Sometimes tweets are a day or two old when they appear on a timeline, so to avoid missing a tweet from a favorite account, a user must visit the account's page to see a list of their tweets in chronological order. Therefore, usernames, like Plaintiff's username @genevievemorton is searchable.

84.  While Twitter maintains a policy refusing to permit pornographers to purchase advertising on Twitter.com, a pornographer can include a celebrity's name and/or hashtag in a Tweet to attract the user's fan base who may be searching for the celebrity at any point.  Handles and "hashtags" are searchable.  A "hashtag" is a word or name or term with the "#" sign appearing immediately before it.

85.  Searching a Twitter username (or "handle") will also reveal tweets in which the username is mentioned. Including a celebrity Twitter handle is therefore one way to benefit from a user's popularity, increasing visibility of a tweet and therefore driving web traffic to a page or a link in the tweet without actually paying Twitter to promote that tweet or the link in the tweet.  Anyone searching Twitter.com for "@genevievemorton" or "#genevieve #morton" will be directed to the @SpyIRL tweets containing her name and the link to the illegal pornography that falsely implies her association with the account, the company, the material, and pornography in general.

86.  Plaintiff further alleges that the @SpyIRL user created these Tweets not just to advertise subscriptions, but also to drive traffic from Twitter.com to

the infringer's pornography subscription purchase link and to its website @SpyIRL.com and ultimately to Pornhub.com where Twitter is able to collect user data.

87. By driving user traffic from Twitter to Pornhub.com and elsewhere using Ms. Morton's name, likeness, and Images, the @SpyIRL User enabled Defendant Twitter to access and collect valuable user data which includes information like the user's location, the kind of device used, the type of browser they use, pornography they watch, how long it is watched, their sexual orientation, what website they navigate to next, what they shop for buy, what they discuss audibly, who they contact, what phone or computer applications they use, what they do on those applications and much more. This information is assembled to create or enhance a digital "fingerprint"[12] whereby any seemingly anonymous visitor can be identified by name within a margin of error of 98% simply by the various data points that are collected, thereby eliminating anonymity, but also potentially creating a permanent record of user data that can be monetized indefinitely, long after these data collection practices are no longer permitted by law.

88. When Ms. Morton created a Twitter account, and for several years after, Twitter protected user privacy by offering users a feature whereby a user could restrict Twitter's ability to track data, Twitter has eliminated this feature.  A Twitter user does not need to acknowledge or accept the new terms of service when Twitter changes, adopts or eliminates a new policy

---

[12] A digital fingerprint is a "virtual strip search" according to an article on the subject in the past year.  Websites track private user data so that they can determine a myriad of factors and can identify a user with remarkable accuracy, eliminating anonymity on the Internet.  See "What is Fingerprinting? The online tracking you can't avoid," Fowler, Geoffrey A., THE WASHINGTON POST, November 10, 2019 available at https://www.denverpost.com/2019/11/10/online-website-unique-fingerprinting-data-privacy-internet/ (accessed Sept. 12, 2020).

1    and can carry on using an account without awareness of the change, so
2    Twitter did not require users to consent to the change in policy. Plaintiff
3    did not know that a condition of having an account with Twitter.com was
4    the consent to tracking user data on third party websites and selling it to
5    other parties.

6  89.  Plaintiff is informed and believes that Twitter, Inc. sells this data, often
7    collected in violation of its own policies and in reckless disregard of the
8    criminal misconduct involved, to third parties as well as use it in their
9    advertising models generating annual revenue of at least $3 billion.

10  90.  In order to generate as much traffic as possible, pornographic websites like
11    Pornhub.com and its related companies incentivize their users to gather as
12    much traffic as possible, expressly and specifically on Twitter.com, to the
13    exclusion of other social media platforms.

14  91.  Pornhub.com instructs its Content Partners, including SpyIRL.com, to
15    craft attention-grabbing tweets, and Pornhub.com and/or its related
16    companies instruct their Content Partners, affiliates, and/or users to
17    include photographs of beautiful women who are not involved in
18    pornography to encourage Twitter users to click on links that will
19    eventually land them at Pornhub.com or other pornographic websites.

20  92.  Pornhub.com's related company Modelhub.com specifically advises users:
21    "Take cues from all the bikini models on Instagram to learn how to build a
22    huge following without nudity.  Linking out from SFW social networks is
23    a little more complicated, because sometimes Pornhub.com or
24    modelhub.com links will not be allowed.  Try linking to your Twitter...
25    Consider mentioning in your bio there is more NSFW content on your
26    Twitter account."

27  93.  SpyIRL.com followed these precise instructions and even included bikini
28    shots of Plaintiff on an Instagram account that belongs to SpyIRL.com.

94.     Pornography websites like Pornhub.com pay their users for the traffic driven by the use of images in photographs, and Plaintiff is informed and believes and thereon alleges that the @SpyIRL User was paid in connection with the use of Plaintiff's Images on Twitter.com in violation of Federal Copyright law, to drive traffic to Pornhub.

95.     Twitter tracks its users through the use of "cookie profiling" the entire time a user is browsing, even after it leaves Twitter.com, and obtains valuable user data of its account holders on pornographic websites. This data is collected and used by Twitter in its advertising models to create a more comprehensive picture of its users and, among other things, their buying habits.  This information enables Twitter to offer its advertisers very specific marketing models to target likely customers. The more traffic Twitter sends and receives to pornographic companies, the more value it theoretically creates for its stakeholders and potential customers.

96.     This formerly private user data obtained by Twitter on third party websites is also sold at a premium to various businesses, including hedge funds where it is used to obtain a competitive advantage.

97.     In the series of infringing Tweets, as alleged herein, the @SpyIRL User falsely stated and/or implied that Plaintiff was professionally affiliated with and/or endorsing the pornography company and/or that images of her could be obtained by purchasing a subscription SpyIRL.com to deliberately deceive consumers and the public and/or to attract Ms. Morton's following to drive traffic to the @SpyIRL Twitter page and ultimately on to SpyIRL.com and ultimately Pornhub.com.

98.     SpyIRL.com's video content prominently displays Defendant Pornhub.com's logos and SpyIRL.com has a professional association with Pornhub.com.

99.   Pornhub contains material with promoted search terms and titles such as "Drunk Teen Abused Sleeping" and "Young Teen Snapchat Leak."  Victims of rape and sex trafficking, including underage sex trafficking, have come forward and accused Pornhub of refusing to remove content containing their images engaged in acts that filmed without their consent.

100.  The BBC reported that a young woman named Rose Kalemba came forward and described how a video of her rape when she was fourteen years old was uploaded to Pornhub who refused to take it down for weeks, and by the time the video came down, another copy of the video had replaced it.  Pornhub admitted to this on their verified Twitter account, stating that they had "verified" the minor who had been trafficked and raped in 58 videos uploaded to Pornhub. In one year, there were 42 billion visits to Pornhub and 6 million videos uploaded to the site.

101.  In March 2020, activists put forth a petition to shut down Pornhub and hold its executives accountable for aiding trafficking. The petition claims: "Pornhub, the world's largest and most popular porn site has been repeatedly caught enabling, hosting, and profiting from videos of child rape, sex trafficking, and other forms of nonconsensual content exploiting women and minors." As of the date of this Complaint, over 2,000,000 people have signed this petition.

102.  When Ms. Morton realized her intellectual property and name, likeness and image had been used to promote Defendant Pornhub and its affiliates in the Tweets posted by SpyIRL that remains on Twitter to this day, Ms. Morton suffered extreme emotional distress including physical symptoms of stress, anxiety, depression, insomnia, and skin rashes.

103.  The actions of the Defendants have caused Ms. Morton great harm to her personal and professional reputation as well as to the commercial value of

her brand. In recent months, Ms. Morton appeared on various websites as an "adult entertainer" and has had to incur costs and take steps to have this false information changed.

104.   Twitter's notice and takedown procedure squarely disfavors the copyright holder while emboldening and empowering the infringer because each instance of copyright infringement must be reported individually through a form on the Twitter.com website that includes repetitive information and the requirement of disclosing private contact information of the owner of the copyright, so multiple acts of infringement take unnecessary valuable time in the earliest moments of the infringement when time is of the essence.

105.   The Twitter.com report protocols disfavor the copyright owner, but the Twitter API enables infringers to upload images and other media to up to 100 accounts at a time, making it virtually impossible for Plaintiff to timely and efficiently assert her rights once they have been infringed. Once a copyright protected photo has been released, if it is popular, it can easily begin to appear multiple times, making it extraordinarily time consuming and burdensome to stop the domino effect of the initial infringement.

**AFFILIATE MARKETING AND THE SALE OF DATA**

106.   Since Twitter made the adjustment to its API and enabled developers to upload multiple images, including copyrighted images, to hundreds of accounts at once, its mDAU has increased substantially, as alleged herein, with a 34% increase in just twelve months.

107.   Affiliate marketing has become an increasingly popular way for online businesses to attract customers and drive traffic. Affiliate marketing consists of deploying smaller users, or affiliates, to funnel website traffic from one user's webpage or social media account to another in exchange

27

for a commission or other benefit. Often smaller, anonymous users do not have the appearance of directly receiving financial compensation from the bigger company, and the smaller user can employ various methods of unlawful conduct to the direct financial benefit of the bigger company without implicating the bigger company or being held accountable for their actions.  However, these actions translate into substantial sums of money over time for Twitter and because they yield valuable user data.

108.   The following websites all maintain affiliate programs: verotel.com, pornhub.com, porndeals.org, hidden-zone.com, upskirt-times.com, dollar-paradise.com, zombaio.com, mechbunny.com, and are all linked to the SpyIRL website and Twitter profiles thereby offering SpyIRL substantial revenue streams from the redirection of users from Twitter.com.  These businesses benefit from user traffic by the collection of user's data as well as from sales, transaction fees and more.

109.   Affiliate marketers have been using Twitter to promote products, contributing to the meteoric rise of Twitter and its substantial success.  Affiliate marketers appear to be regular users, thereby increasing Twitter's mDAU, affiliate marketers tend to maintain more than one account and use subtle marketing tools to move traffic from their accounts to websites and applications that will pay for unique visits or pay a commission for items sold.

110.   The online pornography industry benefits from using affiliate marketing by using smaller websites and social media accounts to funnel traffic to the sites where users are inundated with paid advertisements or have the option to purchase content or subscriptions.  Larger companies incentivize smaller, more obscure websites and social media accounts to attract and drive traffic using illegal means, but while the larger, traditionally immunized ISP reaps the rewards of the illegal conduct, the smaller

1   company bears the liability and is often overseas or otherwise difficult to

2   locate.

3

4   **TWITTER DOES NOT BLOCK LINKS TO PURCHASE ILLEGAL**

5   **PORNOGRAPHY**

6   111.   Verotel is an adult entertainment payment services firm that originated in

7   San Francisco, but relocated and is now operating out of Amsterdam and

8   specializes in high-risk financial transactions, particularly pornographic

9   websites.  Verotel is affiliated with the website linked to the SpyIRL.com

10   website that sells subscriptions to illegal pornography.

11   112.   Twitter knew or should have known that any post including a link to

12   Verotel, including Defendant SpyIRL.com's post, was likely advertising

13   pornographic content, including illegal pornographic content, in violation

14   of their policies, and Twitter was in a position to flag this content for

15   review or block it entirely or suspend accounts posting it.

16   113.   Twitter maintains the right and ability to block certain links from

17   appearing, however Twitter permits its users to post Verotel affiliate links,

18   driving traffic there to purchase subscriptions to pornography obtained in

19   furtherance of sex trafficking, rape, sexual exploitation of children, and

20   prostitution. A true and correct copy of Twitter's policy reserving the right

21   to block links is attached as Exhibit F.

22   114.   Twitter, Inc. and its officers knew or should have known that Twitter.com

23   is being used to sell illegal "Voyeur Video" pornography vis a vis the

24   Verotel payment processing links and is contributing to nonconsensual

25   nudity, the sexual exploitation of children and victims of human

26   trafficking.

27   115.   Twitter, Inc. could prohibit Twitter.com from permitting the sale of

28   pornographic material or anything sold by Verotel or any adult

entertainment payment processor on Twitter.com, but it benefits financially from pornography industry-associated accounts and the related collection and sale of user data.

116.   At all times, Defendant Twitter, Inc. was aware, or should have been aware, that Pornhub.com had not taken steps to ensure that users were prohibited from uploading content that was obtained in connection with rape, human trafficking, prostitution and the sexual exploitation of children.

117.   Twitter.com failed to honor Ms. Morton's request to suspend the @SpyIRL account after it infringed her copyright and falsely portrayed her as endorsing SpyIRL.com's content, leaving the Tweets visible to this day. The fact that the photos have been removed, but that Ms. Morton's name and Verified Username still appear on the Tweets falsely implying that her image can be purchased on the accompanying link has further damaged Ms. Morton's image and deprived Ms. Morton of sales on her own website, and Ms. Morton has been falsely labeled an "adult entertainer" on other websites which has tremendously damaged her personal and professional reputation.  Defendant Twitter, Inc. profited from the collection of valuable data and/or fees from Twitter's failure to remove the Tweets in their entirety and/or suspend the account user after being made aware that the user had using unauthorized images and/or celebrity endorsements to drive traffic from Twitter to Pornhub, and actually profited from the exploitation of both the unauthorized images as well as the sex trafficking.

118.   Twitter maintains a "Child Sexual Exploitation Policy" dated March 2019 that states: "We have a zero tolerance child sexual exploitation policy on Twitter. Twitter has zero tolerance towards any material that features or promotes child sexual exploitation, one of the most serious violations of

the Twitter rules. This may include media, text, illustrated or computer-generated images. Regardless of the intent, viewing, sharing, or linking to child sexual exploitation material contributes to the revictimization of the depicted children. This also applies to content that may further contribute to victimization of children through the promotion or glorification of child sexual exploitation. For the purposes of this policy, a minor is any person under the age of eighteen," and Plaintiff relied on Twitter's representations about its policies and relied on the representations that it would enforce these policies for the benefit of its users and the public at large.  A true and correct copy of Twitter's policy on Child Sexual Exploitation policy is attached as Exhibit G.

119. Twitter has not enforced its policy against purveyor of illegal pornography @SpyIRL even when Plaintiff demanded that Twitter suspend the account in connection with the claims alleged herein.

120. Twitter maintains a policy that gives them the right to suspend or terminate a user account for "no reason" but also for specifically engaging in unlawful conduct. This policy is not enforced against Defendants or their affiliates.

121. Twitter maintains a policy against posting images that feature nonconsensual nudity. A true and correct copy of the nonconsensual nudity policy is attached as Exhibit I.  Twitter did not enforce this policy with respect to the @SpyIRL account which exists purposefully to feaure nonconsensual nudity.

122. On June 10, 2020, Twitter joined other technology companies in announcing their participation in "Project Protect: A plan to combat online child sexual abuse – a renewed investment and ongoing commitment to our work seeking to prevent and eradicate online CSEA (Child Sexual Exploitation and Abuse)." The plan does not include terminating accounts

that profit off of Child Sexual Exploitation and Abuse or that violate federal law, including copyright law, that promote this material.

123. At all times, Twitter, Inc. has been the owner and operator of Twitter.com, but the majority of Twitter, Inc.'s revenue is derived from revenue streams related to the misuse of Twitter.com and the exploitation of the platform in deliberate violation of Twitter.com's policies.

124. Twitter, Inc. is the principal, and Twitter.com, to the extent that it exists or generates revenue independently from Twitter, Inc.'s additional subsidiaries, revenue streams and ventures, is the agent of Twitter, Inc. and has the apparent authority to bind Twitter, Inc. To the extent that Twitter, Inc. is one and the same as Twitter.com, Twitter, Inc. is liable for the misconduct of Twitter.com and permitting a corporation with multiple revenue streams to improperly exploit immunity provisions afforded only to internet providers would result in fraud and inequity.

125. Twitter, Inc., and the employees and directors of Twitter, Inc. knowingly participated in the misconduct of Twitter.com by providing the means and funds to operate.

126.  Twitter, Inc. sold the data to third parties, including multinational corporations and others, who knew or should have known that the data was gathered in furtherance of a scheme that involved illegal pornography that involved hidden cameras, video voyeurism, child sexual exploitation and human trafficking.

## FIRST COUNT:
## COPYRIGHT INFRINGEMENT
## DIRECT, CONTRIBUTORY, VICARIOUS
## U.S. Code § 501 et. seq / COMMON LAW

127. Ms. Morton incorporates by reference all preceding allegations as though fully set forth herein and further alleges:

128.   Plaintiff is the registered copyright owner of twelve (12) pictorial images ("Images") as alleged herein. The copyright registration certificates are set forth in Exhibit E.

129.   At all relevant times, Defendant SpyIRL.com committed acts by and through its employee, agent, representative, affiliate, or proprietor to the benefit of SpyIRL.com, and to the benefit of other Defendants including Twitter, Inc. and those unknown to Plaintiff at this time but whose identities are likely to be discovered.

130.   Defendant SpyIRL.com had access to certain Images via Ms. Morton's website, and substantially similar images appeared on the SpyIRL.com's Twitter account, @SpyIRL, in the series of Tweets as alleged herein without Plaintiff's consent.

131.   Specifically, @SpyIRL posted three Tweets containing four images for a total of twelve Images substantially similar to Plaintiff's Images listed on the copyright registration as follows: Tweet 1: (1-1) certificate VA0002210005 under image file name: Private Island 6; (1-2) certificate VA0002210005 under image file name "Private Island 4"; (1-3) certificate VA0002210694 under the image file name "Love on the Rocks 19"; (1-4) certificate VA0002210005 under the image file name "After Dark 14"; Tweet 2:  (2-1) certificate VA0002210005, image name "Private island 23"; (2-2) certificate VA0002210694 "Love on the Rocks 15"; (2-3) certificate VA0002210694, image name "Love on the Rocks 12"; (2-4) certificate VA0002211724, image name "Love on the Rocks 18"; Tweet 3: (3-1) certificate VA 0002210005, image name "After Dark 13"; (3-2) VA0002210005, image name "Private Island 30"; (3-3) certificate VA0002210005, image name "Private island 18"; (3-4)VA0002211724 "Love on the Rocks 17.

132.   Plaintiff is informed and believes, and on that basis, alleges that SpyIRL.com reproduced Plaintiff's images by creating copies of the Images by means of a technological process, either by downloading, photographing, "screenshotting" or otherwise reproducing a digital copy to an electronic device, or by some other technological means unknown to Plaintiff at this time but likely to be discoverable through reasonable investigation in violation of 17 U.S.C. Section 106(1).

133.   Defendant SpyIRL.com caused the unlawfully created additional copies of these twelve (12) separate Images to be stored on the user of @SpyIRL's device or through a cloud or other remote data storage facility accessible to and used by Defendant SpyIRL.com in violation of Plaintiff's exclusive rights to reproduce under 17 U.S.C. § 106(1).

134.   Plaintiff further alleges that the user of the @SpyIRL Twitter account willfully infringed Ms. Morton's copyright by creating derivative works by cropping and resizing Ms. Morton's Images to the extent that it changed the context and integrity of the Image in violation of 17 U.S.C. Section 106(2).

135.   Plaintiff further alleges that Defendant SpyIRL.com separated the Images them from the original collections in which they appeared and created three new, derivative collections in three sets of four Images per Tweet in violation of 17 U.S.C. § 106(2).

136.   Plaintiff further alleges that Defendant SpyIRL.com uploaded the copies of the Images on to Defendant Twitter, Inc.'s servers or other data storage devices or applications in violation of 17 U.S.C. § 106(1).

137.   Plaintiff further alleges that SpyIRL.com willfully infringed Ms. Morton's copyright by creating a copy on an electronic device to upload and embed and actually embedded Plaintiff's Images on Twitter.

138.  Plaintiff further alleges that SpyIRL.com willfully infringed Ms. Morton's copyright by creating derivative works by effectively creating an advertisement for Defendant's website.  Thus, selecting, cropping, collecting, and arranging these images into the new grouping of the Tweet was a violation of Ms. Morton's exclusive right to create derivative works under 17 U.S.C. §106(2).

139.  Defendant SpyIRL.com willfully infringed on Ms. Morton's copyright by posting the Tweets containing the images on Defendant Twitter's website for purposes of obtaining a commercial advantage or private financial gain, using the image to attract interest and advertise SpyIRL.com's website and subscriptions to its illicit video content and to drive valuable traffic to Pornhub.com and others where valuable user data would be collected and used for direct financial gain and various longer-term commercial purposes and to obtain a competitive advantage.

140.  Plaintiff is informed and believes, and on that basis alleges that acting in bad faith, Defendant SpyIRL.com did not provide accurate contact information to their domain registrar.

141.  By posting the copyrighted photographs on Twitter, SpyIRL.com reduced the commercial value of the photographs by making them available for free to the public and anyone who was searching Ms. Morton's Twitter username or hashtag. By imputing that these images were somehow associated with illegal voyeur pornography, SpyIRL.com and Twitter have effectively destroyed the commercial value of the Images and the commercial value of the collections of the Images offered for sale and contemplated for future sales.

**VICARIOUS INFRINGEMENT**

**(Against Defendant Twitter.com)**

142.    Ms. Morton incorporates by reference all preceding allegations as though fully set forth herein and further alleges:

143.    Defendant Twitter had the right and ability to supervise and control the infringing activity by being able and authorized to suspend the @SpyIRL account for violating its terms and services prior to the infringement, and Twitter's bad faith failure to enforce its policies against @SpyIRL and suspend the account is the proximate cause of the infringement.

144.    After the infringement occurred, Twitter still had the right and ability to supervise and control the infringing activity by being able to remove the content from their website and having the statutory authority and contractual duty to do so, particularly as it was included in a tweet containing a link to purchase a subscription to illegally-obtained video voyeur pornography that profited off human trafficking and the sexual exploitation of children in violation of Twitter's policies.

145.    Twitter had a direct financial benefit from the infringing activity because Twitter collects user data that it sells to third parties and/or incorporates into their own advertising models, and because Twitter's value increases proportionally with the increase of its "mDAU" (or monetizable Daily Active Usage), and the infringement of Plaintiff's copyrighted images that were exclusively available for purchase on her website would and did result in additional user traffic and monetizable data.

146.    Defendant Twitter does not reasonably implement a policy that provides for the termination of subscribers and account holders who are repeat offenders in violation of Section 512(i)(1)(A). Although such a policy exists, it is not enforced against the Defendants and their agents and affiliates, and Twitter benefits financially from refraining to reasonably implement the policy because a substantial portion of Twitter, Inc.'s revenue is derived from the sale and collection of data across the internet,

1    and a substantial portion of data-generating traffic is derived from

2    Pornhub.com, and their affiliates and related websites and companies, at

3    least one of which receives an estimated 120,000,000 unique user visits

4    per day.

5    147.   Defendant Twitter does not reasonably implement their policy to terminate

6    accounts that link to or involve companies directly profiting off human

7    trafficking and the exploitation of children.

8    148.   When a copyright infringement claim is submitted, and Twitter has actual

9    knowledge that the material is infringing, is turning a blind eye and not

10   investigating the context of the infringement or the account holder to

11   determine whether the unlawful activity is connected to the exploitation of

12   children, trademark infringement, publicity rights, false advertising, or

13   violates any of their other policies, including its policy regarding the

14   advertising and promotion of pornographic websites. To limit their costs

15   and inflate their mDAU, thereby deriving a direct financial benefit, Twitter

16   is either complicit or remaining willfully ignorant regarding the

17   circumstances of account holders who violate state and federal law.

18   149.   Plaintiff submitted three demands to Twitter, Inc. to take down the

19   infringing material, and Twitter, Inc. issued their report numbers:

20   0155741360; 0155743889; and 0155742748.

21   150.   Doe Defendants, other persons or entities currently unknown to Plaintiff,

22   had the right and ability to supervise and control SpyIRL.com's infringing

23   activity and had a direct financial benefit from the activity.

24              **DIRECT AND CONTRIBUTORY INFRINGEMENT**

25                    **(against Defendant Twitter, Inc.)**

26   151.   Ms. Morton incorporates by reference all preceding allegations as though

27   fully set forth herein and further alleges:

28

37

152.    Defendant Twitter, Inc. is a corporation that owns, among other assets, Twitter.com.

153.    Defendant Twitter, Inc. had knowledge of Twitter.com's direct infringement of copyrighted materials by caching and, in a novel and more advanced way, directly copying data using technological processes for Twitter.com's more efficient, elastic data storage and CDN in the newer cloud architecture, and Twitter, Inc. materially contributed to the infringement by providing the funding and/or technological means to create the cloud architecture and technology to upload, embed, or otherwise cause the images to be copied onto numerous servers worldwide and throughout the universe.

154.    By facilitating Twitter.com's infringement of copyrighted materials, Twitter, Inc. and its officers obtained a competitive advantage over other social networking companies who do not engage in these more complicated technological processes that require unnecessary and excessive infringement of copyrights in order to increase speed of data transfer and data capacity.

155.    Twitter, Inc., and / or its agents or other Doe Defendants currently unknown to Plaintiff, materially contributed to the infringement by providing the @SpyIRL account user with the technological means by which to crop and upload the images, and induced the infringement either directly or by using strategic partners to instruct the infringer to commit the infringement.  Defendants had the right and ability to control the user of the @SpyIRL account because they could have terminated the account or restricted access to advanced image upload technology to purveyors of illegal pornography.

## SECOND CAUSE OF ACTION

### FOSTA-SESTA

**18 U.S.C. § 1595**

156. Ms. Morton incorporates by reference all preceding allegations as though fully set forth herein and further alleges:

157. Using Twitter.com, Defendant SpyIRL.com advertises, purchases, distributes, and displays voyeur video including footage obtained from parties who knowingly, in or affecting interstate or foreign commerce, recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means a person, knowing, or in reckless disregard of the fact that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.  Defendant Twitter, Inc. collects the data made available by these illicit acts and sells it to third parties, including global hedge funds who know or should have known of the tainted source of the data and the way this model incentivizes human trafficking, child sexual exploitation, and nonconsensual nudity obtained by spy cameras.

158. These sex acts are filmed for the purpose of sale and distribution on SpyIRL.com and its Content Partner Pornhub. SpyIRL.com induces human traffickers to commit violations by offering a profit motive to parties who create videos and requires no proof of consent or age of the parties appearing in the video footage.  Defendants receive valuable traffic and user data from knowingly supporting or facilitating the unlawful commercial sex acts by paying affiliates of the purchaser of the video content or otherwise incentivizing the perpetrator to generate the content that will attract and drive content.

159. Plaintiff has been directly and proximately harmed as a result of the commission of a Federal offense in furtherance or promotion of a criminal

39

1    enterprise that profits from human trafficking and the sexual exploitation
2    of children.

3  160.  Defendant SpyIRL.com misappropriated Plaintiff's name, likeness,
4       intellectual property, and commercial rights to such an extent that Ms.
5       Morton was effectively placed into the forced service of a purveyor of
6       illegal pornography who used her commercial property and value without
7       compensation to drive traffic and collect affiliate fees.

8  161.  SpyIRL.com used Ms. Morton's name, likeness, and intellectual property
9       Images at the direction of its content partner Pornhub.com and/or
10      Twitter.com to the benefit of Twitter, Inc., and Defendant Twitter, Inc.
11      derived a quantifiable financial benefit from the misappropriation of Ms.
12      Morton's commercial property.

13 162.  Defendant Twitter, Inc. knowingly refused to suspend an account that
14      brazenly and openly uses Twitter.com to promote and sell illegal
15      pornography purchased from third parties internationally in complete
16      disregard of the fact that it involves the sexual exploitation of children.

17              **THIRD CAUSE OF ACTION**
18          **MISAPPROPRIATION / RIGHT OF PUBLICITY**
19        **CALIFORNIA CODE OF CIVIL PROCEDURE § 3344**

20 163.  Ms. Morton incorporates by reference all preceding allegations as though
21      fully set forth herein and further alleges:

22 164.  Defendant SpyIRL.com knowingly and willfully used Plaintiff's name,
23      image, likeness and Twitter account handle on a post on Twitter for the
24      purposes of advertising, selling, or soliciting purchases of their
25      subscription products and website without Ms. Morton's consent,
26      authorization, or knowledge.  Specifically, SpyIRL.com used its @SpyIRL
27      Twitter account to post a Tweet accessible worldwide to the public that
28      contained Plaintiff's name, Twitter username, and nude photographic

image without her consent for the purpose of attracting Twitter users,
driving valuable traffic and capturing valuable user data, promoting its
brand and website, and to solicit purchases of subscriptions to its website
offering pornographic video content seemingly obtained in violation of
state and federal privacy and trafficking laws.

165.   Defendant SpyIRL.com's use of Plaintiff's name, including her account
username and hashtag, and image falsely implied or suggested to followers
and to anyone searching Ms. Morton's name, username, or hashtag that
authorized images of Ms. Morton were available for purchase on
SpyIRL.com's website alongside SpyIRL.com's illegal pornography,
and/or that Ms. Morton, a professional model, had authorized the use of
her name, image and likeness to SpyIRL.com for purposes of endorsing
the company and/or its products or subscription to illegal pornography that
actually does contribute to, or is at least widely perceived as contributing
to, human trafficking, nonconsensual filming of people engaging in
private, often sexual acts, and the sexual exploitation of children.
Defendant knew this to be false, and knew Plaintiff would not have
consented to endorsing this company.

166.   Defendant's Tweets containing Ms. Morton's name, image, and likeness
included a link to Verotel's website where a user could purchase a
subscription to SpyIRL.com for $29.99 by entering credit card
information, falsely implying that Ms. Morton's copyrighted photographic
images were available on SpyIRL.com, and Ms. Morton would not have
allowed her name and likeness to be used at any price or under any
circumstances in association with SpyIRL.com or Verotel because it is a
payment processor exclusively associated with pornographic content.

167.   Plaintiff would never have agreed to advertise Defendant SpyIRL.com's
website because the Defendant is engaged in the distribution of illicit

video content that incentivizes and promotes human trafficking and child sexual exploitation, and professionally associating with such an enterprise would and has resulted in in incalculable, catastrophic damage to Ms. Morton's professional image, personal reputation and commercial brand value.

168. Plaintiff alleges that Defendant SpyIRL.com's website is either owned by, affiliated with, or maintains a pecuniary relationship with all other Defendants such that each of the Defendants incurred a direct financial or commercial benefit from the misappropriation of Plaintiff's name and likeness. As a direct result of Defendant SpyIRL.com's unauthorized use of Ms. Morton's name and likeness, as well as her copyrighted photographs, Defendant Twitter collected monetizable data it could not have lawfully obtained.

169. Defendant Twitter, Inc. induced and/or instructed SpyIRL.com to commit the misconduct herein described, provided the means by which to commit the misconduct, and upon discovering the misconduct after Plaintiff notified Twitter, Inc. on May 19, 2020, deliberately refused to suspend the account, delete the tweets, or take any other measure to mitigate the damages to Ms. Morton and obtained and continues to obtain both a commercial advantage as well as direct financial gain from the misconduct of their user @SpyIRL and its affiliated companies.

170. The misappropriation and unlawful use of Ms. Morton's name, image, photograph, and likeness by a website that deals in illegally-obtained pornographic content involving sex trafficking and child sexual exploitation has resulted in severe damages to Ms. Morton's professional reputation and commercial value as a model and public figure because any of Ms. Morton's fans and potential employers who have searched her name on Twitter or on various search engines may have been led to

1   believe she was in adult entertainment affiliated with Defendant's

2   exploitative website and unlawful activities.

3   171.   Defendant SpyIRL.com's Tweets containing Plaintiff's name and false

4   statements appear on Twitter to this day, and Twitter refuses to or willfully

5   neglects to remove them or suspend the account.

6   172.   Twitter knew or should have known that well before the Tweets were ever

7   posted, @SpyIRL was operating in violation of Twitter's User Agreement

8   and for an improper purpose, advertising illegal pornography in violation

9   of Federal and state laws, but Twitter did not suspend the @SpyIRL

10   account and, to the detriment of Plaintiff, derived a financial benefit by not

11   exercising their contractual and legal duties to suspend the account before

12   the user ever had an opportunity to post the Tweets.

13   173.   The misappropriation of Ms. Morton's nude image, an image that she

14   would never have licensed to a pornography company, not only violates

15   Twitter's nonconsensual nudity policy but also compounds the

16   egregiousness of Defendants' conduct because Ms. Morton did not

17   authorize her nude image to be used to promote @SpyIRL's products or

18   Twitter or permit her nude image and name to be used in connection with

19   driving user traffic in furtherance of a scheme to collect user data. Ms.

20   Morton's loyal fanbase of over 3,500,000 includes the precise type of

21   people in a consumer demographic that Twitter and pornography websites

22   seek to attract, and not only has Ms. Morton been injured, but her fans

23   have been lured by the misuse of her name and image and their data has

24   been collected.

25   **FOURTH CAUSE OF ACTION**

26   **FALSE ADVERTISING / LANHAM ACT § 43(A)**

27   174.   Ms. Morton incorporates by reference all preceding allegations as though

28   fully set forth herein and further alleges:

43

175.   Defendant SpyIRL.com's agent and/or Doe Defendant user of the @SpyIRL Twitter account, in the course of employment with SpyIRL.com, made a false or misleading statement of fact in the Tweets posted containing Ms. Morton's copyrighted Images as well as her name and likeness in a commercial advertisement for the SpyIRL.com subscription, and the statement had the capacity to deceive a substantial segment of potential consumers, including Ms. Morton's fans and followers seeking to purchase Ms. Morton's Images. The deception, namely the inaccurate portrayal that Ms. Morton's images were either affiliated with SpyIRL.com and its related obscene content or that Ms. Morton's Images would be available upon purchasing the SpyIRL.com subscription package for a substantially lower price than on Ms. Morton's website, was likely to influence the consumer's purchasing decision. Ms. Morton was therefore likely to be injured as a result of the statement due to the loss of sales to an unauthorized dealer and/or the imputation that Ms. Morton's images were somehow affiliated with a purveyor of illegally-obtained, deeply offensive pornography.

176.   Although the media containing Ms. Morton's Image containing her nude likeness were removed by Twitter, the Tweets containing the misrepresentations and false advertising language remain visible to date due to Defendant Twitter, Inc.'s refusal to remove the Tweets as alleged herein.

## **FIFTH CAUSE OF ACTION**
### **FALSE LIGHT**

177.   Ms. Morton incorporates by reference all preceding allegations as though fully set forth herein, and further alleges:

178.    Defendant SpyIRL.com, by and through its employees or agents, posted a
        series of four Tweets accessible to the public on Twitter and are attached
        as Exhibits A and Exhibit C that sufficiently identified Plaintiff by using
        Plaintiff's name, Twitter username and hashtags, likeness and image,
        including her nude image, without her knowledge or consent, and the
        message falsely implied that (1) Plaintiff's copyrighted images could be
        purchased through the link to SpyIRL.com's payment processor; (2) that
        Plaintiff was endorsing, profiting from, or otherwise professionally
        associated with the SpyIRL.com enterprise; and (3) that SpyIRL.com had
        some kind of authorship claim to the images, and that Ms. Morton had
        fraudulently registered them with the U.S. Copyright office. Defendant
        SpyIRL publicly made these statements even though Defendant knew the
        disclosures would place Plaintiff in a false light and took this action
        deliberately, brazenly including Ms. Morton's name, including hashtags,
        and username so that she and her fans and followers would view this
        information.

179.    The imputation of a professional affiliation with the SpyIRL.com website
        that not only buys, sells, displays and otherwise provides obscene content,
        but content advertised as having been obtained in violation of privacy laws
        and/or sex trafficking laws, including child sex trafficking laws, would be
        highly offensive to a reasonable person, and the implication caused actual
        damage to Plaintiff's personal and professional reputation and resulted in
        loss of business income and loss of followers on social media platforms.

180.    Defendant Twitter, Inc. has the right or ability or a duty to control the
        activities of Defendant SpyIRL.com through its @SpyIRL Twitter
        account, and any other accounts it operates, expressly pursuant to its own
        terms and conditions, but it derived a financial benefit from refusing to

1    suspend the @SpyIRL account and from the valuable user data and traffic

2    resulting from the misrepresentation.

3  181.  Defendant Twitter, Inc. has the right or ability or a duty to control the

4    activities of Defendant SpyIRL.com by controlling its @SpyIRL account

5    and ability to post on Twitter's website, and Twitter, Inc. knew or should

6    have known that the SpyIRL.com's posts, including the link to an adult

7    entertainment payment processor and the use of a public figure's name and

8    likeness to promote the sale of a subscription to illegal pornography.

9                    **SIXTH CAUSE OF ACTION**

10                    **DEFAMATION / LIBEL**

11                  **California Civil Code § 46**

12  182.  Ms. Morton incorporates by reference all preceding allegations as though

13    fully set forth herein and further alleges:

14  183.  Defendant @SpyIRL User publicly made the false statement of fact on

15    Twitter.com in a Tweet: "@genevievemorton even though she copyrighted

16    my images… she is a goddess who should be worshipped I suggest you go

17    check her out… absolute perfection." A true and correct copy of a

18    screenshot of this Tweet, still visible on Twitter, is attached as Exhibit C.

19  184.  A reasonable person would believe the statement of fact "she copyrighted

20    my images" meant that Plaintiff Ms. Morton committed a violation of

21    federal law in registering images for copyright protection that actually

22    were authored by or otherwise belonged to SpIRL.com.  Moreover, a

23    reasonable person would infer that the Images mentioned in this tweet

24    were the Images that had been removed in the previous three tweets,

25    falsely suggesting by implication that the @SpyIRL User had somehow

26    been involved with the creation of the Images, thereby reinforcing the

27    misperception that the Ms. Morton was affiliated with the Defendant, that

28    the Images were indeed available for sale on the link provided in the tweet.

185.    This false statement tends to injure Ms. Morton's professional reputation as a model by imputing to her general disqualification in those respects which her profession peculiarly requires and imputing to her reputation a professional association with this purveyor of illegal "upskirt" pornography which has a logical tendency to destroy entirely her reputation as a professional model and brand ambassador.

186.    The statement is false and caused actual damage by making people believe Ms. Morton was a) involved with the pornographer; and b) had committed some kind of misconduct with respect to intellectual property when in fact it was her intellectual property all along and she did not know this user.

187.    The statement is false and also the implication of a professional relationship between Ms. Morton and a Pornhub.com "Content Partner," particularly when over 2,000,000 people have signed a petition against Pornhub due to multiple allegations of rape, human trafficking, and child sexual exploitation in association with their business model and content, the damage to Ms. Morton's professional reputation is catastrophic.

**VICARIOUS LIABILITY**

188.    Ms. Morton incorporates by reference all preceding allegations as though fully set forth herein and further alleges:

189.    Defendant Twitter, Inc. provided the Twitter.com API (application programming interface) for the defamatory statements to be widely published, and Twitter, Inc. actually published these statements. If Twitter, Inc. demanded that Twitter.com enforce its express and unequivocal policies that account holders reasonably rely upon in maintaining an account, the @SpyIRL account would have been suspended, preventing the defamatory statements from being published, but as alleged herein, Twitter benefits financially from failing to enforce its policies.

190.   Defendant Twitter refused to remove the defamatory tweets or suspend the @SpyIRL user despite Plaintiff's pleas and demands to do so.

191.   Defendant Twitter, Inc. is a corporation that generates alternative sources of revenue from the data obtained through the misuse of the immunized Twitter.com website, as alleged herein, and it is liable for its misconduct and the misconduct of its officers, agents, affiliates, and users like its agent, SpyIRL.com who maintains an account on Twitter.com under the handle @Spyirl and drives traffic to and from Twitter.

192.   By failing to suspend the @SpyIRL user and continuing to let this trafficker of illegal pornography obtained in violation of state and federal law featuring nonconsensual nudity and contributing to the trafficking of women and the sexual exploitation of minors, Defendant Twitter, Inc. has relinquished its right to any immunity under Section 230 of the Communications Decency Act through its own misconduct and therefore should be held vicariously liable for the libelous statements of the @SpyIRL user.

### SEVENTH CAUSE OF ACTION

### UNFAIR COMPETITION / CONTRACTUAL FRAUD

### CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200

193.   Ms. Morton incorporates by reference all preceding allegations as though fully set forth herein and further alleges:

194.   Defendant Twitter.com fails to disclose to users that the primary source of their revenue is in private data collection and that they collect data across third party websites that amounts to a "digital fingerprint," as that term is defined herein, of their users.  Plaintiff was not informed of the new policy and did not consent to permitting Twitter, Inc. to collect her data across third party websites and did not agree to maintain an account subject to that condition. Plaintiff did not consent to having her name and likeness

1        and intellectual property used in furtherance of a scheme to collect data

2        across pornographic websites.

3    195.   Twitter, Inc. intends to mislead its users and account holders, and maintain

4        Twitter.com's claims to immunity for misconduct maintaining ambitious,

5        noble policies against abusive tactics and sex trafficking, nonconsensual

6        nudity, and child sexual exploitation, but deliberately refuses to enforce

7        these policies, and Twitter, Inc. derives a direct financial benefit and

8        additional competitive advantages from the lack of enforcement.

9    196.   Twitter.com expressly states: "We blacklist or provide warnings about urls

10        we believe to be unsafe…For severe violations, accounts will be

11        permanently suspended at first detection." "For certain categories of

12        content that, if posted directly on Twitter, would violate our rules. This

13        includes links to websites that feature child sexual exploitation (CSE),

14        media depicting CSE… and Non-Consensual Nudity Intimate media of

15        someone that was shared without their consent." A true and correct copy

16        of Twitter's policy is attached as Exhibit ___.

17    197.   As of September 2019, Twitter.com expressly maintained a "Non-

18        Consensual Nudity Policy" that stated: "Under this policy, you can't post

19        or share explicit images or videos that were taken, appear to have been

20        taken or that were shared without the consent of the people involved.

21        Examples of the types of content that violate this policy include, but are

22        not limited to: hidden camera content featuring nudity, partial nudity,

23        and/or sexual acts; creepshots or upskirts - images or videos taken of

24        people's buttocks, up an individual's skirt/dress or other clothes that

25        allows people to see the person's genitals, buttocks, or breasts;…"  Twitter

26        claims that a violation of this policy will result in the following action:

27        "We will immediately and permanently suspend any account that we

28        identify as the original poster of intimate media that was created or

shared without consent. We will do the same with any account that posts only this type of content, e.g., accounts dedicated to sharing upskirt images."

198.  Plaintiff relied on Twitter.com representations and created and maintained an account pursuant to the policies outlined in Twitter.com's User Agreement, investing time and effort on interacting with Twitter users to grow a following.

199.  Despite Twitter.com's assurances, it did not suspend or terminate an account that blatantly and unabashedly violates Twitter's policies.

200.  If Twitter.com enforced its Non-Consensual Nudity Policy, the @SpyIRL User would have been immediately and permanently terminated long before it had the opportunity to post the Tweets that are the subject of this action that damaged Ms. Morton.

201.  The deliberate refusal of Twitter.com to honor its agreement and enforce its policies amounts to fraudulent, bad faith conduct that is the proximate cause of the harm suffered by Plaintiff, including not only the copyright violations, the false light Plaintiff has been placed in, the commercial misappropriation of her name and likeness, and the harm to her professional and personal reputation, but also the eleven years of efforts Plaintiff has made to supporting the Twitter.com social media platform that ultimately misleads, defrauds and betrays the very Verified Account users who have made it as valuable as it is today.

202.  Plaintiff is informed and believes and, on that basis, alleges that Twitter.com does not enforce its Non-Consensual Nudity Policy because it measures its value by the number of users on its platform and earns money from the collection and sale of private user data.

203.  Twitter, Inc. declines to enforce its policies in bad faith, and instead enjoys the fraudulent appearance of having strict policies against copyright

infringers and purveyors of pornography involving non-consensual sex acts and child sexual exploitation while deriving a direct financial benefit from quietly refusing to enforce them.

204.    Plaintiff relied on Twitter.com's representations in their stated policies and/or EULA and expended substantial efforts over the past eleven years to engage with other users and post valuable content on Twitter.com as a verified user with thousands of followers, driving a portion of her followers from other social media sites to Twitter.com and its affiliated company, Periscope.com.  In the early days of Twitter's acquisition of Periscope.com, Plaintiff was featured on the Today Show as one of the top early adopters of the Periscope platform. Plaintiff made 153 broadcasts and accumulated over 2,000,000 engagements.  In short, Plaintiff has been extremely supportive of Twitter, Inc. and its various entities in reliance on Twitter.com's policies of creating a safe social media platform, but Twitter.com has not enforced its policies.

205.    In reality, Twitter.com misrepresented their actual policy, fraudulently benefiting from celebrities' and other Verified Users' reliance on Twitter's stated policies to create a family-friendly mainstream platform for social interaction when, in fact, Twitter was increasingly cooperating quietly with the pornography industry to drive user traffic between and among their platforms in order to inflate their mDAU and collect and monetize private user data to maximize profits and increase their share price.

206.    Plaintiff is informed and believes and, on that basis, alleges that Twitter actively de-platforms users who report copyright violations and otherwise assert their legal rights. Plaintiff has lost over 2,000 followers since she reported the copyright infringement, and this policy of de-platforming punishes those who seek to enforce the law while incentivizing those who violate the law.  This oppressive practice amounts to bad faith conduct

1      motivated ultimately by greed to maximize user engagement and increase

2      mDAU to increase advertising revenue at the expense of those who

3      enforce copyright.

4   207.   Twitter maintains an algorithm that accelerates the damage caused by false

5      allegations and portraying users like Plaintiff in a false light with respect to

6      the pornography industry and its hundreds of millions of unique visitors.

7      Since Plaintiff's name and likeness were misappropriated and used in

8      connection with false advertising of the @SpyIRL User's Tweets and

9      website, Plaintiff has accumulated followers and messages that are atypical

10     compared to her users and messages in prior years.  Thus, while only some

11     Twitter users may have initially misunderstood Plaintiff to be somehow

12     affiliated with @SpyIRL, now thousands more users mistakenly believe

13     Ms. Morton to be categorized as an adult entertainer due to Twitter's

14     unfair business practices and complicated algorithm that deceive Verified

15     Users into maintaining an account to the direct financial benefit of Twitter,

16     Inc. who use its Verified Account holders to attract and drive traffic.

17                                **EIGHTH CAUSE OF ACTION**

18   **NEGLIGENT / INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

19   208.   Ms. Morton incorporates by reference all preceding allegations as though

20      fully set forth herein and further alleges:

21   209.   Defendant SpyIRL.com intentionally made false statements about Ms.

22      Morton having a professional association with their pornography business

23      and that Ms. Morton had violated federal law in improperly registering the

24      Images, effectively creating the false impression that Ms. Morton was

25      professionally associated with a business that deals in pornography

26      featuring trafficked women and children. This and the other extreme and

27      outrageous acts described herein were committed either with the intention

28

1    of causing Ms. Morton extreme emotional distress or in reckless disregard

2    of the same.

3    210.   Ms. Morton has suffered extreme emotional distress as a result of

4    SpyIRL.com's extreme and outrageous conduct and has sought medical

5    treatment for physical symptoms of the emotional distress.

6    211.   Defendant Twitter, Inc. failed to police its platform as alleged herein,

7    refused to suspend the @SpyIRL user account in accordance with its own

8    policies, and deliberately began to take retaliatory action against Ms.

9    Morton who lost hundreds of followers each time she reported copyright

10   violations.

11   212.   Twitter, Inc. does not offer a way to protect users, especially Verified

12   Users, who encounter hundreds and thousands of unsolicited pornographic

13   messages, Ms. Morton has to visit the pornographic accounts to block

14   them one at a time, and Ms. Morton has blocked several hundred

15   pornographic accounts to try to protect her image from further damage.

16   This method to block pornographic accounts unreasonably burdens the

17   user with exposing the user to the accounts' pages where extremely

18   offensive and obscene material is in plain sight including extremely

19   degrading and disturbing images of people who appear to be extremely

20   young.

21   213.   These extreme and outrageous acts, including being falsely accused of

22   endorsing or otherwise associated with highly illegal, extremely offensive

23   pornography and making every futile attempt in good faith to remedy this

24   situation without resorting to bringing an action for damages, and the other

25   actions as alleged herein, have caused Ms. Morton actual, severe

26   emotional distress, adversely affecting her physical and mental health.

## NINTH CAUSE OF ACTION: COMMON COUNT

## UNJUST ENRICHMENT

214.   Ms. Morton incorporates by reference all preceding allegations as though fully set forth herein and further alleges:

215.   All Defendants have unjustly received a benefit of direct financial gain, increased valuable user traffic, a competitive advantage, and monetizable user data.

216.   Defendant Twitter, Inc. has directly used the data Twitter.com collects and the user traffic driven to Twitter.com to sell advertising on Defendant Twitter, Inc.'s websites or data that has been sold directly, and Defendants have unjustly retained that benefit at the expense of Ms. Morton.

217.   Ms. Morton is a professional model whose extensive fan base worldwide enables her to charge a fee for and earn a living by endorsing a product, service, or website. However, Defendant SpyIRL.com did not offer to pay Ms. Morton for her professional services, Images, or endorsement at her customary rates to drive the traffic they wanted from Twitter to Pornhub.com and elsewhere because they knew Ms. Morton would likely have refused offers of employment because of the illegal, pornographic nature of the material that contributes to human trafficking and the sexual exploitation of children.

218.   Without Ms. Morton's consent and without compensating Ms. Morton, Defendants obtained the benefit of attracting her followers and all the valuable data they provided and the proceeds from that data and have retained that benefit while Ms. Morton has suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.   For an Order enjoining Defendants, their officers, agents, employees, temporarily during the pendency of this action and permanently thereafter:

a.  from infringing or contributing to the infringement by others the
    copyright in Plaintiff's Images or acting in concert with, aiding and
    abetting others to infringe said copyright in any way; and

b.  from copying, duplicating, selling, licensing, displaying, distributing,
    or otherwise using without Plaintiff's authorization copies of
    Plaintiff's Images to which Plaintiff is the owner of exclusive rights
    under the respective copyrights or making derivative works based
    thereon; and

c.  from selling or otherwise monetizing any and all data that has been
    collected from websites that display illegal pornographic content; and

d.  to enforce all policies related to accounts engaged in child sexual
    exploitation or other forms of illegal pornography, including,
    specifically, suspending the @SpyIRL account and any accounts
    owned by the user; and

e.  to delete the Tweets that form the subject of this action; and

f.  to remove any and all of  Plaintiff's copyrighted Images; and

2.  For an award of actual damages suffered by Plaintiff as a result of the
    infringement and any profits of the Defendants attributable to the
    infringement of Plaintiff's exclusive rights under copyright and to pay such
    damages to Plaintiff as to this Court shall appear just and proper, or in the
    alternative, at Plaintiff's election, statutory damages for infringement as set
    forth in 17 U.S.C. § 504 in an amount no less than $150,000 per instance, at a
    minimum of eighteen instances, for an amount no less than $2,700,000
    against each Defendant, and any additional instances infringement by
    Twitter, Inc. discovered through the course of the litigation; and

3.  For an award of damages for Plaintiff's actual, general, and special damages
    with respect to all claims in an amount to be proven at trial; and that

1    Defendants be disgorged of any profits related to or derived from the

2    misconduct;

3    4. For an award of attorneys' fees pursuant to 17 U.S.C. § 505;

4    5. For an award of pre-judgment interest and post-judgment interest in the

5    maximum amount permitted by law;

6    6. For an award of exemplary damages;

7    7. For such other and further relief as the Court deems just and proper.

8

9    Plaintiff hereby requests a jury trial on all triable issues.

10

11   Dated this 13th day of November 2020.

12

13                                                              JENNIFER HOLLIDAY, ESQ.

14                                                              ATTORNEY FOR PLAINTIFF

# Exhibit A



**Spy IRL : SpyIRL : SpyIRL.com** · 17h    ⌄

#Genevieve #Morton. Perfect. Use the #SpyIRL #Discount #Link below and get a much #Cheaper #Membership. If youre into #School #Spy #Cams #Teacher #Upskirts #See #Through #Yogapants. #Join now this spyirl #Deal ends soon! -> links.verotel.com/resellerbanner...



 **Spy IRL : SpyIRL : SpyIRL.com** @... · 3h ⌄
@genevievemorton . Holy Goddess. Also get a #Discount on #SpyIRL #Paysite below for much #Cheaper. Be the first as a #Spy #IRL #Member to watch 1000's of #Hidden #Private #Amateur #Vids & #Pics. Treat yourself this SpyIRL #Promo is a Limited #Offer! -> links.verotel.com/ resellerbanner...



 **Spy IRL : SpyIRL : SpyIRL.com** @... · 3h ⌄

@genevievemorton. More Perfection. If you want a #Discount #Link on #SpyIRL. #Premium #Spy #IRL #Members get 1000's of #Hidden #Amateur #Voyeur #Videos & #Pics for #Cheaper now. #Signup now - This SpyIRL #Sale is a Limited #Deal! ~> links.verotel.com/resellerbanner...



# Exhibit B

Begin forwarded message:

**From:** Twitter Support <support@twitter.com>
**Subject: We got your report 0155741360 [ref:00DA0000000K0A8.5004A00001wL5Ov:ref]**
**Date:** May 19, 2020 at 9:53:28 PM PDT
**To:** "jennymorrison@icloud.com" <jennymorrison@icloud.com>



Hello,

This is an auto-confirmation that we have received your copyright report. Twitter will reply as soon as possible.

Copyright complaints concern the unauthorized distribution or republishing of material protected by copyright law. Here are some examples of possible copyright issues on Twitter:

1. Twitter account publishing links to free downloads of copyright protected materials
2. Twitter account using a copyright protected logo or image

If your report does not involve a copyright protected image that is being used as a Twitter account background or profile image, or Tweets containing links to unauthorized publication of copyright protected materials, most likely, it is not a Twitter copyright issue.

Many people confuse copyright with trademark. For information on reporting other possible Terms of Service violations, including possible trademark issues, please see this page: https://help.twitter.com/rules-and-policies/twitter-report-violation.

If you have concerns regarding an urgent issue relating to abuse or safety on Twitter please refer to the Twitter rules here: https://help.twitter.com/rules-and-policies/twitter-rules.

Thanks,

Twitter

Please note, we cannot accept email attachments at this time; please include all information in the body of your request.

-------------------------------------------------- Your ticket number: # 0155741360

DMCA Takedown Notice

== Copyright owner: Genevieve Morton
== Name: Jennifer Holliday
== Company: Law Offices of Jennifer Holliday
== Job title: Attorney
== Email address: jennymorrison@icloud.com

== Address: 7190 W. Sunset Blvd. #1430
== City: Los Angeles
== State/Province: CA
== Postal code: 90046
== Country: USA
== Phone (optional): n/a
== Fax (optional): n/a

-------

== Description of original work: Photograph of Genevieve Morton in black and white that is currently available for sale exclusively on her personal website.

== Links to original work: https://www.genevievemorton.com

---

== Reported Tweet URL: https://twitter.com/SpyIRL/status/1262692935755276290

== Description of infringement: This account has posted 3 tweets containing images that are protected under copyright held by model Genevieve Morton (Twitter account @genevievemorton) who commissioned the works and sells them exclusively on her website. The content of this tweet and two others are copyrighted. Please take down the content and suspend the account.

-------

== 512(f) Acknowledgment: I understand that under 17 U.S.C. § 512(f), I may be liable for any damages, including costs and attorneys' fees, if I knowingly materially misrepresent that reported material or activity is infringing.

== Good Faith Belief: I have good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

== Authority to Act: The information in this notification is accurate, and I state under penalty of perjury that I am authorized to act on behalf of the copyright owner.

== Signature: Jennifer Holliday

ref:00DA0000000K0A8.5004A00001wL5Ov:ref

**From:** Twitter Support <support@twitter.com>
**Subject: We got your report 0155743889 [ref:00DA0000000K0A8.5004A00001wL65t:ref]**
**Date:** May 19, 2020 at 10:11:45 PM PDT
**To:** "jennymorrison@icloud.com" <jennymorrison@icloud.com>



Hello,

This is an auto-confirmation that we have received your copyright report. Twitter will reply as soon as possible.

Copyright complaints concern the unauthorized distribution or republishing of material protected by copyright law. Here are some examples of possible copyright issues on Twitter:

1. Twitter account publishing links to free downloads of copyright protected materials
2. Twitter account using a copyright protected logo or image

If your report does not involve a copyright protected image that is being used as a Twitter account background or profile image, or Tweets containing links to unauthorized publication of copyright protected materials, most likely, it is not a Twitter copyright issue.

Many people confuse copyright with trademark. For information on reporting other possible Terms of Service violations, including possible trademark issues, please see this page: https://help.twitter.com/rules-and-policies/twitter-report-violation.

If you have concerns regarding an urgent issue relating to abuse or safety on Twitter please refer to the Twitter rules here: https://help.twitter.com/rules-and-policies/twitter-rules.

Thanks,

Twitter

Please note, we cannot accept email attachments at this time; please include all information in the body of your request.

-------------------------------------------------- Your ticket number: # 0155743889

DMCA Takedown Notice

== Copyright owner: Genevieve Morton
== Name: Jennifer Holliday
== Company: Law Offices of Jennifer Holliday
== Job title: Attorney at Law
== Email address: jennymorrison@icloud.com

== Address: 7190 Sunset Blvd. # 1430
== City: Los Angeles
== State/Province: CA
== Postal code: 90046
== Country: United States
== Phone (optional): n/a
== Fax (optional): n/a

-------

== Description of original work: Black and white photographic images of Genevieve Morton owned by Genevieve Morton and for sale exclusively on her website.

== Links to original work: http://www.genevievemorton.com

---

== Reported Tweet URL: https://twitter.com/SpyIRL/status/1262902208821186566

== Description of infringement: This is the third of three tweets from this account that contain photography protected under copyright registered to Ms. Morton. The images are for sale exclusively on Ms. Morton's website and this use is not authorized.

-------

== 512(f) Acknowledgment: I understand that under 17 U.S.C. § 512(f), I may be liable for any damages, including costs and attorneys' fees, if I knowingly materially misrepresent that reported material or activity is infringing.

== Good Faith Belief: I have good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

== Authority to Act: The information in this notification is accurate, and I state under penalty of perjury that I am authorized to act on behalf of the copyright owner.

== Signature: Jennifer Holliday

ref:00DA0000000K0A8.5004A00001wL65t:ref

**From:** Twitter Support <support@twitter.com>
**Subject: We got your report 0155742748 [ref:00DA0000000K0A8.5004A00001wL5xX:ref]**
**Date:** May 19, 2020 at 10:03:25 PM PDT
**To:** "jennymorrison@icloud.com" <jennymorrison@icloud.com>



Hello,

This is an auto-confirmation that we have received your copyright report. Twitter will reply as soon as possible.

Copyright complaints concern the unauthorized distribution or republishing of material protected by copyright law. Here are some examples of possible copyright issues on Twitter:

1. Twitter account publishing links to free downloads of copyright protected materials
2. Twitter account using a copyright protected logo or image

If your report does not involve a copyright protected image that is being used as a Twitter account background or profile image, or Tweets containing links to unauthorized publication of copyright protected materials, most likely, it is not a Twitter copyright issue.

Many people confuse copyright with trademark. For information on reporting other possible Terms of Service violations, including possible trademark issues, please see this page: https://help.twitter.com/rules-and-policies/twitter-report-violation.

If you have concerns regarding an urgent issue relating to abuse or safety on Twitter please refer to the Twitter rules here: https://help.twitter.com/rules-and-policies/twitter-rules.

Thanks,

Twitter

Please note, we cannot accept email attachments at this time; please include all information in the body of your request.

-------------------------------------------------- Your ticket number: # 0155742748

DMCA Takedown Notice

== Copyright owner: Genevieve Morton
== Name: Jennifer Holliday
== Company: Law Offices of Jennifer Holliday
== Job title: Attorney at Law
== Email address: jennymorrison@icloud.com

== Address: 7190 Sunset Blvd. # 1430
== City: Los Angeles
== State/Province: CA
== Postal code: 90046
== Country: United States
== Phone (optional): n/a
== Fax (optional): n/a

-------

== Description of original work: Black and white photography featuring and owned by Genevieve Morton.

== Links to original work: http://www.genevievemorton.com

---

== Reported Tweet URL: https://twitter.com/SpyIRL/status/1262906872656465921

== Description of infringement: Ms. Morton sells these images exclusively on her website, and this tweet (and two others posted by this account) have taken the images and posted them, infringing her copyright.

-------

== 512(f) Acknowledgment: I understand that under 17 U.S.C. § 512(f), I may be liable for any damages, including costs and attorneys' fees, if I knowingly materially misrepresent that reported material or activity is infringing.

== Good Faith Belief: I have good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

== Authority to Act: The information in this notification is accurate, and I state under penalty of perjury that I am authorized to act on behalf of the copyright owner.

== Signature: Jennifer Holliday

ref:00DA0000000K0A8.5004A00001wL5xX:ref

# Exhibit C



# Exhibit D

 **Spy IRL : SpyIRL : SpyIRL.com**
@SpyIRL

#Genevieve #Morton. Perfect. Use the #SpyIRL #Discount #Link below and get a much #Cheaper #Membership. If youre into #School #Spy #Cams #Teacher #Upskirts #See #Through #Yogapants. #Join now this spyirl #Deal ends soon! -> links.verotel.com/resellerbanner…



3:33 AM · 5/19/20 · Twitter Web App



**Spy IRL : SpyIRL : SpyIRL.com**
@SpyIRL

@genevievemorton. More Perfection.
If you want a #Discount #Link on
#SpyIRL. #Premium #Spy #IRL
#Members get 1000's of #Hidden
#Amateur #Voyeur #Videos & #Pics
for #Cheaper now. #Signup now – This
SpyIRL #Sale is a Limited #Deal! ~>
links.verotel.com/resellerbanner...



5:25 PM · 5/19/20 · Twitter Web App

 @SpyIRL

@genevievemorton . Holy Goddess. Also get a #Discount on #SpyIRL #Paysite below for much #Cheaper. Be the first as a #Spy #IRL #Member to watch 1000's of #Hidden #Private #Amateur #Vids & #Pics. Treat yourself this SpyIRL #Promo is a Limited #Offer! -> links.verotel.com/resellerbanner…



5:43 PM · 5/19/20 · Twitter Web App

# Exhibit E

```
Type of Work:        Visual Material

Registration Number / Date:
                     VA0002210005 / 2020-06-08

Application Title: Borneo

Title:               Borneo. [Group registration of published photographs. 160
                       photographs.  2018-02-01 to 2018-11-01]

Description:         160 photographs : Electronic file (eService)

Copyright Claimant:
                     Genevieve Morton, 1986-  .

Date of Creation:  2018

Publication Begin/End Dates:
                     2018-02-01 to 2018-11-01

Nation of First Publication:
                     United States

Authorship on Application:
                     Genevieve Morton, 1986-  ,  employer for hire; Domicile:
                       United States; Citizenship: South Africa. Authorship:
                       photographs.

Copyright Note:      Regarding title information: Deposit contains complete list
                       of titles that correspond to the individual photographs
                       included in this group.
                     Regarding group registration: A group of published
                       photographs may be registered on one application with
                       one filing fee only under limited circumstances. ALL of
                       the following are required: 1. All photographs (a) were
                       created by the same author AND (b) are owned by the same
                       copyright claimant AND (c) were published in the same
                       calendar year AND 2. The group contains 750 photographs
                       or less AND 3. A sequentially numbered list of
                       photographs containing the title, file name and month of
                       publication for each photograph included in the group
                       must be uploaded along with other required application
                       materials. The list must be submitted in an approved
                       document format such as .XLS or .PDF. The file name for
                       the numbered list must contain the title of the group
                       and the Case Number assigned to the application.
                     Regarding group registration: Photograph names within
                       deposit submitted in lieu of photograph title list.

Names:               Morton, Genevieve, 1986-
```

===============================================================================

```
Type of Work:       Visual Material

Registration Number / Date:
                    VA0002211724 / 2020-07-28

Application Title: Borneo 2016

Title:              Borneo 2016. [Group registration of published photographs.
                      14 photographs.  2016-10-01 to 2016-10-31]

Description:        14 photographs : Electronic file (eService)

Copyright Claimant:
                    Genevieve Morton, 1986-  .

Date of Creation:   2016

Publication Begin/End Dates:
                    2016-10-01 to 2016-10-31

Nation of First Publication:
                    United States

Authorship on Application:
                    Genevieve Morton, 1986-  ;  Domicile: United States;
                      Citizenship: South Africa. Authorship: photographs.

Rights and Permissions:
                    Genevieve Morton, speaktogenevieve@genevievemorton.com

Copyright Note:     C.O. correspondence.
                    Regarding title information: Deposit contains complete list
                      of titles that correspond to the individual photographs
                      included in this group.
                    Regarding group registration: A group of published
                      photographs may be registered on one application with
                      one filing fee only under limited circumstances. ALL of
                      the following are required: 1. All photographs (a) were
                      created by the same author AND (b) are owned by the same
                      copyright claimant AND (c) were published in the same
                      calendar year AND 2. The group contains 750 photographs
                      or less AND 3. A sequentially numbered list of
                      photographs containing the title, file name and month of
                      publication for each photograph included in this group
                      must be uploaded along with other required application
                      materials. The list must be submitted in an approved
                      document format such as .XLS or .PDF. The file name for
                      the numbered list must contain the title of the group
                      and the Case Number assigned to the application.

Names:              Morton, Genevieve, 1986-

================================================================================
```

```
Type of Work:        Visual Material

Registration Number / Date:
                     VA0002210694 / 2020-06-21

Application Title: Borneo 2017

Title:               Borneo 2017. [Group registration of published photographs.
                        6 photographs.   2017-01-01 to 2017-01-01]

Description:         6 photographs : Electronic file (eService)

Copyright Claimant:
                     Genevieve Morton.

Date of Creation:  2016

Publication Begin/End Dates:
                     2017-01-01 to 2017-01-01

Nation of First Publication:
                     United States

Authorship on Application:
                     Genevieve Morton; Domicile: United States; Citizenship:
                        United States. Authorship: photographs.

Copyright Note:      Regarding title information: Deposit contains complete list
                        of titles that correspond to the individual photographs
                        included in this group.
                     Regarding group registration: A group of published
                        photographs may be registered on one application with
                        one filing fee only under limited circumstances. ALL of
                        the following are required: 1. All photographs (a) were
                        created by the same author AND (b) are owned by the same
                        copyright claimant AND (c) were published in the same
                        calendar year AND 2. The group contains 750 photographs
                        or less AND 3. A sequentially numbered list of
                        photographs containing the title, file name and month of
                        publication for each photograph included in the group
                        must be uploaded along with other required application
                        materials. The list must be submitted in an approved
                        document format such as .XLS or .PDF. The file name for
                        the numbered list must contain the title of the group
                        and the Case Number assigned to the application.
                     Regarding group registration: Registration extends to
                        corresponding photographs in contents titles and in
                        deposit.

Names:               Morton, Genevieve

===============================================================================
```

# Exhibit F

 **Help Center**

# Our approach to blocking links

## Overview

**July 2020**

At times, Twitter will take action to limit or prevent the spread of URL links to content outside Twitter. This is done by displaying a warning notice when the link is clicked, or by blocking the link so that it can't be Tweeted at all.

We may take action to limit the spread of the following categories of links:

- Malicious links that could steal personal information or harm electronic devices. This includes:

    - Links that contain or lead to malware

    - Attempts at phishing

- Spammy links that mislead people or disrupt their experience. This includes:

    - Malicious redirected links that send people to an unexpected destination

    - Links associated with known platform manipulation campaigns

    - URL shorteners that are primarily used to mislead or deceive people about the website's content.

    - Otherwise misleading or deceptive links; e.g., malicious affiliate links and clickjacking links

*Find out more about our platform manipulation and spam policy (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/platform-manipulation).*

- Certain categories of content that, if posted directly on Twitter, would violate our rules. This includes links to websites that feature:

    - Terrorism and violent extremism (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/violent-groups)

- Media, or other content created by terrorist organizations or violent extremist groups

- Recruitment sites for a terrorist organization or violent extremist group

- Child sexual exploitation (CSE) (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/sexual-exploitation-policy)

  - Media depicting CSE

  - Identification of child survivors of sexual abuse

- Illegal or certain regulated goods or services (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/regulated-goods-services)

  - Offers to buy, sell, or facilitate transactions in illegal goods or services, as well as certain types of regulated goods or services

- Hateful conduct (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/hateful-conduct-policy)

  - Content that promotes violence against, threatens or harasses other people on the basis of race, ethnicity, national origin, caste, sexual orientation, gender, gender identity, religious affiliation, age, disability, or serious disease

- Violence (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/violent-threats-glorification)

  - Content that threatens violence against an individual or a group of people, or glorifies violence where people were targeted because of their membership in a protected group, or the perpetrators of such acts

- Private information (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/personal-information)

  - Other people's private information that was posted without their express authorization and permission

- Non-consensual nudity (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/intimate-media)

  - Intimate media of someone that was shared without their consent

- Content that interferes with civic and election integrity (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/election-integrity-policy)

  - Misleading information about how to vote or register to vote

- Hacked material (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/hacked-materials)

  - Content obtained through hacking that contains private information, may put people in physical harm or danger, or contains trade secrets

- Violent or misleading content that could lead to real-world harm in the aftermath of a crisis incident. This includes, but is not limited to, links to websites that contain:

  - Manifestos associated with violent incidents

  - Media that depicts acts associated with a violent incident

## How we surface links

We use a combination of factors to identify links that we may ultimately take enforcement action against. We receive information about links from many sources, including:

- Third-party vendors who specialize in countering spam and malware

- Collaborative information sharing with industry peers and trusted NGO partners

- Internal technology and tools

- Reported Tweets

## Our enforcement options

We consider several factors when deciding whether to introduce a warning notice to a link, or to prevent it from being shared on Twitter. These considerations include:

- The source of the URL in question and our degree of certainty that the link is malicious or harmful. For example:

  - Links reviewed by Twitter may be blocked outright, whereas a warning notice may be applied to links we first become aware of via lower-confidence information sharing from trusted third parties

- The severity of the website's content

- Context and apparent intent of the link sharer. For instance:

- We may treat newsworthy links shared by journalists differently than if the link were shared by someone else

- We may treat links to websites criticizing or commenting on content that violates our rules differently than links sharing the content straightforwardly or without commentary

- We may treat links with commentary glorifying a violent incident differently than links expressing outrage about the same incident

Accounts dedicated to sharing content which we block, or which attempt to circumvent a block on the sharing a link, may be subject to additional enforcement action, including suspension. Learn more about our range of enforcement options (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/enforcement-options). In some cases, the sharing of a link will also result in account suspension due to a zero-tolerance policy (for instance, if a link is shared to child sexual exploitation content).

**About blocked links**

If we have blocked a link, you will see an error message if you try to include it in your Tweet or Direct Message, or on your profile. The message reads: "You can't complete this action because this link has been identified by Twitter or our partners as being potentially harmful. Please visit our Help Center to learn more."

**About links that have warning notices**

In some instances, Twitter will introduce a warning that the link may be unsafe. The warning notice can be clicked through if you wish to proceed to the third-party site. When a link has been categorized by Twitter as meeting the criteria for a warning notice, it will also have limited visibility on Twitter. Read more about limited Tweet visibility (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/enforcement-options).

# Miscategorized links

We work at a rapid pace and in collaboration with third parties to stay on top of emerging malicious or harmful links. Sometimes, despite our best efforts, links can be miscategorized.

If you notice that a link has been blocked or has a warning notice and you believe this is in error, you can report it to us via this form (https://help.twitter.comhttps://help.twitter.com/forms/spam). In the "problematic link" field, please insert the extended URL of the link, rather than a shortened version.

# Exhibit G

 **Help Center**

# Child sexual exploitation policy

## Overview

**March 2019**

**We have a zero-tolerance child sexual exploitation policy on Twitter.**

Twitter has **zero tolerance towards any material that features or promotes child sexual exploitation**, one of the most serious violations of the Twitter Rules (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/twitter-rules). This may include media, text, illustrated, or computer-generated images. Regardless of the intent, viewing, sharing, or linking to child sexual exploitation material contributes to the re-victimization of the depicted children. This also applies to content that may further contribute to victimization of children through the promotion or glorification of child sexual exploitation. For the purposes of this policy, a minor is any person under the age of 18.

## What is in violation of this policy?

Any content that depicts or promotes child sexual exploitation including, but not limited to:

- visual depictions of a child engaging in sexually explicit or sexually suggestive acts;

- illustrated, computer-generated or other forms of realistic depictions of a human child in a sexually explicit context, or engaging in sexually explicit acts;

- sexualized commentaries about or directed at a known or unknown minor; and

- links to third-party sites that host child sexual exploitation material.

The following behaviors are also not permitted:

- sharing fantasies about or promoting engagement in child sexual exploitation;

- expressing a desire to obtain materials that feature child sexual exploitation;

- recruiting, advertising or expressing an interest in a commercial sex act involving a child, or in harboring and/or transporting a child for sexual purposes;

- sending sexually explicit media to a child;

- engaging or trying to engage a child in a sexually explicit conversation;

- trying to obtain sexually explicit media from a child or trying to engage a child in sexual activity  through blackmail or other incentives; and

- identifying alleged victims of childhood sexual exploitation by name or image.

## What is not a violation of this policy?

Discussions related to child sexual exploitation as a phenomenon or attraction towards minors are permitted, provided they don't promote or glorify child sexual exploitation **in any way**. Artistic depictions of nude minors in a non-sexualized context or setting may be permitted in a limited number of scenarios e.g., works by internationally renowned artists that feature minors.

## Who can report violations of this policy?

Anyone can report potential violations of this policy, whether they have a Twitter account or not.

## How can I report violations of this policy?

If you think you've found a Twitter account distributing or promoting child sexual exploitation, you can report it via our child sexual exploitation form (https://help.twitter.comhttps://help.twitter.com/forms/cse). Provide the username and links to all relevant Tweets that led you to believe the account should be reviewed.

## What happens if you violate this policy?

In the majority of cases, the consequence for violating our child sexual exploitation policy is **immediate and permanent suspension**. In addition, violators will be prohibited from creating any new accounts in the future. Note: when we're made aware of content depicting or promoting child sexual exploitation, including links to third party sites where this content can be accessed, they will be removed without further notice and reported to the National Center for Missing & Exploited Children (NCMEC).

In a limited number of situations, where we haven't identified any malicious intent, we will require you to remove this content. We will also temporarily lock you out of your account before you can Tweet again. Further violations will lead to your account being

permanently suspended. If you believe that your account was suspended in error, you can submit an appeal. (https://help.twitter.comhttps://help.twitter.com/forms/general?subtopic=suspended)

## Additional resources

Learn more about our range of enforcement options (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/enforcement-options) and our approach to policy development and enforcement (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/enforcement-philosophy).

If you've found content elsewhere on the internet that is distributing or promoting child sexual exploitation, you should file a report with NCMEC (https://help.twitter.comhttp://www.missingkids.org/gethelpnow/cybertipline), or with your local law enforcement. If you believe the content is hosted on a website outside of the United States, you can report it on the International Association of Internet Hotlines website (https://help.twitter.comhttps://www.inhope.org/EN#hotlineReferral).

We partner with multiple organisations whose work is dedicated to fighting child sexual exploitation around the world. Please see the full list of our child protection partners (https://help.twitter.comhttps://about.twitter.com/safety/safety-partners.html#child-protection-partners).

# Exhibit H



← **Tweet**

**Spy IRL ~ SpyIRL.com**
@SpyIRL

@genevievemorton. More Perfection. If you want a #Discount #Link on #SpyIRL. #Premium #Spy #IRL #Members get 1000's of #Hidden #Amateur #Voyeur #Videos & #Pics for #Cheaper now. #Signup now - This SpyIRL #Sale is a Limited #Deal! ~> links.verotel.com/resellerbanner...





# Exhibit I

 **Help Center**

# Non-consensual nudity policy

## Overview

**November 2019**

**You may not post or share intimate photos or videos of someone that were produced or distributed without their consent.**

Sharing explicit sexual images or videos of someone online without their consent is a severe violation of their privacy and the Twitter Rules (https://help.twitter.comhttps://help.twitter.com/rules-and-policies/twitter-rules). Sometimes referred to as revenge porn, this content poses serious safety and security risks for people affected and can lead to physical, emotional, and financial hardship.

## What is a violation of this policy?

Under this policy, you can't post or share explicit images or videos that were taken, appear to have been taken or that were shared without the consent of the people involved.

Examples of the types of content that violate this policy include, but are not limited to:

- hidden camera content featuring nudity, partial nudity, and/or sexual acts;

- creepshots or upskirts - images or videos taken of people's buttocks, up an individual's skirt/dress or other clothes that allows people to see the person's genitals, buttocks, or breasts;

- images or videos that superimpose or otherwise digitally manipulate an individual's face onto another person's nude body;

- images or videos that are taken in an intimate setting and not intended for public distribution; and

- offering a bounty or financial reward in exchange for intimate images or videos.

## What is not a violation of this policy?

Pornography and other forms of consensually produced adult content are allowed on Twitter, provided that this media is marked as sensitive. Doing so provides people who may not want to see this type of content with a warning that they will need to acknowledge before viewing your media.

To mark your media as sensitive, navigate to your safety settings (https://help.twitter.comhttps://twitter.com/settings/safety) and select the **Mark media you Tweet as containing material that may be sensitive** option. If you don't mark your media as sensitive, we may do so manually if your content is reported for review.

## Who can report violations of this policy?

Because Twitter allows some types of adult content, we need to evaluate context to assess if reported content has been created or shared without the consent of those involved.

**Content reportable by anyone**

We recognize that it can be difficult for those impacted to report this type of content for review. To reduce the burden on those affected, anyone can report the following types of content:

- creepshots or upskirts;

- content where a bounty or financial reward is offered in exchange for non-consensual nudity media; and

- intimate images or videos that are accompanied by:

- text that wishes/hopes for harm to come to those depicted or otherwise refers to revenge e.g., "I hope you get what you deserve when people see this"; and

- information that could be used to contact those depicted e.g., "You can tell my ex what you think by calling them on 1234567".

**Content reportable by featured individual(s)**

For other types of content, we may need to hear directly from the individual(s) featured (or an authorized representative, such as a lawyer) to ensure that we have sufficient context before taking any enforcement action.

## How can I report violations of this policy?

**In-app**

You can report this content for review in-app as follows:

1. Select **Report Tweet** from the ⌄ icon.

2. Select **It displays a sensitive photo or video**.

3. Select **An unauthorized photo or video**.

4. Select **It includes unauthorized, intimate content of me or someone else**.

5. Select the relevant option depending on who you are reporting on behalf of.

6. Select up to 5 Tweets to report for review.

7. Submit your report.

**Desktop**

You can report this content for review via desktop as follows:

1. Select **Report Tweet** from the ⌄ icon.

2. Select **It displays a sensitive photo or video**.

3. Select **An unauthorized photo or video**.

4. Select **It includes unauthorized, intimate content of me or someone else**.

5. Select the relevant option depending on who you are reporting on behalf of.

6. Select up to 5 Tweets to report for review.

7. Submit your report.

**Report form**

You can also report this content via our private information report form (https://help.twitter.comhttps://help.twitter.com/forms/private_information), by selecting the **An unauthorized photo or video** option.

## What happens if you violate this policy?

We will **immediately and permanently suspend any account that we identify as the original poster of intimate media** that was created or shared without consent. We will do the same with any account that posts only this type of content, e.g., accounts dedicated to sharing upskirt images.

In other cases, we may not suspend an account immediately. This is because some people share this content inadvertently, to express shock, disbelief or to denounce this practice. In these cases, we will require you to remove this content. We will also temporarily lock you out of your account before you can Tweet again. If you violate this policy again after your first warning, your account will be permanently suspended. If you believe that your account was suspended in error, you can submit an appeal (https://help.twitter.comhttps://help.twitter.com/forms/general?subtopic=suspended).

Non-consensual nudity policy

## Additional resources

Learn more about our range of enforcement options
(https://help.twitter.comhttps://help.twitter.com/rules-and-policies/enforcement-options)
and our approach to policy development and enforcement
(https://help.twitter.comhttps://help.twitter.com/rules-and-policies/enforcement-philosophy).