UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10434-GW-JEMx | Date | February 19, 2021 |
|---|---|---|---|
| Title | *Genevieve Morton v. Twitter, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | None Present | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - FINAL RULING ON DEFENDANT TWITTER'S MOTION TO DISMISS [19]

Attached hereto is the Court's Final Ruling. The Court GRANTS the Motion. All of the claims except for the first are dismissed without prejudice.

:

Initials of Preparer   JG

<u>*Genevieve Morton v. Twitter, Inc.*</u>; Case No. 2:20-cv-10434-GW-(JEMx)
Ruling on Motion to Dismiss

**I.     Background[1]**

This case arises from an online pornography purveyor's unauthorized posting of nude photographs of the Plaintiff, a professional model, on Twitter.  The plaintiff filed this lawsuit against both the purveyor ("SpyIRL") and Twitter, alleging claims of copyright infringement, false advertising, and defamation, among others.  Before the Court is Twitter's motion to dismiss all of the non-copyright claims, arguing that they are barred by the Section 230 safe harbor of the Communications Decency Act, 47 U.S.C. § 230.  For the reasons discussed below, the Court **GRANTS** the motion.

   A.  <u>Factual Background</u>

Plaintiff Genevieve Morton is a professional model, best known for work with swimwear and lingerie brands.  Comp. ¶ 24.  The images at the center of this litigation are nude photographs she created of herself and that she sold to the public through her website.  *Id.* ¶¶ 26-28.

Defendant SpyIRL is an online purveyor of pornography.  *Id.* ¶ 20.  It maintained two Twitter accounts that it used to promote its website.

Last year, SpyIRL allegedly used several of Morton's nude photographs without her authorization in a series of tweets inviting people to subscribe to its website.  *Id.* ¶ 30.  Morton filed a request with Twitter that it take down the tweets and suspend SpyIRL's Twitter accounts. *Id.* ¶ 32.  Twitter removed all of the images, but left the rest of the tweets alone and did not immediately suspend the accounts.  The accounts had not been suspended by the time Morton filed the Complaint – nearly six months after Morton filed her takedown request – and during that time SpyIRL tweeted a statement that Morton "copyrighted my images." *Id.* ¶¶ 36, 56.  The accounts have since been suspended.  *See* Mot. at 10.

   B.  <u>Procedural History</u>

Morton filed this lawsuit against SpyIRL and Twitter.  The Complaint states the following claims, each of them asserted against both Defendants: (1) copyright infringement; (2) a violation of FOSTA-SESTA, 18 U.S.C. 1598 (named for the Allow States and Victims to Fight Online Sex

---

[1] The following abbreviations are used for the filings: (1) Complaint ("Compl."), ECF No. 2; (2) Defendant's Motion to Dismiss ("Mot."), ECF No. 19; (3) Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opp."), ECF No. 20; (4) Defendant's Reply in Support of its Motion to Dismiss ("Reply"), ECF No. 26.

1

Trafficking Act and Stop Online Sex Trafficking Act bills); (3) a violation of the right of publicity under Cal. Civ. Code § 3344; (4) false advertising under the Lanham Act; (5) false light invasion of privacy; (6) defamation, a violation under Cal. Civ. Code § 44, *et seq.*; (7) fraud in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 1 17200 *et seq.*; (8) negligent and intentional infliction of emotional distress; and (9) unjust enrichment. *See* Compl.

Twitter filed this partial motion to dismiss all of the claims except for copyright infringement claim. It filed the motion directly without filing an answer. Morton argues that she is entitled to default judgment on the copyright infringement and defamation claims because those claims "remain unanswered" and the deadline for filing an answer purportedly expired. *See* Opp. at 6. That is incorrect. Under the federal rules, "if a defendant files a motion pursuant to Rule 12, the time to file an answer is extended. This is true even if the motion addresses only some of the claims in the complaint." *McAllister v. Hawaiiana Mgmt. Co.*, No. 11-cv-00056, 2012 WL 13168540, at *2 (D. Haw. Apr. 23, 2012) (citing "myriad unpublished orders by courts within the Ninth Circuit reaching the same conclusion").

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The court must construe the complaint in the light most favorable to the plaintiff, by accepting all allegations of material fact as true, and drawing all reasonable inferences from well-pleaded factual allegations in favor of the plaintiff. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, the plaintiff must provide grounds demonstrating its entitlement to relief. *Twombly*, 550 U.S. at 555 (2007). Under the Supreme Court's decisions in *Twombly* and *Iqbal*, this requires that the complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III.    Discussion

2

A. Section 230 of the Communications Decency Act

Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. 230(c)(1). It preempts any state law to the contrary, providing that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). At its core, § 230 bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content." *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014).

The effect of Section 230 is to "protect websites from liability under state or local law for material posted on their websites by someone else." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). It was enacted "to promote the continued development of the Internet and other interactive services" and "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. 230(b)(1)(2). "Without § 230, persons who perceive themselves as the objects of unwelcome speech on the internet could threaten litigation against interactive computer service providers, who would then face a choice: remove the content or face litigation costs and potential liability." *Jones*, 755 F.3d at 407-08.

The Ninth Circuit, along with a majority of the federal circuits, have read Section 230 "to establish broad federal immunity to *any cause of action* that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (quotation marks and citation omitted, emphasis added). District courts within the Ninth Circuit have held that "the immunity extends to *all claims* stemming from an interactive computer service provider's publication of content created by third parties." *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2021 WL 493387, at *4 (N.D. Cal. Feb. 10, 2021) (emphasis added); *see also Goddard v. Google, Inc.*, No. 08-cv-02738-JF, 2008 WL 5245490, at *2 (N.D. Cal. Dec. 17, 2008) ("[P]arties complaining that they were harmed by a Web site's publication of user-generated content . . . may sue the third-party user who generated the content, but not the interactive computer service that enabled them to publish the content online." (quotation marks and citation omitted)).

"When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a

3

plaintiff's claims should be dismissed." *Dyroff*, 934 F.3d at 1097 (9th Cir. 2019); *accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (explaining that "immunity is an immunity from suit rather than a mere defense to liability" and "it is effectively lost if a case is erroneously permitted to go to trial," therefore courts "aim to resolve the question of § 230 immunity at the earliest possible stage of the case so that defendants entitled to § 230 immunity are saved from "having to fight costly and protracted legal battles").

B. <u>Whether Morton's claims fall under Section 230's safe harbor</u>

Section 230 immunity applies to "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).

i. *Twitter is an interactive computer service provider*

An interactive computer service is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). "Today, the most common interactive computer services are websites." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008).

Twitter is clearly an interactive computer service provider. As an online microblogging and social media platform, it allows its users to post messages on the platform for the public to see. Every decision the Court has seen to consider the issue has treated Twitter as an interactive computer service provider, even at the motion to dismiss stage. *See, e.g.*, *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) ("Plaintiffs do not dispute that Twitter is an interactive computer service provider"); *Brittain v. Twitter, Inc.*, No. 19-cv-00114-YGR, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019) (on a motion to dismiss, "[t]he Court finds that Twitter qualifies as an interactive computer service); *Wilson v. Twitter*, No. 3:20-cv-00054, 2020 WL 3410349, at *11 (S.D.W. Va. May 1, 2020) (observing that "Twitter provides the 'prototypical service' entitling it to protections of [Section 230]").

Morton's argument that Twitter's status is a disputed fact is not persuasive.[2] Even on a

---

[2] Although Plaintiff alleged in her Complaint that "Twitter.com [is] one of the world's largest and most influential social media websites (*see* Compl. ¶ 1) and that "Twitter, Inc. . . . operates Twitter.com" (*see* Compl. ¶ 2), Plaintiff makes the somewhat unintelligible argument that Twitter.com. and Twitter, Inc. should be treated differently

motion to dismiss, other courts have readily concluded that Twitter is an interactive computer service provider. The fact that Twitter "generates revenue as an advertising agency and a data broker" does not change the fact that Twitter "provides or enables computer access by multiple users to a computer service." *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017). Opp. at 8. Morton suggests that Section 230 no longer applies to Twitter because Twitter now "operates its own Content Delivery Network." Comp. ¶ 14. But that fact is irrelevant. The exact mechanism by which Twitter delivers content to its users does not change the fact that Twitter is a social media platform and provides the "prototypical service entitling it to protections of [Section 230]." *Wilson*, 2020 WL 3410349, at *11.

        ii. *All of the non-copyright claims attempt to treat Twitter as a publisher of content provided by SpyIRL*

"If a website displays content that is created entirely by third parties, then it is only a service provider with respect to that content – and thus is immune from claims predicated on that content." *Jones*, 755 F.3d at 408; *accord Dyroff*, 934 F.3d at 1097.

While the prototypical cause of action seeking to treat an interactive computer service provider as a publisher or speaker is defamation, "the language of [Section 230] does not limit its application to defamation cases" and it has been found to bar all of the types of non-copyright claims that Morton asserts against Twitter. *Barnes*, 570 F.3d at 1101. "[W]hat matters is not the name of the cause of action – defamation versus negligence versus intentional infliction of emotional distress – what matters is whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another." *Id.* at 1101-02. Put another way, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a "publisher or speaker." *Id.* at 1102. If it does, Section 230 bars the cause of action.

The objectionable content at issue here are tweets posted by SpyIRL. While the tweets are posted on Twitter's platform, it is clear that it was SpyIRL – not Twitter – that chose to post the offending tweets containing photographs of Morton. Morton claims that SpyIRL "is not a third party" and that it "is either owned by, affiliated with, or maintains a pecuniary relationship with

---

for purposes of the Section 230 analysis, with the former being held to be an interactive computer service provider but not the latter.

[Twitter]." Opp. at 7; Compl. ¶ 168. However, she has not alleged any facts in support of that and acknowledged being unable to identify the entity that runs the SpyIRL website. Compl. ¶ 20 ("it is currently unknown to Plaintiff who or what entity owns SpyIRL.com"). On a motion to dismiss, a court must rely on its "common sense." *Ashcroft*, 556 U.S. at 679. Here, that compels the Court to conclude that SpyIRL, a purveyor of online pornography, is a third-party separate from Twitter.

All of Morton's non-copyright claims attempt to treat Twitter as being equivalent to SpyIRL for purposes of considering liability for the latter's tweets. *See, e.g.*, Compl. ¶¶ 160 ("SpyIRL.com misappropriated Plaintiff's name, likeness, . . . to such an extent that Ms. Morton was effectively placed into the forced service of a purveyor of illegal pornography"); 165 ("SpyIRL.com's use of Plaintiff's name . . . and image falsely implied or suggested . . . "); 175 (SpyIRL "made a false or misleading statement of fact in the Tweets posted containing Ms. Morton's copyrighted Images"); 183 ("Defendant @SpyIRL User publicly made the false statement of fact on Twitter.com").

These types have claims have all been found by courts to be barred by Section 230. *See, e.g.*, *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848, 2020 WL 4901196, at *21 (N.D. Cal. Aug. 20, 2020) (Section 230 barred FOSTA-SESTA claim premised on content user-submitted content "which Craiglist would post online."); *Ripple Labs Inc. v. YouTube LLC*, No. 20-cv-02747-LB, 2020 WL 6822891, at *6 (N.D. Cal. Nov. 20, 2020) (Section 230 barred right of publicity/UCL claims because YouTube was not "responsible, in whole or in part" for the creation of the offending online ads shown on the platform); 924 Bel Air Rd., LLC v. Zillow Grp., Inc., No. 19-cv-01368-ODW, 2020 WL 774354, at *9 (C.D. Cal. Feb 18, 2020) (Section 230 barred false light claim against Zillow for failing "prevent users from . . . posting false content" on its website); *Herrick v. Grindr, LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (Section 230 barred emotional distress claims against Grindr for failing to stop a third-party from impersonating plaintiff on the platform and its "inadequate response to [plaintiff]'s compliants"); Parker v. Paypal, Inc., No. 16-cv-04786, 2017 WL 3508759, at *7 (E.D. Pa. Aug. 16, 2017) (Section 230 barred unjust enrichment claim against Amazon.com premised on the sale of unauthorized copies of plaintiff's book on the Kindle store).[3]

---

[3] The only claim for which the Court has not seen a prior ruling find barred by Section 230 is Morton's false advertising claim based upon the Lanham Act. Twitter cites to a district court decision that, according to Twitter, barred a false advertising claim against Costco "because Costco's conduct was limited to making an allegedly falsely labeled product available for sale on [its] website." Mot. at 18 (internal quotations and citations omitted). However, the court dismissed the claim because Costco (and the other retailer defendants) were "merely retailers of products manufactured, produced, and packaged by third parties" and so were not liable for allegedly false advertising statements made by those third parties. It did not rely on Section 230 immunity. *See Corker v. Costco Wholesale Corp.*, No. 19-cv-00290-RSL, 2019 WL 5895430, at *6 (W.D. Wash. Nov. 12, 2019) ("observing that "[t]he reach of

6

### iii. *Morton's contract claim*

Morton argues that her seventh claim, styled "Unfair Competition/Contractual Fraud" encompasses a breach of contract theory that is not barred by Section 230. Opp. at 10. This theory is based on Twitter's alleged failure to enforce its "Non-consensual nudity policy," in which Twitter promises that it "will immediately and permanently suspend any account that [it] identif[ies] as the original poster of intimate media that was created or shared without consent." Compl., Exh. I. Morton alleges Twitter "undertook the contractual duty to create a safe platform by suspending illegal pornography accounts" and breached it in her case by failing to timely suspend SpyIRL's Twitter accounts. She argues that she has "alleged facts sufficient to proceed on at least two theories: breach of contract or promissory fraud." Opp. at 11.

There are several problems with this argument. First, Morton has not pointed to any contractual provisions, such as in Twitter's terms of service, that imposed a duty on Twitter to suspend offending accounts. In fact, Twitter's terms of service specifically disclaim its responsibility for "any conduct or content of any third party on the services, including without limitation, any defamatory, offensive or illegal conduct of other users or third parties." Compl. at 20, n. 9.[4] *See, e.g.*, *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (observing that "[t]he district court properly dismissed Caraccioli's breach of contract claim and UCL claim, to the extent it was premised on an alleged breach of contract, because these claims are barred by Facebook's terms of service, which expressly disclaim Facebook's responsibility for the content published by third parties). The only items Morton cites to that could plausibly impose such a duty are two of Twitter's content-moderation policies, including the "Non-consensual nudity policy." But there is nothing to indicate that they are binding, as opposed to merely aspirational statements.

Even assuming Morton adequately pled a contractual duty on Twitter's part to suspend user accounts that violated its content-moderation policies, a breach of contract claim premised

---

CDA immunity in this case is unclear" and that "defendants have not established that the CDA's immunity provision would apply").

Nonetheless, the Court dismisses that claim as well because Section 230 clearly reaches the allegedly false advertising statements here, *i.e.*, SpyIRL's tweets.

[4] In deciding a Rule 12(b)(6) motion, a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Twitter's terms of service are referred to in the Complaint and are central to Morton's breach of contract claim.

7

solely on Twitter's failure to suspend those accounts would be barred by Section 230. This is because the actions that Morton alleges Twitter failed to take – thereby breaching its duty – are suspending a user's account. "But removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Barnes*, 570 F.3d at 1103 (holding that Section 230 barred a negligent-undertaking claim because "the duty that Barnes claims Yahoo violated derives from Yahoo's conduct as a publisher – the steps it allegedly took, but later supposedly abandoned, to de-publish the offensive profiles").

On the other hand, a breach of contract claim based on promissory estoppel[5] for a website's failure to remove content it promised to remove is not necessarily barred by Section 230. *Compare Barnes*, 570 F.3d at 1108-09 (holding that Section 230 did not bar promisory estoppel claim based on Yahoo's failure to remove an offensive user profile from its website as it allegedly promised to do) with *Murphy v. Twitter, Inc.*, No. A158214, 2021 WL 221489, at *8 (Cal. Ct. App. Jan. 22, 2021) (holding that Section 230 did bar plaintiff's promissory estoppel claim against Twitter, observing that "*Barnes* never suggested . . . that *all* contract or promissory estoppel claims surivve CDA immunity"). This is because liability for promissory estoppel is not necessarily for behavior that is identical to publishing or speaking (*e.g.*, publishing defamatory material in the form of SpyIRL's tweets or failing to remove those tweets and suspend the account). "[P]romising . . . is not synonymous with the performance of the action promised. . . . one can, and often does, promise to do something without actually doing it at the same time." *Barnes*, 570 F.3d at 1107. On this theory, "contract liability would come not from [Twitter]'s publishing conduct, but from [Twitter]'s manifest intention to be legally obligated to do something, which happens to be removal of material from publication." *Id.* That manifested intention "generates a legal duty distinct from the conduct at hand, be it the conduct of a publisher, of a doctor, or of an overzealous uncle." *Id.*

The Complaint, however, does not clearly plead promissory estoppel. The words "promissory" and "estoppel" do not appear in the Complaint and the relevant promise and reliance

---

[5] In most states, including California, promissory estoppel is a theory of recovery on a breach of contract and serves as a substitute for consideration. *See Barnes*, 570 F.3d. at 1106; *Kajima/Ray Wilson v. Los Angeles Cty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000).
  Under the doctrine, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Id.*

are not clear from allegations.

## IV.     Conclusion

Based on the foregoing discussion, the Court **GRANTS** the motion.  All of the claims except for the first (*i.e.* copyright infringement) are dismissed without prejudice.