BRIAN M. WILLEN, (*pro hac vice*)
    bwillen@wsgr.com
JEREMY P. AUSTER (*pro hac vice*)
    jauster@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
1301 Avenue of the America, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

VICTOR JIH, SBN 186515
    vjih@wgr.com
EVE A. ZELINGER, SBN 328862
    ezelinger@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA  90071-2027
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendant Twitter, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| GENEVIEVE MORTON,<br><br>       Plaintiff,<br><br>     v.<br><br>TWITTER, INC. et al.,<br><br>       Defendants. | Case No. 2:20-cv-10434-GW(KSx)<br>(c/w 2:21-cv-07145-GW(KSx))<br><br>**TWITTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: June 2, 2022<br>Time: 8:30 AM<br>Crtrm: 9D<br><br>Honorable George H. Wu |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .................................2

    A.   Parties & Procedural History...................................................2

    B.   The Creation of the Photographs at Issue ...............................4

    C.   Plaintiff's Conflicting Claims of Ownership............................5

    D.   Plaintiff's Obstruction of Discovery Into Ownership ............6

III.    ARGUMENT .......................................................................................9

    A.   Plaintiff Has the Burden of Establishing Her Ownership of the Photographs As Works Made For Hire...............................10

    B.   Plaintiff Cannot Establish That the Photographs Were Commissioned Works ..............................................................12

    C.   Plaintiff Cannot Establish That Mr. Riker Was Her Employee When He Took The Photographs..............................................16

IV.     CONCLUSION ..................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aymes v. Bonelli*,
 980 F.2d 857 (2d Cir. 1992) ................................................................... 19

*Bell v. Maloney*,
 No. 1:16-cv-01193-RLY-DLP, 2019 U.S. Dist. LEXIS 192125
 (S.D. Ind. May 23, 2019) ........................................................................ 11

*Blevins v. Marin*,
 No. 11-cv-03475-KJN P, 2013 U.S. Dist. LEXIS 153157
 (E.D. Cal. Oct. 11, 2013) ........................................................................ 14

*Burrow-Giles Lithographic Co. v. Sarony*,
 111 U.S. 53 (1884) ................................................................................... 11

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ................................................................................... 9

*Choyce v. SF Bay Area Indep. Media Ctr.*,
 No. 13-cv-01842-JST, 2014 U.S. Dist. LEXIS 75345
 (N.D. Cal. June 2, 2014) .......................................................................... 11

*Cmty. for Creative Non-Violence v. Reid*,
 490 U.S. 730 (1989) ........................................................................ *passim*

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
 870 F.3d 978 (9th Cir. 2017) ................................................................... 10

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
 122 F.3d 1211 (9th Cir. 1997) ................................................................. 12

*Fairview Dev. Corp. v. Aztex Custom Homebuilders, LLC*,
 No. CV-07-0337-PHX-SMM, 2009 U.S. Dist. LEXIS 16501
 (D. Ariz. Mar. 3, 2009) ............................................................................ 19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991) ................................................................................. 10

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
 654 F.3d 958 (9th Cir. 2011) ................................................................... 10

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc) .......................................................... 10

*Gladwell Gov't Servs., Inc. v. Cnty. of Marin*,
265 F. App'x 624 (9th Cir. 2008) .................................................................. 13

*Horror Inc. v. Miller*,
15 F.4th 232 (2d Cir. 2021) ........................................................................... 12

*Johannsen v. Brown*,
797 F. Supp. 835 (D. Or. 1992) ............................................................... 18, 19

*Jou v. Accurate Research, Inc.*,
73 F. App'x 964 (9th Cir. 2003) .............................................................. 19, 20

*Lafferty v. Liu*,
No. C17-0749RSM, 2018 U.S. Dist. LEXIS 158158
(W.D. Wash. Sept. 17, 2018) ........................................................................ 16

*Livingston v. Morgan*,
No. C-06-2389 MMC, 2007 U.S. Dist. LEXIS 55605
(N.D. Cal. July 25, 2007) .............................................................................. 18

*Natkin v. Winfrey*,
111 F. Supp. 2d 1003 (N.D. Ill. 2000) ........................................................... 11

*Oddo v. Ries*,
743 F.2d 630 (9th Cir. 1984) ......................................................................... 13

*Righthaven LLC v. Hoehn*,
716 F.3d 1166 (9th Cir. 2013) ....................................................................... 10

*Rivers v. Skate Warehouse, LLC*,
No. CV 12-9946 MMM, 2013 U.S. Dist. LEXIS 206824
(C.D. Cal. Dec. 20, 2013) ........................................................................ *passim*

*Silvers v. Sony Pictures Entm't, Inc.*,
402 F.3d 881 (9th Cir. 2005) ......................................................................... 10

*Sisyphus Touring, Inc. v. TMZ Prods., Inc.*,
208 F. Supp. 3d 1105 (C.D. Cal. 2016) ......................................... 11, 12, 13, 15

*Softketeers, Inc. v. Regal W. Corp.*,
    No. SACV 19-519 JVS (JDEx), 2019 U.S. Dist. LEXIS 171240
    (C.D. Cal. May 6, 2019) .................................................................................. 18

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) ........................................................................ 10

*United States v. Hansen*,
    No. 05cv0921-L(CAB), 2006 U.S. Dist. LEXIS 54496
    (S.D. Cal. May 31, 2006) .............................................................................. 20

*Wilson v. Frito-Lay N. Am., Inc.*,
    260 F. Supp. 3d 1202 (N.D. Cal. 2017) .................................................. 14, 16

**Statutes**

17 U.S.C. § 101 ......................................................................................... *passim*

17 U.S.C. § 102(a) ..................................................................................... 1, 10

17 U.S.C. § 201 ......................................................................................... *passim*

17 U.S.C. § 204(a) ........................................................................................... 20

17 U.S.C. § 410 ................................................................................... 7, 11, 12

17 U.S.C. § 501 ....................................................................................... 1, 4, 10

17 U.S.C. § 512(c)(3)(A) ................................................................................... 4

Fed. R. Civ. P. 33(b) ....................................................................................... 16

Fed. R. Civ. P. 56(a) ......................................................................................... 9

**Miscellaneous**

Restatement (Second) of Agency § 220 cmt. j ............................................... 19

## I.   INTRODUCTION

Plaintiff Genevieve Morton, a professional model, brought copyright infringement claims against Defendant Twitter Inc. ("Twitter") after users of Twitter's service allegedly posted Tweets that included photographs of Ms. Morton without her permission. But a threshold problem dooms Ms. Morton's case: there is no evidence that she owns the copyrights in the photographs at issue. Plaintiff's inability to establish copyright ownership entitles Twitter to summary judgment.

Only the owner of a copyright can bring a copyright infringement claim. *See* 17 U.S.C. § 501(b). Copyright ownership vests initially in the "author" of a work. 17 U.S.C. § 201(a). As a general rule, the author is the person who created the work by "fixing" it in a "tangible medium of expression." 17 U.S.C. § 102(a); *see also Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). Here, that person is a professional photographer named Derek Riker, who took the photographs of Ms. Morton.

Ms. Morton has claimed that she owns the copyrights in the photographs because they were created as "works made for hire." 17 U.S.C. §§ 201(b), 101. That theory requires Plaintiff to prove either that the works were "commissioned" (in a signed writing) or that Mr. Riker took the photographs as Ms. Morton's employee. Plaintiff has offered vacillating and irreconcilable statements about which of those theories applies, and she has obstructed virtually all discovery into her ownership claims—violating no fewer than *five* separate Court orders in the process. Because of her serial disobedience, this Court has already barred Plaintiff from relying on the statutory presumption of ownership that may arise from her copyright registrations. *See* ECF No. 127. Pending before the Court is an application for additional sanctions contemplated by the Magistrate Judge, which would preclude Plaintiff from introducing evidence relating to ownership that she did not produce or make available during discovery. ECF No. 136.

Even absent further sanctions, however, Plaintiff cannot raise a triable issue regarding her ownership of the photographs as works made for hire. The undisputed facts show that Ms. Morton did not commission Mr. Riker to take the photographs pursuant to an advance written agreement, as the law requires. 17 U.S.C. § 101.  No such agreement has been produced, and there is no evidence that it ever existed. Nor is there any evidence to suggest that Mr. Riker was Ms. Morton's employee acting "within the scope of . . . employment" when he took the photographs. *Id.* Mr. Riker was instead a paradigmatic independent contractor. Based on the record in this case, no reasonable jury could find otherwise. Because Ms. Morton cannot carry her burden of proving copyright ownership, Twitter is entitled to summary judgment.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Parties & Procedural History

Plaintiff Genevive Morton is a professional model whose images have appeared in various publications, including the *Sports Illustrated* swimsuit issue. *See* Compl. (ECF No. 2) ¶ 1; SUFCL 1.[2] Twitter is an online social media service that allows users to post and interact with short messages known as "Tweets." *Morton II* Compl. (ECF No. 1) ¶ 16; SUFCL 2. Users who post Tweets can include images of their own choosing. *Morton II* Compl. (ECF No. 1) ¶¶ 16, 26-27; SUFCL 3.

At issue in this case are thirteen distinct nude photographs of Ms. Morton that were allegedly included, without her permission, in various Tweets posted to Twitter's platform by two third-party users—one operating under the account name

---

[1] Many of the facts set forth in this section are included for background purposes only and need not be found undisputed to resolve this Motion in Twitter's favor. Twitter refers to its Separate Statement of Uncontroverted Facts and Conclusions of Law (cited as "SUFCL") for the undisputed facts requiring summary judgment.

[2] This case involves two separate complaints that were consolidated by the Court into a single action. *See* ECF No. 62. Citations to "*Morton II*" refer to 2:21-cv-07145-GW(KSx). All other citations refer to 2:20-cv-10434-GW(KSx) (*Morton I*).

"@SpyIRL" and the other "@city_tits." Compl. ¶¶ 6, 8, 11; *Morton II* Compl. ¶¶ 16, 20, 23; SUFCL 5, 7, 9. The three @SpyIRL Tweets at issue were posted on or around May 19, 2020 (Compl. ¶ 30; SUFCL 4), and the photographs of Ms. Morton included in those Tweets were removed by Twitter on May 19, 2020, almost immediately upon receiving DMCA takedown notices submitted and signed by Ms. Morton's attorney. *See* Exs. 7, 8, 9.[3] The two @city_tits Tweets were posted on or around June 18, 2020 and September 10, 2020 (*Morton II* Compl. ¶¶ 20, 23; SUFCL 6), and the images in those Tweets were also removed by Twitter—on October 28, 2020 and October 19, 2020, respectively—in response to takedown notices. Exs. 10, 11.[4]

On November 13, 2020, Plaintiff filed a complaint against Twitter based on the three Tweets posted by @SpyIRL. Compl. ¶ 30; SUFCL 4. Nearly a year later, on September 3, 2021, Plaintiff filed a second complaint against Twitter based on the two Tweets posted by @city_tits. *Morton II* Compl. ¶¶ 20, 23; SUFCL 6. Plaintiff's consolidated lawsuits are premised on the theory that Twitter should be held liable for the allegedly infringing photographs that @SpyIRL and @city_tits posted on Twitter's platform, and for not moving fast enough in removing the images and Tweets.[5] *See* Compl. ¶¶ 9-10, 15, 82, 89, 119-121, 143-144, 146, 203; *Morton II* Compl. ¶¶ 32, 35-37, 39-41, 75-76, 84.

---

[3] All exhibits cited in this motion are attached to the concurrently filed Declaration of Eve A. Zelinger in Support of Twitter's Motion for Summary Judgment ("Zelinger Decl.").

[4] The @SpyIRL and @city_tits accounts have also been suspended from Twitter. ECF No. 36 ¶ 20; *Morton II*, ECF No. 34 ¶ 11.

[5] Twitter maintains that it is protected from any liability related to the at-issue Tweets by the DMCA's safe harbor provisions, ECF Nos. 31 at 27, 36 at 31. *See* 17 U.S.C. § 512 et seq. The Court need not reach those issues in disposing of Plaintiff's copyright claims on summary judgment, however, as Plaintiff cannot carry her threshold burden of establishing copyright ownership. Under the DMCA, moreover,

(continued...)

Ms. Morton has asserted a variety of federal and state law claims against Twitter and (in her second complaint) various Twitter subsidiaries, including claims for direct and secondary copyright infringement. Twitter filed partial motions to dismiss each complaint. *See* ECF No. 19; *Morton II*, ECF No. 24. This Court granted those motions, dismissing all of Plaintiff's non-copyright claims against Twitter in both actions and dismissing each additional Twitter entity from Plaintiff's later-filed action. ECF No. 30; *Morton II*, ECF No. 33. Plaintiff's only remaining claims against Twitter in this action thus are for direct and secondary copyright infringement under Section 501 of the Copyright Act, 17 U.S.C. § 501. SUFCL 8.[6]

## B.     The Creation of the Photographs at Issue

Each of the thirteen photographs at issue in this case (the "Photographs") was taken by Derek Riker.[7] *See* Ex. 1 (Morton Tr.) at 119:14-19, 102:5-13, 157:8-22; Ex. 2 (Riker Tr.) at 98:12-99:2, 120:24-121:11; SUFCL 9-10. Mr. Riker is a professional photographer who co-owns a photography business with his brother (*see* https://www.rikerbrothers.com). Ex. 2 at 35:15-23; SUFCL 12. In 2016, Ms. Morton and Mr. Riker traveled to Borneo for a photoshoot. Ex. 1 at 176:22-24, 181:6-9; SUFCL 10. At the time of that shoot, Mr. Riker had over 25 years of experience as a photographer. Ex. 2 at 108:8-11; SUFCL 11. Ms. Morton chose Mr. Riker for the Borneo photoshoot because she trusted him (Ex. 1 at 187:8-11), as he had photographed her numerous times before (*id.* at 221:7-8), and she considered him an excellent photographer with extensive experience. *Id.* at 170:23-25; SUFCL 13. Ms.

---

a takedown notice is only effective if submitted by a copyright owner (or their authorized representative). *See* 17 U.S.C. § 512(c)(3)(A).

[6] Plaintiff also asserts claims against SpyIRL.com and various "Doe Defendants," including the operators of the @SpyIRL and @city_tits accounts. Those defendants have never been served and have not appeared in this case.

[7] Though there were 12 total photographs included in the three @SpyIRL Tweets and one photograph in each @city_tits Tweet, one of the photographs was posted by both users. *See* Compl. ¶ 131; *Morton II* Compl. ¶ 13.

Morton and Mr. Riker did not discuss any employment relationship before the photoshoot. Ex. 2 at 44:21:23-45:2; Ex. 1 at 231:10-17; SUFCL 44-45. Nor do either of them recall entering into a written agreement of any kind in advance of the photoshoot. Ex. 1 at 245:8-15; Ex. 2 at 87:14-23, 88:4-15, 89:21-90:5; SUFCL 38-39.

Mr. Riker took each Photograph (and numerous others) over the span of a single day in Borneo. Ex. 1 at 119:7-9; SUFCL 10. He brought his own camera with him and used it for the photoshoot. Ex. 1 at 190:4-6; Ex. 2 at 109:16-110:2; SUFCL 14. Mr. Riker chose how to operate the camera, and Ms. Morton deferred that responsibility to him given his expertise. Ex. 2 at 107:25-108:11; SUFCL 14. Subsequent to the photoshoots, Mr. Riker assumed responsibility for developing and "retouching" (or editing) the Photographs. Ex. 2 at 99:8-100:12; SUFCL 15-16. He completed those tasks using his own software (Ex. 2 at 100:10-16; SUFCL 17), at the time and place of his choosing (Ex. 2 at 106:9-14; SUFCL 18), and without any direct supervision from Ms. Morton (Ex. 2 at 105:16-106:14; SUFCL 19). At the same time, he was also doing work for and photographing other clients. Ex. 2 at 169:8-16; SUFCL 20. For the Borneo photoshoot, Ms. Morton paid Mr. Riker a percentage of profits attributable to subsequent sales of the Photographs. Ex. 1 at 255:20-256:1, 290:12-13; SUFCL 21. He was not paid a salary. *Id.*

### C.   Plaintiff's Conflicting Claims of Ownership

Notwithstanding that the Photographs were taken by Mr. Riker, Plaintiff, acting as the purported author and owner of them, registered the Photographs with the U.S. Copyright Office as part of three separate group registrations of published photographs. SUFCL 10, 23. The effective dates of those registrations are June 8, 2020, June 21, 2020, and July 28, 2020, respectively. *See* Exs. 4, 5, 3; SUFCL 24-26. The Photographs were registered after the infringements alleged in this action commenced. *See* Compl. ¶ 30 (@SpyIRL Tweets posted in May 2020).

From the start, Plaintiff has offered a shifting and conflicting story regarding the nature of her purported ownership interest in the Photographs. ECF No. 125 at 2-4. She recognizes that her claims of ownership turn on the Photographs supposedly being "works made for hire" under Section 201(b) of the Copyright Act—an assertion included in her Borneo registration application. Ex. 4 at 15; SUFCL 22, 27. In a takedown notice submitted to Twitter by her attorney, Plaintiff claimed that the Photographs were "commissioned" works made for hire. Ex. 6 at 20; Zelinger Decl. ¶ 20; SUFCL 28.

In response to Twitter's Requests for Admission, however, Plaintiff contradicted herself, claiming that only "some of the PHOTOGRAPHS were commissioned by Plaintiff" as part of "collected works" (supposedly pursuant to a work-made-for-hire agreement), while others were "taken in the course of employment by a photographer Plaintiff employed." Ex. 12 at 55-56; SUFCL 29. Then, in an unverified interrogatory response served one minute before the close of fact discovery on February 11, 2022, Plaintiff changed her story yet again, now claiming (for the first time) that all of the Photographs were taken by Mr. Riker pursuant to an "employment agreement that provided Ms. Morton would retain all copyrights to the photographs." Ex. 13 at 67; SUFCL 30.

### D. Plaintiff's Obstruction of Discovery Into Ownership

As her story changed, Plaintiff relentlessly stymied Twitter's efforts to obtain ownership-related discovery. Plaintiff's obstruction of discovery on this issue (and others) is well documented. *See* ECF No. 125 at 1-5 (imposing sanctions on Plaintiff). Twitter issued numerous discovery requests asking Plaintiff to identify who took the Photographs, describe their creation, produce any ownership agreements and communications with her photographer, and produce all documents related to her registration of the Photographs. *Id.* at 2-3; ECF No. 53 at 4-5; ECF No. 58 at 2; ECF No. 97 at 3-4. Plaintiff refused to comply, asserting that her copyright

registrations were "prima facie evidence of a valid copyright" and that Twitter was not entitled to any discovery relevant to rebutting the statutory presumption of validity under 17 U.S.C. § 410(c). *See, e.g.*, Ex. 15 at 81-82, 84-89. She refused to even identify Mr. Riker as the photographer until ***one minute*** before the expiration of fact discovery (Ex. 13 at 68), after months of claiming that his identity was "proprietary and/or trade secret information or otherwise privileged and confidential information." Ex. 15 at 81.

In the face of that stonewalling, Twitter filed three motions to compel. *See* ECF Nos. 42, 54, 89-1. The Magistrate Judge granted those motions, each time directing Plaintiff to produce the requested documents and information within 10 days of the resulting Court Order. *See* ECF No. 53 at 5; ECF No. 58 at 2-3; ECF No. 97 at 3-4; SUFCL 31. But Plaintiff disobeyed each Order, failing to produce a single document related to the creation, ownership, and registration of the Photographs. ECF No. 125 at 2-4; SUFCL 31-32, 37, 41, 43.

Plaintiff's disobedience of the Magistrate Judge's discovery orders ultimately forced Twitter to move for sanctions. *See* ECF Nos. 109-1, 121. On March 17, 2022, the Magistrate Judge granted Twitter's sanctions motion in part. ECF No. 125 (the "Sanctions Order"). In particular, because Plaintiff offered "conflicting ownership facts" and "blocked Twitter's attempts to obtain discovery regarding her ownership of the photographs to confirm or rebut the [statutory] presumption" (ECF Nos. 125 at 4, 126 at 2), Magistrate Judge McDermott recommended that this Court impose an evidentiary sanction precluding her "from relying, for any purpose whatsoever, on the statutory presumption of ownership that may arise from copyright registration" under 17 U.S.C. § 410. ECF Nos. 127 at 2, 125 at 4, 126 at 2-3; SUFCL 34. This Court accepted that recommendation. *See* ECF No. 127 at 2; SUFCL 35.

In the Sanctions Order, the Magistrate Judge further explained that he would recommend additional evidentiary preclusion sanctions if Plaintiff did not produce,

within 7 days of the March 17 Order, her purported ownership agreement(s) (and all communications) with Mr. Riker and all copyright registration-related documents. ECF No. 125 at 4. The Magistrate also ordered Plaintiff to "appear for and complete her deposition" (which she had obstructed for months),[8] or be precluded from testifying. ECF No. 125 at 6.[9]

Plaintiff failed to comply with that Order as well. She produced no additional documents. *See* Zelinger Decl. ¶¶ 12-13; SUFCL 36. To this date, Plaintiff has not produced any agreement—or so much as a single document—relating to her purported ownership of the Photographs or reflecting her communications with Mr. Riker. Zelinger Decl. ¶¶ 12-13; SUFCL 32-33, 36-37, 41, 43. Plaintiff appeared for her deposition, but even there her stonewalling continued. Citing spurious attorney-client and Fifth Amendment privileges (or otherwise simply refusing to answer), Plaintiff would not discuss: (1) her purported written agreement(s) with Mr. Riker; (2) her alleged employment relationship with Mr. Riker; (3) her copyright registrations; or (4) the DMCA takedown notices submitted on her behalf to Twitter. *See* Ex. 1 at 55:3-20, 277:19-278:9 (Plaintiff refusing to answer questions based on attorney-client privilege and Fifth Amendment claims); *id.* at 274:1-282:2, 294:11-24 (refusing to answer questions about purported written agreement); *id.* at 283:10-289:18, 291:21-292:23 (refusing to answer questions about purported employment relationship with Mr. Riker); *id.* at 299:23-304:16, 306:18-315:6, 316:1-318:1

_____

[8] The Sanctions Order also directed Plaintiff to make Mr. Riker available for a deposition after "Plaintiff derailed Twitter's efforts to depose Riker." ECF No. 125 at 4.

[9] On April 4, 2022, the Magistrate Judge also ordered Plaintiff and her attorney to pay Twitter $112,531.43 in attorneys' fees and costs associated with the motion to compel and motion for sanctions, to be split evenly between them. ECF No. 129 at 2; *see also* ECF No. 125 at 7. Though that payment was due on May 4, Twitter has not received it, further defiance of the Court's Orders that will be the subject of a separate request for contempt. Zelinger Decl. ¶ 30.

(refusing to answer questions about copyright registration process and whether Photographs were "works made for hire"); *id.* at 390:25-391:13 (refusing to answer questions about DMCA takedown notices).

Given Plaintiff's violations of the Sanctions Order, and pursuant to the Magistrate Judge's specific request (ECF No. 125 at 8), Twitter submitted a Proposed Report and Recommendation on April 8, 2022, which sets forth the additional evidentiary preclusion sanctions expressly contemplated by the Sanctions Order based on this further obstruction. ECF No. 136. The Proposed Report and Recommendation asks that Plaintiff be precluded from (1) introducing or relying on any purported agreement or communications with Derek Riker and any withheld copyright registrations or other registration-related documents; and (2) offering any testimony in this case related to (a) any purported agreement, communications, or employment relationship with Mr. Riker and (b) her copyright registrations. *Id.* at 8-9. The Proposed Report and Recommendation remains pending before the Magistrate.

Even absent additional preclusion sanctions, however, Plaintiff's failure to prove ownership is clear. As discussed below, the record is bereft of any agreement, communication, document, testimony, or other form of admissible evidence that could establish Plaintiff's ownership of the Photographs as works made for hire, on any theory. SUFCL 71.

## III.   ARGUMENT

A "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); SUFCL 49. "On an issue as to which the nonmoving party will have the burden of proof [at trial], . . . the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Rivers*

1  *v. Skate Warehouse, LLC*, No. CV 12-9946 MMM (CWx), 2013 U.S. Dist. LEXIS

2  206824, at *19-20 (C.D. Cal. Dec. 20, 2013); *Soremekun v. Thrifty Payless, Inc.*,

3  509 F.3d 978, 984 (9th Cir. 2007) (same); SUFCL 50.

4       **A.**     **Plaintiff Has the Burden of Establishing Her Ownership of the**

5       **Photographs as Works Made For Hire**

6       "To be entitled to sue for copyright infringement, the plaintiff must be the

7  'legal or beneficial owner of an exclusive right under a copyright.'" *Silvers v. Sony*

8  *Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (citing 17 U.S.C. § 501(b))

9  (citation omitted); *accord Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,

10  361 (1991); SUFCL 53. Copyright ownership is both "a substantive element of the

11  infringement claim" and "a necessary predicate for standing to bring the claim."

12  *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 986 (9th Cir.

13  2017); *accord Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013);

14  SUFCL 54. It is the copyright plaintiff's burden to prove ownership. *See DRK*, 870

15  F.3d at 986; *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 962 (9th Cir.

16  2011); SUFCL 55.

17       Copyright ownership "vests initially in the author . . . of the work." 17 U.S.C.

18  § 201(a); SUFCL 57 "As a general rule, the author is the party who actually creates

19  the work, that is, the person who translates an idea into a fixed, tangible expression

20  entitled to copyright protection." *Reid*, 490 U.S. at 737 (citing 17 U.S.C. § 102(a));

21  *accord Garcia v. Google, Inc.*, 786 F.3d 733, 743-44 (9th Cir. 2015) (en banc) (actor

22  was not "author" of motion picture because she "never fixed her acting performance

23  in a tangible medium"); SUFCL 58 .

24       In the case of a photograph, the photographer is the one who fixes the image,

25  and thus it is generally understood that the photographer (rather than the subject of

26  the photograph) is the author—and the initial copyright owner—of the photographs

27  they take. *See, e.g.*, *Rivers*, 2013 U.S. Dist. LEXIS 206824, at *23 (undisputed that

28

professional photographer authored photographs he took of plaintiff); *Sisyphus Touring, Inc. v. TMZ Prods., Inc.*, 208 F. Supp. 3d 1105, 1111 (C.D. Cal. 2016) (videographer was presumptive author of video he shot of actor); *Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-cv-01842-JST, 2014 U.S. Dist. LEXIS 75345, at *13 (N.D. Cal. June 2, 2014) (ownership vested in professional photographer for "image *of* Plaintiff" but "not created *by* Plaintiff"); *Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1008  (N.D. Ill. 2000) ("[u]nder normal circumstances, a photographer is the author of his or her photographs."); *Bell v. Maloney*, No. 1:16-cv-01193-RLY-DLP, 2019 U.S. Dist. LEXIS 192125, at *14 (S.D. Ind. May 23, 2019) (same); *accord Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884); SUFCL 59.

Here, it is undisputed that Mr. Riker—a professional photographer—took each of the Photographs. *See* Ex. 1 at 119:14-19; Ex. 2 at 98:12-99:2, 107:13-108:25, 120:24-121:11; *see also supra* at 5 (describing Riker's work in creating the Photographs, including choosing how to operate the camera and developing and retouching the Photographs); SUFCL 10, 12. Mr. Riker is therefore presumptively the "author" of those Photographs. SUFCL 59. Plaintiff has never suggested otherwise. Instead, her theory is that she owns copyright in the Photographs as "works made for hire" under Section 201(b) of the Copyright Act. 17 U.S.C. § 201(b); *see* Ex. 4 at 15; Ex. 6 at 20; Ex. 12 at 55-56; SUFCL 22. That theory requires Plaintiff to prove that the Photographs were either "specially ordered or commissioned" pursuant to a written work-made-for-hire agreement or that Mr. Riker was Plaintiff's employee and acting "within the scope of his . . . employment" when he took them. 17 U.S.C. § 101; SUFCL 61, 64.

This Court has already precluded Plaintiff from relying on the statutory presumption of ownership under 17 U.S.C. § 410(c). ECF No. 127 at 2; SUFCL 35. It is therefore her burden to proffer affirmative evidence establishing her ownership

of the Photographs as works made for hire. *See Rivers*, 2013 U.S. Dist. LEXIS 206824, at \*24; *cf. Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021) ("Because a 'work made for hire' is a statutory exception to the general rule of author-ownership of copyright, the party claiming the exception bears the burden of proving that the exception applies."); SUFCL 55-56, 60.[10] Because she cannot do so, Twitter is entitled to summary judgment. *See, e.g.*, *Rivers*, 2013 U.S. Dist. LEXIS 206824, at \*29 (granting summary judgment and dismissing copyright claim with prejudice where plaintiff failed to proffer evidence of ownership and "lack[ed] standing to assert" claim); *Sisyphus*, 208 F. Supp. 3d at 1112 (same); SUFCL 71.

**B.   Plaintiff Cannot Establish That the Photographs Were Commissioned Works**

There are only two ways a work can be a work made for hire under the Copyright Act: (1) it can be created by an "employee within the scope of his or her employment"; or (2) it can be "specially ordered or commissioned for use as a contribution to a collective work . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101 (defining "work made for hire"); SUFCL 61, 64. As discussed above, Ms. Morton has vacillated inconsistently between these two theories. Her initial ownership story was that the Photographs were *commissioned*—"as part of contributions to collected works (i.e. a calendar that was printed and sold in hard

---

[10] Plaintiff would be unable to raise a triable issue of fact regarding ownership even if she had not been precluded from relying on the statutory presumption under Section 410(c). That presumption is rebuttable, *see Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1218 (9th Cir. 1997), and even if applied, the undisputed facts—combined with Plaintiff's serial obstruction of discovery into ownership—would more than suffice to rebut it. *See, e.g.*, *Rivers*, 2013 U.S. Dist. LEXIS 206824, at \*24 (to rebut presumption of ownership based on registration, defendant must "simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement," including by attacking the plaintiff's ownership claim).

-12-

copies).” Ex. 6 at 20 (DMCA takedown notice asserting Photographs were commissioned); Ex. 12 at 55-56; SUFCL 28.

This theory fails because Plaintiff cannot establish that the Photographs were “specially ordered or commissioned” pursuant to a signed “written instrument.” *Rivers*, 2013 U.S. Dist. LEXIS 206824, at *21 (citation omitted); *accord Oddo v. Ries*, 743 F.2d 630, 634 (9th Cir. 1984) (“a contribution to a collective work will be considered a work made for hire only if the parties expressly so agree in a written instrument.”); SUFCL 38-39, 63. The written instrument required for a work-made-for-hire agreement needs to be “signed prior to the date the works came into existence.” *Rivers*, 2013 U.S. Dist. LEXIS 206824, at *25; *accord Sisyphus*, 208 F. Supp. 3d at 1112 (“[a]llowing the writing instrument to be executed after the work is created would defeat the purpose of the statute in requiring a written instrument altogether”); *Gladwell Gov't Servs., Inc. v. Cnty. of Marin*, 265 F. App'x 624, 626 (9th Cir. 2008) (“The plain language [of § 101] of the [Copyright Act] indicates that a work-for-hire agreement cannot apply to works that are already in existence.”); SUFCL 62.

Here, Plaintiff has failed to come forward with any evidence that she and Mr. Riker entered a written work for hire agreement before the Photographs were taken. SUFCL 37-39. Plaintiff certainly has not produced any such agreement, notwithstanding multiple direct orders from the Magistrate Judge. Zelinger Decl. ¶¶ 7-8, 12-13; SUFCL 32, 41, 43. Nor has she produced any documents that even hint at the existence of such an agreement. Zelinger Decl. ¶¶ 12-13.

Moreover, neither Ms. Morton nor Mr. Riker could testify that any prior written agreement ever existed. SUFCL 38-39. Plaintiff testified that “I don't recall” whether she and Mr. Riker executed an agreement before the Borneo photoshoot. Ex. 1 at 245:8-15; SUFCL 38. To the extent one did exist, Ms. Morton did not remember who drafted it (Ex. 1 at 248:1-2), what the document might have said (*id.*

-13-

at 252:24-253:17), whether it included the words "commissioned," "employee," "copyright," "ownership," or "work for hire" (*id.* at 260:17-262:4), or whether Mr. Riker even signed it. *Id.* at 252:14-17; SUFCL 38. Mr. Riker similarly testified that "I don't remember" whether a prior written agreement ever existed. Ex. 2 at 88:23-89:13; SUFCL 39. He further testified that he typically did *not* sign written agreements before a photoshoot when, as with Ms. Morton, he had an existing relationship with the client and had photographed them before. Ex. 2 at 90:6-17; SUFCL 40.

In an unsigned discovery response, Plaintiff vaguely claimed that she and Mr. Riker executed some kind of an agreement before the Borneo photoshoot, but that Plaintiff's copies of that supposed agreement were lost, first, in "a hard drive failure in 2019" and then on a "cargo ship in 2020." Ex. 14 at 71-72; SUFCL 41. There is no indication that this supposed agreement was a work for hire agreement, but in any event Plaintiff's unverified responses are inadmissible on summary judgment. *See Blevins v. Marin*, No. 11-cv-03475-KJN P, 2013 U.S. Dist. LEXIS 153157, at *4 (E.D. Cal. Oct. 11, 2013) (discovery answers "must be verified—that is, bear plaintiff's signature attesting under penalty of perjury that his responses are true and correct—in order to be an admissible form at summary judgment or trial"); *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1212 (N.D. Cal. 2017) (same, and holding that unsigned discovery responses submitted in opposition to summary judgment were inadmissible); SUFCL 51.[11]

---

[11] Of course, if there actually had been a prior written agreement that was lost, it would stand to reason that Plaintiff would have asked Mr. Riker if he had a copy of it, since that agreement was directly relevant to the threshold issue of ownership and this Court directed Plaintiff to produce it multiple times. But Mr. Riker could not recall Plaintiff ever asking him if he had a copy. Ex. 2 at 192:14-17. Instead, according to Plaintiff's (inadmissible) unsigned response, she had Mr. Riker "sign[] another agreement acknowledging the existence of a previous agreement when Plaintiff was in process of registering the copyrights." Ex. 14 at 72; SUFCL 41 That

(continued...)

1    This case is similar to *Rivers* and *Sisyphus*, both of which granted summary

2    judgment to defendants on ownership. *See Rivers*, 2013 U.S. Dist. LEXIS 206824,

3    at *29; *Sisyphus*, 208 F. Supp. 3d at 1112. In *Rivers*, the plaintiff claimed that "he

4    owns a copyright in the photographs pursuant to a work for hire arrangement, and

5    that his copyright registration certificate is *prima facie* evidence of that ownership."

6    *See Rivers*, 2013 U.S. Dist. LEXIS 206824, at *23. But there, as here, the plaintiff

7    "adduced no evidence that he . . . signed a written agreement prior to the date

8    Barefoot took the photographs." *Id.* at *26. He therefore "failed to raise triable issues

9    of fact concerning his ownership of the images pursuant to a 'work for hire'

10   arrangement." *Id.*

11   The ownership issue in *Sisyphus* likewise "turn[ed] on the written instrument

12   requirement." *Sisyphus*, 208 F. Supp. 3d at 1111. The plaintiff claimed that it had an

13   oral agreement with a videographer prior to a video shoot that the plaintiff would

14   own the copyright to the video. *Id.* It also claimed that a written agreement signed

15   three months *after* the video shoot confirmed the prior oral agreement. *Id.* The court

16   held that the after-the-fact agreement was insufficient because "the written

17   instrument for a work made for hire needs to be executed before the work is created."

18   *Id.* at 1112.

19   This case is even easier. There is not a shred of evidence that the Photographs

20   were commissioned under a written work-made-for-hire agreement, much less one

21   executed and signed before those works were created.[12] SUFCL 38-39. No triable

22   issue exists on this point.

23   ───────────────────

24   purported make-up agreement has never been produced either (in direct defiance of

     the Magistrate's orders), and at her deposition Plaintiff flatly refused to answer any

25   questions about it. Ex. 1 at 274:1-282:2, 294:11-24; SUFCL 32, 37, 41, 43.

26   [12] There is another problem: commissioned works-for-hire must be for one of the

27   specific purposes enumerated in Section 101. *Reid*, 490 U.S. at 738. Here, however,

     while Plaintiff has claimed that the Photographs were commissioned "as part of

28                                                                      (continued...)

### C.     Plaintiff Cannot Establish That Mr. Riker Was Her Employee When He Took the Photographs

As discovery proceeded, Plaintiff abandoned her commissioning theory—despite it having been asserted under penalty of perjury in her attorney's DMCA takedown notice to Twitter (Ex. 6 at 20)—and instead claimed ownership on the theory that Mr. Riker was her employee and took the Photographs "within the scope of his . . . employment," 17 U.S.C. § 101. *See* Ex. 13 at 67; SUFCL 29. But this story has the same problem: Plaintiff has offered no evidence that any such employment relationship existed, and the facts that are in the record make clear that Mr. Riker was ***not*** Plaintiff's employee. SUFCL 70. There is no triable issue of fact on this theory either.

In an unverified interrogatory response served ***one minute*** before the close of discovery, Plaintiff asserted that Mr. Riker conducted the Borneo photoshoot pursuant to an "employment agreement that provided Ms. Morton would retain all copyrights to the photographs that were taken in association with the project." Ex. 13 at 67; SUFCL 30. But this unsigned interrogatory response is not admissible evidence. *See* Fed. R. Civ. P. 33(b)(3), (5); *e.g.*, *Wilson*, 260 F. Supp. 3d at 1212; *Lafferty v. Liu*, No. C17-0749RSM, 2018 U.S. Dist. LEXIS 158158, at *10-11 (W.D. Wash. Sept. 17, 2018) ("Mr. Lafferty's unsigned and unsworn discovery response is inadmissible and insufficient to create a question of fact."); SUFCL 51.

And there is no other evidence of any such agreement. Plaintiff produced no documents reflecting, or even hinting at, the existence of an employment agreement between her and Mr. Riker. *See* Zelinger Decl. ¶¶ 12-13; SUFCL 43, And at her deposition, Ms. Morton was unable to recall entering into any written agreement

---

contributions" to a "collective work" (a calendar; *see* Ex. 12 at 55-56), at her deposition she could not even identify *which* of the Photographs were supposedly commissioned. SUFCL 42; Ex. 1 at 340:16-341:2 (Plaintiff testifying "I don't know" which Photographs in at-issue @SpyIRL Tweet were commissioned).

with Mr. Riker, whatsoever, before the photoshoot (Ex. 1 at 245:8-15; SUFCL 38), and she simply refused to answer questions about whether he was her employee (Ex. 1 at 283:10-289:18, 291:15-293:7). And Mr. Riker similarly testified that he could not recall any written agreement (Ex. 2 at 87:14-23, 88:4-15, 88:23-89:13, 89:21-90:5; SUFCL 39) or *ever* discussing an employment relationship in advance of any photoshoot with Ms. Morton (Ex. 2 at 44:4-11, 44:21-45:2, 188:20-189:3; SUFCL 45). Indeed, he had no recollection of the last time he was ever someone else's employee. Ex. 2 at 39:21-40:1, 41:10-16; SUFCL 46.

Further, the evidence that exists makes clear that Mr. Riker was not *acting* as an employee when he took the Photographs. SUFCL 70. Under Section 101, whether the creator of a work was acting as an employee is determined by the "general common law of agency." *Reid*, 490 U.S. at 740-41; SUFCL 65. The Supreme Court rejected the idea that an employment relationship exists "whenever the hiring party retains the right to control the product" or "when the hiring party has actually wielded control with respect to the creation of a particular work." *Reid*, 490 U.S. at 738-39; SUFCL 66. Instead, courts must "consider the hiring party's right to control the manner and means by which the product is accomplished," based on a number of factors. *Reid*, 490 U.S. at 751-52; SUFCL 67.

Applying that test in *Reid*, the Court found that a sculpture was not "made for hire" because Reid, the sculptor, was acting as an independent contractor, not an employee. 490 U.S. at 753. Though the petitioners (CCNV) "directed enough of Reid's work to ensure he produced a sculpture that met their qualifications," that was "not dispositive" and all other relevant "circumstances weigh[ed] heavily against finding an employment relationship." *Id.* at 752. Specifically, Reid engaged in a "skilled occupation," "supplied his own tools," worked "in his own studio" without daily supervision, had "freedom to decide when and how long to work," and was paid for the "completion of a specific job, a method by which independent

contractors are often compensated." *Id.* at 752-53 (citation omitted). CCNV also "did not pay payroll or Social Security taxes, provide any employee benefits, or contribute to unemployment insurance or workers' compensation funds." *Id.* at 753.

So too here, the evidence that is in the record makes clear that Mr. Riker was a quintessential independent contractor, not Ms. Morton's employee. SUFCL 70. He is engaged in a skilled occupation (he is a professional photographer) (SUFCL 12), and he testified that Plaintiff entrusted him, because of his skill and experience, to take, develop, and retouch (or edit) the Photographs. Ex. 2 at 107:25-108:11; SUFCL 14 (Riker chose how to operate the camera); Ex. 2 at 101:2-12, 104:9-12, 104:20-105:3; SUFCL 15 (Riker developed the digital negatives); Ex. 2 at 99:8-13; SUFCL 16 (Riker retouched the Photographs). Mr. Riker also used his own camera and supplied his own software and editing tools. Ex. 2 at 109:16-21, 110:3-10; SUFCL 14 (Riker chose camera); Ex. 2 at 100:10-16; SUFCL 17 (Riker chose software). He had freedom to decide when and where he developed and retouched the Photographs. Ex. 2 at 105:16-106:14; SUFCL 18. And he worked for other clients while he was developing Plaintiff's photographs. Ex. 2 at 169:8-16; SUFCL 20. All of this points decisively away from employee status. *See Reid*, 490 U.S. at 753-54; *accord Softketeers, Inc. v. Regal W. Corp.*, No. SACV 19-519 JVS (JDEx), 2019 U.S. Dist. LEXIS 171240, at *13 (C.D. Cal. May 6, 2019) (independent contractor where creator did "highly skilled work" in independent facility on equipment not supplied by defendant); *Johannsen v. Brown*, 797 F. Supp. 835 (D. Or. 1992) (plaintiff was independent contractor because he created the work in his own studio, used his own tools, and controlled his work schedule).

On top of that, Mr. Riker was paid a percentage of future profits attributable to the Photographs, *not* a salary. Ex. 2 at 112:4-113:9; Ex. 1 at 255:20-256:1; SUFCL 21. That method of compensation is typical for independent contractors. *See Reid*, 490 U.S. at 752-53*; Livingston v. Morgan*, No. C-06-2389 MMC, 2007 U.S. Dist.

LEXIS 55605, at *8 (N.D. Cal. July 25, 2007) ("where the creator of a work receives royalties as payment, that method of payment generally weighs against finding a work-for-hire relationship"); *Fairview Dev. Corp. v. Aztez Custom Homebuilders, LLC*, No. CV-07-0337-PHX-SMM, 2009 U.S. Dist. LEXIS 16501, at *22 (D. Ariz. Mar. 3, 2009) (creator was independent contractor where he was paid "a sum dependent on completion of a specific job, a method by which independent contractors are often compensated" (citation omitted)); *see also* Restatement (Second) of Agency § 220 cmt. j (payment "by the job" rather than "by the hour" weighs against existence of an employment relationship); SUFCL 69.

Finally, there is no evidence that Ms. Morton provided Mr. Riker any employment benefits or treated him as an employee for tax purposes. *See Jou v. Accurate Research, Inc.*, 73 F. App'x 964, 966 (9th Cir. 2003) (plaintiff not employer where she "did not treat the programmers as 'employees' for tax purposes" or provide employee benefits); *Johannsen*, 797 F. Supp. at 841 (independent contractor where defendants did not provide benefits or pay payroll or social security taxes). Indeed, Mr. Riker testified that he was never given a W-2 tax form (for payrolled employees) (SUFCL 47), and suggested that he may have been given a Form 1099 (for independent contractors). Ex. 2 at 45:3-45:15; *cf. Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992) ("provision of employee benefits" and "tax treatment of the hired party" are factors that "should be given more weight in the [employee-independent contractor] analysis, because they will usually be highly probative of the true nature of the employment relationship"); SUFCL 68.

At her deposition, Plaintiff flatly refused to answer basic questions about the purported employment relationship with Mr. Riker, including questions bearing on virtually all of the *Reid* factors. *See, e.g.*, Ex. 1 at 289:9-18 (refusing to answer whether Riker was a W2 employee or 1099 worker); *id.* at 286:19-287:5, 288:4-8 (refusing to discuss Riker's tax treatment); *id.* at 287:6-13 (refusing to discuss

workers compensation insurance); *id.* at 288:9-288:12, 289:2-6 (refusing to discuss supervision of Riker's work); *id.* at 288:13-289:1 (refusing to discuss whether Plaintiff provided Riker with editing or other equipment); *id.* at 292:19-24 (refusing to discuss whether Riker could work on other projects). Plaintiff's stonewalling only confirms there is no triable issue of material fact on employment. Having refused to testify, Plaintiff cannot now tell a new story to try to evade summary judgment. *See, e.g., United States v. Hansen*, No. 05cv0921-L(CAB), 2006 U.S. Dist. LEXIS 54496, at *17-19 (S.D. Cal. May 31, 2006) (precluding party from "creat[ing] triable issues of material fact" on subjects it refused to discuss at deposition); SUFCL 52.

In sum, Plaintiff cannot point to any admissible evidence to establish that the Photographs were "prepared by an employee within the scope of . . . employment." 17 U.S.C. § 101. *See Jou*, 73 F. App'x at 965 (9th Cir. 2003) (affirming summary judgment where plaintiff could not establish employer-employee relationship); SUFCL 70. Every relevant fact confirms that Mr. Riker acted as an independent contractor. No reasonable jury could find on this record that Mr. Riker was Plaintiff's employee or that the Photographs were created as works made for hire.[13] SUFCL 71.

## IV.    CONCLUSION

Plaintiff has no evidence to carry her burden of proving that she owns the copyrights in the Photographs at issue. Plaintiff thus lacks standing to sue for copyright infringement and has no viable infringement claim. Because there is no

---

[13] Because the Photographs are not works made for hire, the only way Plaintiff could have obtained ownership is if Mr. Riker transferred his copyrights to her in a signed writing executed before the alleged infringements occurred. *See* 17 U.S.C. §§ 201(d), 204(a). But Plaintiff has never even tried to rely on this theory, and it is clear she could not do so. No agreement purporting to transfer ownership was produced, nor were any other documents (or admissible evidence) even suggesting that such an agreement exists. And Mr. Riker testified that he was not aware of any such agreement. Ex. 2 at 200:17-201:3.

1    triable issue of fact on this threshold issue, Twitter is entitled to summary judgment

2    on all of Plaintiff's remaining claims.

3

4                                        Respectfully submitted,

5    Dated:  May 5, 2022                 WILSON SONSINI GOODRICH & ROSATI
                                         Professional Corporation
6

7                                        By: /s/ _____ *Victor Jih* _____

8                                                     Victor Jih

9                                        *Attorney for Defendant Twitter, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28