JENNIFER HOLLIDAY, ESQ. (SBN 261343)
jhollidayesq@protonmail.com
1901 Ave. of the Stars, 2nd Floor
Los Angeles, California 90067
dir. (805) 622-0225

*Attorney for Plaintiff Genevieve Morton*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

|  |  |
|---|---|
| GENEVIEVE MORTON, an individual,<br><br>　　　　　Plaintiff<br><br>　　v.<br><br>TWITTER, INC., a Delaware Corporation; et. al.; Does 1-100,<br><br>　　　　　Defendants.<br><br><br><br>(Consolidated with 2:21-cv-07145) | No.  2:20-CV-10434-GW (JEM)x<br><br>**PLAINTIFF'S NOTICE OF OPPOSITION TO DEFENDANT TWITTER, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>**HON. GEORGE H. WU**<br><br>COURTROOM: 9D |

PLAINTIFF GENEVIEVE MORTON OPPOSES Twitter's Motion for Summary Judgment as a factual dispute over ownership of the copyrights is at issue, and Plaintiff is entitled to a jury trial on her claims.  Twitter has also failed to meet its evidentiary burden.  Pursuant to the Court's Standing Order, Plaintiff submits a Statement of Genuine Disputes of Law and Fact and a Request for an Evidentiary Ruling.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Specifically, Plaintiff objects to the Declaration of Eve Zelinger under Fed. R. Civ. P. 56(c)(4); Exhibits 1 and 2; Exhibit 3 for lack of foundation as the document has not been produced to Plaintiff; Exhibits 6-15 for lack of foundation and hearsay.  Ms. Morton does not object to Exhibits 4 or 5, the Copyright Certificates she produced, and <u>she should be entitled to rely on the safe harbor under 17 U.S.C. 411(c).</u>  Plaintiff notes that the evidence submitted by Ms. Zelinger contradicts the representations that Twitter, Inc. made to Magistrate Judge McDermott prior to his recusal for financial conflicts with Twitter. In seeking case-terminating evidentiary sanctions, Twitter represented to the Court that Ms. Morton defied five court orders and produced no responsive documents.  This is clearly false and contradicted by the record and this Motion as detailed further in the concurrently filed documents

Respectfully submitted,

__/s/_____

JENNIFER HOLLIDAY, ESQ.

Attorney for Plaintiff Genevieve Morton

MORTON V. TWITTER, INC.
NOTICE OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

JENNIFER HOLLIDAY, ESQ. (SBN 261343)
       jhollidayesq@protonmail.com
1901 Ave. of the Stars, 2nd Floor
Los Angeles, California 90067
dir. (805) 622-0225

*Attorney for Plaintiff Genevieve Morton*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

|  |  |
|---|---|
| GENEVIEVE MORTON, an individual,<br><br>Plaintiff<br><br>v.<br><br>TWITTER, INC., a Delaware Corporation; et. al.; Does 1-100,<br><br>Defendants.<br><br><br><br><br>(Consolidated with 2:21-cv-07145) | No.  2:20-CV-10434-GW (JEM)x<br><br>**PLAINTIFF'S REQUEST FOR EVIDENTIARY RULING ON SPECIFIED OBJECTIONS IN OPPOSITION TO DEFENDANT TWITTER, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>**HON. GEORGE H. WU**<br><br>COURTROOM: 9D |

## <u>REQUEST FOR EVIDENTIARY RULING ON SPECIFIED OBJECTIONS</u>

PLAINTIFF GENEVIEVE MORTON hereby requests an evidentiary ruling in connection with documents filed by Defendant Twitter, Inc. in connection with its

Motion for Summary Judgment.  The objections should be sustained and the Motion denied under Fed. R. Civ. P. 56(c)(4).

Specifically, Plaintiff objects to the Declaration of Eve Zelinger under Fed. R. Civ. P. 56(c)(4); Exhibits 1 and 2; Exhibit 3 for lack of foundation as the document has not been produced to Plaintiff; Exhibits 6-15 for lack of foundation and hearsay.  Ms. Morton does not object to Exhibits 4 or 5, the Copyright Certificates she produced, and she should be entitled to rely on the safe harbor provision.  Plaintiff notes that the evidence submitted by Ms. Zelinger contradicts the representations that Twitter, Inc. made to Magistrate Judge McDermott prior to his recusal for financial conflicts with Twitter. In seeking case-terminating evidentiary sanctions, Twitter represented to the Court that Ms. Morton defied five court orders and produced no responsive documents.  This is clearly false and contradicted by the record and this Motion.  Exhibit 14, for example, demonstrates that Plaintiff complied with the January 12, 2022 order, submitting a document within ten days on January 22, 2022.

Plaintiff therefore requests an evidentiary finding on the following:

| EVIDENTIARY ITEM | LOCATION, DOC NAME, DOC NUMBER, PAGE, LINE | BASES FOR THE OBJECTION |
|---|---|---|
| Declaration of Eve Zelinger | Page ID #4900-4906 | Per Federal Rule of Civil Procedure 56(c)(4) a declarant must be competent to testify on the matters stated.  The declaration used to support the motion must be made on personal knowledge and set out facts that would be admissible in evidence. Fed. R. Civ. P. 56(c)(4).  See also *Bank Melli Iran v. Pahlavi*, 58 |

2

| | | |
|---|---|---|
| 1 | | F.3d 1406, 1412–13 (9th Cir. |
| 2 | | 1995).   See also: *See Pittman v.* |
| | | *Inc. Vill. of Hempstead*, 49 F. |
| 3 | | Supp. 3d 307, 311 (E.D.N.Y. |
| 4 | | 2014) (observing that despite the |
| | | requirement that a declarant have |
| 5 | | personal knowledge of the matters |
| 6 | | stated, attorneys will often |
| | | improperly submit summary |
| 7 | | judgment declarations for the |
| 8 | | purpose of introducing documents |
| | | into the record). |
| 9 | | |
| 10 | | As set forth with specificity |
| | | further herein, Ms. Zelinger is not |
| 11 | | competent to testify regarding |
| 12 | | matters about which she does not |
| | | have personal knowledge.  Ms. |
| 13 | | Zelinger nevertheless attempts to |
| 14 | | lay a foundation for documents |
| | | and communications about which |
| 15 | | she does not have direct personal |
| 16 | | knowledge regarding the facts of |
| | | the matters asserted in violation of |
| 17 | | Fed. R. Civ. P. 56(c)(4). |
| 18 | | |
| 19 | | To the extent that these documents |
| | | were produced by her client, |
| 20 | | Twitter, Inc., Ms. Zelinger can |
| 21 | | only competently testify to the |
| | | fact that they were produced in |
| 22 | | discovery, not to their authenticity |
| | | or to the facts asserted therein. |
| 23 | | |
| 24 | | Many documents also appear to be |
| | | duplicative of documents that |
| 25 | | Plaintiff included with the |
| 26 | | Complaint, and Ms. Zelinger's |
| | | inclusion of the documents |
| 27 | | Twitter produced indicates an |
| 28 | | |

3

1    effort to support the false claims
2    that Plaintiff was obstructive.

3    **PARAGRAPHS 6-13:** Plaintiff
4    objects to all improper testimony
     about Ms. Morton's alleged
5    discovery conduct; this is not a
6    motion for sanctions, and the
     statements are <u>inadmissible as</u>
7    <u>evidence of a material fact dispute</u>
8    <u>in violation of Fed. R. Civ. P.</u>
     <u>56(c)(4).</u>
9

10   Incidentally, Ms. Zelinger testifies
     about discovery misconduct that is
11   <u>controverted</u> by not only the
12   record, but also by the documents
     Ms. Zelinger includes as Exhibits
13   to this Motion. For example, Ms.
14   Zelinger states under penalty of
     perjury that Plaintiff "did not
15   produce a single document in
16   response to the Court's Orders."
     [Page ID# 4902, line 7-8].  (Ms.
17   Zelinger then includes evidence
18   Ms. Morton produced ((e.g. the
     Copyright Registration Certificate,
19   Ex. 4, Plaintiff's Ex. 00015
20   produced August 13, 2021 in
     response to the Court's Order of
21   Aug. 3, 2021 [ECF 53] - which
22   also ordered Twitter to disclose
     information about the users – it
23   has not disclosed all information
24   in its possession and objected to a
     subsequent DMCA subpoena.)
25

26   In Paragraphs 14 – 29, Ms.
     Zelinger includes improper
27   testimony about evidence obtained
28   by or provided by the Defendant

---

4

| | | |
|---|---|---|
| | | Twitter, Inc., and Ms. Zelinger does not have personal knowledge about the truth or accuracy of the matters asserted, only that Twitter produced the material during discovery.<br><br>Lastly in Paragraph 30, Ms. Zelinger improperly includes a paragraph about a sanction issue that has no bearing on the Motion, and Plaintiff objects under Rule 56(c)(4).  This material is improperly included to prejudice Ms. Morton. (See below)<br><br>This Declaration was submitted in bad faith and to delay the trial date of July 12, 2022, and Plaintiff asks the Court to consider sanctions under Fed. R. Civ. P. 56(h). |
| EXHIBIT 1 | MORTON TRANSCRIPT | Objection to the transcript under Rule 30.<br><br>Although Ms. Morton objects to the transcript for reasons stated herein, the transcript supports a finding that there is ample evidence of a factual dispute regarding ownership.<br><br>Ms. Morton claims to own the copyrighted works based on hiring a photographer, Mr. Riker, in Borneo to photograph her in photoshoots for a calendar. Mr. Riker acknowledges Ms. Morton hired him for a project in Borneo, paid all expenses for the photoshoots, paid him for years |

5

under their agreed terms, and that it was understood between the parties that Ms. Morton owned the copyrights. Twitter disputes Ms. Morton's ownership. **Thus, a factual dispute exists that precludes granting summary judgment.**

Note: this deposition was compelled. After Twitter failed to cooperate at the first deposition of Ms. Morton and refused to participate in a Rule 26(f) Conference or extend the Protective Order, Twitter filed a Motion to Compel Ms. Morton's deposition which was *denied.* The Magistrate Judge found Ms. Morton's conduct in waiting for the Court to resolve the jurisdictional issue to be "reasonable." Plaintiff was ordered to cooperate in resetting the deposition when the issue of jurisdiction of Twitter International Company was resolved. On January 3, 2022, this Court heard oral argument on whether Twitter International Company should be dismissed from the action for lack of jurisdiction. The minute order reflects that Twitter International was dismissed, but Plaintiff was afforded until January 17, 2022 to amend the Complaint. Thus, the jurisdictional issue was not resolved.

| | | | Prior to the resolution of the jurisdictional issue, Twitter began urging Morton to reset the deposition in advance of the resolution of the jurisdictional issue. |
|---|---|---|---|
| | | | Twitter then represented to the Magistrate Judge that Ms. Morton did not respond to e-mails on January 12, 2022 (*still* prior to the resolution of the jurisdictional issue) and that Ms. Morton was therefore in contempt of the Magistrate Judge's Order (on a motion that they *lost*).  Thereafter, Twitter filed a Motion to Compel Sanctions on the discovery cutoff date on the basis that Ms. Morton had defied court orders. |
| | | | Twitter admitted not having conducted the Rule 37 Conference.  The Magistrate Judge granted the seven-hundred-page motion on March 17, 2022, but he recused himself from the case several weeks later acknowledging investments in Twitter's largest shareholders. |
| | | | Twitter successfully compelled the deposition of Morton in bad faith and on false representations to the Court. Plaintiff asks that the Court strike the deposition or postpone the ruling on admissibility pending Plaintiff's Rule 60(b) Motion for Reconsideration of the Magistrate's Orders.  Twitter |

7

| | | |
|---|---|---|
| | | should not benefit from its misconduct.  Although all of the contents of the deposition transcript are favorable to Ms. Morton's case, this should *not* set any precedent for acceptable discovery conduct in a copyright case.<br><br>Twitter has claimed it has not completed the deposition of Ms. Morton, and therefore, Ms. Morton has not had an opportunity to check or redact the document. Twitter filed it in violation of the Protective Order. |
| EXHIBIT 2 | RIKER TRANSCRIPT | Objection: Fed. R. Civ. P. 30 / Fed. R. Civ. P. 45.<br><br>FRE 701: Plaintiff objects per Rule 701 to any of Mr. Riker's opinion testimony that calls for an expert.  For example, Twitter relies on Mr. Riker's testimony as a lay witness that professional photography is a "skilled profession."   Whether photography is a "skilled profession" for purposes of an analysis of whether Mr. Riker was an independent contractor or an employee is a legal conclusion for which Mr. Riker is not competent to testify under F.R.E. 701.<br><br>The Court would need to have testimony on this point from an expert witness under F.R.E. 702. However, Mr. Riker does not dispute that Ms. Morton is the |

rightful owner, so the Court need not reach that question.

Plaintiff objects under Fed. R. Civ. P. 30 to this deposition transcript as the deposition was ordered in an abuse of discretion. It should be deemed inadmissible as it was compelled by an Order issued after discovery cutoff by the Magistrate Judge who had undisclosed financial conflicts with Twitter's largest shareholders.

Ms. Morton was diligent in attempting to alert the Court to the fact that Twitter, Inc. had not issued a lawful subpoena of Mr. Riker, a non-party. However, the following day, on February 8, 2022, three days prior to discovery cutoff, without oral argument, any opportunity to be heard, or even a response from Twitter, Inc., Magistrate Judge *struck* Ms. Morton's Motion to Quash the <u>unsigned</u> Rule 45 subpoena Twitter purportedly served on Mr. Riker. [See ECF 108, Doc. ID #1971]

The subpoena <u>did not even include information on how to attend the virtual deposition</u>. The subpoena purported to call for a document production according to an attachment, but Twitter did not include any attachment.  The subpoena was riddled with mistakes and facial errors, and

9

Twitter withheld it from Plaintiff's counsel in bad faith and in violation of Rule 45 which requires that it be sent to Plaintiff in advance of service.

Twitter represented to the Court that Mr. Riker refused to attend – despite not including information on *how* to attend, what to produce, or even signing the subpoena.

When Ms. Morton's counsel inquired, Twitter unreasonably and in bad faith *withheld* the subpoena from Plaintiff's counsel to avoid any accountability and to thwart Ms. Morton from bringing it the Court's attention in advance of the discovery deadline on February 11, 2022. <u>Twitter expressly (and falsely) stated Ms. Morton was not entitled to a copy of the subpoena.</u>

Morton filed a Motion to Quash within days - in the last week of discovery. Without Twitter even responding to the Motion, the Magistrate Judge struck the Motion for failing to comply with Local Rule 37.

Less than a week later, Twitter filed a Motion to Compel Sanctions (that did not include information about the subpoena) that did not comply with Local Rule 37, and the Magistrate Judge granted the Motion over Plaintiff's objections – ultimately

recommending not only evidentiary sanctions but also six figure attorney's fees – including billing by a New York-based attorney who is not a Member of the State Bar of California, had not disclosed to this Court that he had joined Twitter's team, and had not even filed an application to be admitted *pro hac vice* in violation of Local Rules.

As a part of its Order, the Magistrate Judge <u>compelled the deposition of Mr. Riker *without* Twitter even requesting this specific relief.</u>  The parties were in the process of creating a Joint Stipulation pursuant to Rule 37 on the very issue of Mr. Riker's deposition when the Court suddenly ordered it *sua sponte* to occur within ten days – not affording Ms. Morton the opportunity to be heard.

Ms. Morton immediately took steps to comply with the Order, and her deposition was conducted in New York on the following Thursday, and Mr. Riker's deposition was conducted across the country in Los Angeles on the Monday - in haste to comply with the Order.  Despite the compliance and Ms. Morton's efforts to timely comply with the order, Twitter <u>sought the evidentiary sanction anyway</u>, claiming Ms. Morton's conduct has been obstructive.  Twitter's

11

| | | game is to distract and delay in bad faith, and it should be absolutely obvious to the Court by now.<br><br>Twitter's failure to observe multiple Local Rules and the Federal Rules of Civil Procedure has been rewarded again and again in this case to the extreme prejudice of Ms. Morton and the photographer she employed. |
|---|---|---|
| EXHIBIT 3 | Plaintiff's "Borneo 2016" Certificate of Registration | The introduction of this evidence is issue dispositive: **Ms. Morton is the registered copyright holder.** The motion should be denied. Twitter cannot simultaneously preclude Ms. Morton from relying on its contents while relying on its contents.<br><br>Objection: Foundation. Twitter claims it received this document from the Copyright Office but it has not been produced to Plaintiff. Plaintiff has not examined the original document. (However, this document reflects that Ms. Morton is the owner of the copyright, a fact favorable to Plaintiff.).<br><br>The Certificates of Registration have been included as exhibits on the record in this case, and it is unclear why Twitter did not simply use the Certificates on the record (except to advance their bad faith argument that Plaintiff refused to produce discovery). |

| EXHIBIT 4 | Plaintiff's "Borneo" Certificate of Registration (PLAINTIFF'S EXHIBIT 00015) | No objection.<br><br>Note: This document contradicts Twitter's representations that Plaintiff was obstructive.  Plaintiff produced evidence of ownership and registration in response to Twitter's discovery requests. |
| --- | --- | --- |
| EXHIBIT 5 | Plaintiff's "Borneo 2017" Certificate of Registration, which Plaintiff produced on August 13, 2021 with Bates number 00014 | No objection<br><br>Note: This document also contradicts Twitter's representations that Plaintiff was obstructive.  Plaintiff produced evidence of ownership and registration in response to Twitter's discovery requests. |
| EXHIBIT 6 | Plaintiff's DMCA Takedown Notices submitted to Twitter, which Twitter produced in this proceeding on February 10, 2022 with Bates number TWITTER 00000833. Exhibit 6 includes the three DMCA Takedown Notices (Nos. 0155741360, 0155742748, and 0155743889) submitted by Plaintiff's attorney on May 19, 2020 in relation to the three @SpyIRL Tweets, and the two DMCA Takedown Notices | Objection:  Hearsay; foundation. (Plaintiff submitted versions of these documents with the Complaint.)<br><br>Ms. Zelinger is incompetent to testify as to the accuracy or the contents of the documents because she lacks personal knowledge.  Ms. Zelinger is incompetent to testify that Plaintiff's counsel submitted these documents.  Ms. Zelinger is only competent to testify that Twitter produced these documents on the day before fact cutoff, over a year after Plaintiff filed the Complaint.<br><br>(Note: these documents indicate that:<br>1)   Twitter acknowledged that Ms. Morton submitted a valid DMCA Takedown Notice and |

| | | |
|---|---|---|
| | (0166017783, 0172275586) submitted by Plaintiff's attorney on July 23, 2020 and September 10, 2020, respectively, in relation to the two @city_tits Tweets. | 2) Twitter acted on it, acknowledging Ms. Morton's ownership; and<br>3) The copyrighted images actually appeared on Twitter<br>4) Twitter had the right and ability to control access to the images and exercised it – prompting the user to post a fourth Tweet falsely stating that Morton "copyrighted my images").<br><br>Twitter used their own foundationally-deficient exhibits as opposed to the ones Plaintiff attached to the Complaint. |
| EXHIBIT 7 | Bates number TWITTER 00000821, which includes an email Twitter sent to Plaintiff's counsel on May 19, 2020 confirming that the images in one of the three at-issue @SpyIRL Tweets were taken down in response to a DMCA Takedown Notice (No. 0155741360) submitted by Plaintiff's attorney. | Objection:  Hearsay; foundation.<br><br>Ms. Zelinger is incompetent to testify as to the accuracy or the contents of e-mails Twitter sent to Plaintiff's counsel.  Ms. Zelinger is only competent to testify that Twitter produced them in discovery.<br><br>(Note: these documents indicate that:<br>5)  Twitter acknowledged that Ms. Morton submitted a valid DMCA Takedown Notice and<br>6) Twitter acted on it; and<br>7) The copyrighted images actually appeared on Twitter<br>8) Twitter had the right and ability to control access to the images and exercised it |

14

| | | |
|---|---|---|
| | | – prompting the user to post a fourth Tweet falsely stating that Morton "copyrighted my images").<br><br>Morton attached versions of the documents to the Complaint, and it is therefore unclear why Twitter has used versions that lack foundation. |
| EXHIBIT 8 | Bates number TWITTER 00000823, which includes an email Twitter sent to Plaintiff's counsel on May 19, 2020 confirming that the images in one of the three at-issue @SpyIRL Tweets were taken down in response to a DMCA Takedown Notice (00155742748) submitted by Plaintiff's attorney. | Objection:  Hearsay; foundation.  Ms. Zelinger is incompetent to testify as to the accuracy or the contents of e-mails her client generated and sent to Plaintiff's counsel. Ms. Zelinger is only competent to testify that Twitter produced them in discovery.<br><br>Morton attached versions of the documents to the Complaint, Twitter has used versions that lack foundation. |
| EXHIBIT 9 | Bates number TWITTER 00000825, which includes an email Twitter sent to Plaintiff's counsel on May 19, 2020 confirming that the images in one of the three at-issue @SpyIRL | Objection:  Hearsay; foundation.<br><br>Ms. Zelinger is incompetent to testify as to the accuracy or the contents of e-mails her client generated and sent to Plaintiff's counsel. Ms. Zelinger is only competent to testify that Twitter produced them in discovery.<br><br>Morton attached versions of the documents to the Complaint, and |

MORTON V. TWITTER, INC.
PLAINTIFF'S REQUEST FOR EVIDENTIARY RULING ON SPECIFED OBJECTIONS

| | | |
|---|---|---|
| | Tweets were taken down in response to a DMCA Takedown Notice (0155743889) submitted by Plaintiff's attorney. | it is therefore unclear why Twitter has used versions that lack foundation. |
| EXHIBIT 10 | Bates number TWITTER 00000827, which includes an email Twitter sent to Plaintiff's counsel on October 28, 2020 confirming that the image in one of the two at-issue @city_tits Tweets was taken down in response to a DMCA Takedown Notice (0166017783) submitted by Plaintiff's attorney. | Objection:  Hearsay; foundation.<br><br>Ms. Zelinger is incompetent to testify as to the accuracy or the contents of e-mails her client generated and sent to Plaintiff's counsel. Ms. Zelinger is only competent to testify that Twitter produced them in discovery.<br><br>Note: this document unequivocally supports Plaintiff's allegations in both *Morton I and Morton II.*  Nevertheless, it must have a proper foundation. |
| EXHIBIT 11 | Bates number TWITTER 00000829, which includes an email Twitter sent to Plaintiff's counsel on October 19, 2020 confirming that the image in one of the two at-issue @city_tits Tweets was taken down in response to a DMCA Takedown Notice (0172275586) submitted by Plaintiff's attorney. | Objection: Hearsay; Foundation<br><br>Ms. Zelinger is incompetent to testify as to the accuracy or the contents of e-mails her client generated and sent to Plaintiff's counsel. Ms. Zelinger is only competent to testify that Twitter produced them in discovery.<br><br>Note: this document supports Plaintiff's allegations in both *Morton I and Morton II.* Nevertheless, it must have a proper foundation. |

16

MORTON V. TWITTER, INC.
PLAINTIFF'S REQUEST FOR EVIDENTIARY RULING ON SPECIFED OBJECTIONS

| EXHIBIT 12 | Plaintiff's Supplemental Responses to Twitter's First Set of Requests for Admission Nos. 1-15, served January 22, 2022. | Objection: foundation The document includes a term "PHOTOGRAPHS" that is not defined in the document but was previously defined by Twitter in earlier discovery requests to which Plaintiff timely objected. Exhibit 12 consists also of **Responses to Requests for Production** and they are verified and were timely produced in response to the Court's Order of January 12, 2022. **This document also shows that Twitter falsely represented to the Court that Plaintiff did not comply with the Court Order of January 12, 2022. Note: Plaintiff maintains that she sent verified responses. These "unverified" documents should have been discussed in a Local Rule 37 Conference in advance of a Motion for Sanctions – Plaintiff could have corrected any errors, although she believes there were no errors. |
| EXHIBIT 13 | Plaintiff's unverified Supplemental Responses to Twitter's Interrogatories Nos. 12, 13, and 15, served by Plaintiff at 11:59 P.M. on February 11, 2022. | Objection:  hearsay, foundation. The document appears to be part of supplemental discovery responses produced in compliance with the Court's Order of January 12, 2022 and are dated January 21, 2022; they were verified with the signature page submitted with |

17

| | | the other discovery responses concurrently produced. |
|---|---|---|
| EXHIBIT 14 | Plaintiff's unverified Supplemental Response to Twitter's Request for Production No. 12, served by Plaintiff, after the close of fact discovery, on February 12, 2022. | Objection: Hearsay, Foundation This document appears to be dated January 22, 2022 and is part of the package of discovery responses produced pursuant to the Court's Order of January 12, 2022. It is verified on the last page by Ms. Morton's electronic signature.<br><br>Twitter claims that Plaintiff violated *five* court Orders, but this document was clearly produced in response to the Order of January 12, 2022, contradicting Twitter's representation to the Court to secure evidentiary and monetary sanctions which should be set vacated. |
| EXHIBIT 15 | Plaintiff's unverified Responses to Twitter's Interrogatories Nos. 12-17, served by Plaintiff on August 28, 2021 | Objection: Foundation<br><br>P. 153-1 Twitter improperly uses this exhibit to illustrate Plaintiff's "stonewalling," a fact that is not at issue in this motion. |
| Decl. of Eve Zelinger, ECF 153-2, p. 7; (p. 4906) ¶ 30 | Paragraph 30. Judge McDermott's April 4, 2022 Order (ECF No. 129) directed Plaintiff and her attorney to pay, by separate checks to be sent directly to Twitter's outside | Magistrate Judge McDermott was disqualified at the time he issued the Order due to financial conflicts of $10,000,000 in Twitter's largest shareholder; Twitter's failure to observe Local Rule 7-1.  The Order is subject to review and vacatur. |

MORTON V. TWITTER, INC.
PLAINTIFF'S REQUEST FOR EVIDENTIARY RULING ON SPECIFED OBJECTIONS

counsel, Twitter $112,531.43 in attorneys' fees and costs by May 4, 2022 (i.e., within 30 days of the Order). That deadline has now passed, and Twitter has still not received the Court-ordered payment from either Plaintiff or her attorney.

The Supreme Court has held that a monetary discovery sanction in a civil case must, in all instances, bear a causal relationship to the wrongful conduct – even if egregious circumstances are present. *Goodyear Tire and Rubber Co. v. Haeger*, 581 U.S. ___ (2017). Twitter did not need to incur any of these attorney fees – if it had participated in a Rule 26(f) Conference, any motion to compel sanctions would have been obviated. It refused to do so in bad faith.

Twitter insists that litigants file in California. It then hires out-of-state counsel and refuses to observe Local Rules. Twitter's failure to conduct a reasonable investigation into the claims, its refusal to attend discovery conferences and refusal to conduct a Rule 26(f) conference post-consolidation is the actual and proximate cause of filing motions to compel in bad faith. Plaintiff never had an opportunity to appear on *any* of the discovery motions. Twitter's counsel assessed fees that it seeks to impose on Plaintiff that could have been avoided entirely if Twitter had cooperated in good faith by sending qualified counsel to conferences and resolving disputes in good faith.

The U.S. Supreme Court has held that even where a

19

| | | discovery sanction was imposed in a definite amount, it is not immediately appealable. *Cunningham v. Hamilton Cty.*, 527 U.S. 198 (1999) Plaintiff intends to appeal the Order if it is not vacated and reviewed *de novo* pursuant to Rule 60(b). |

Respectfully submitted,

__/s/_____

JENNIFER HOLLIDAY, ESQ.

Attorney for Plaintiff Genevieve Morton

MORTON V. TWITTER, INC.
PLAINTIFF'S REQUEST FOR EVIDENTIARY RULING ON SPECIFED OBJECTIONS

JENNIFER HOLLIDAY (CBN 261343)
jhollidayesq@protonmail.com
1901 Avenue of the Stars, 2nd floor
Los Angeles, CA 90067
(805)622-0225

ATTORNEY FOR PLAINTIFF GENEVIEVE MORTON

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| GENEVIEVE MORTON,<br><br>      Plaintiff,<br><br>  v.<br><br>TWITTER, INC. et al.,<br><br>      Defendants. | Case No. 2:20-cv-10434-GW(KSx)<br>(c/w 2:21-cv-07145-GW(KSx))<br><br>**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO DEFENDANT TWITTER'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: AUGUST 29, 2022<br>Crtrm: 9D<br><br>The Honorable George H. Wu |

Pursuant to Fed. R. Civ. P. 56, L.R. 56-1, and this Court's Standing Order Re Summary Judgment Motions, Plaintiff Genevieve Morton ("Morton") respectfully submits this Statement of Genuine Disputes in Opposition to Twitter's Motion for Summary Judgment.

## I.     FACTS

| No. | Uncontroverted Fact | Supporting Evidence[1] | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTED EVIDENCE |
|-----|--------------------|----------------------|----------------------------------------------------------------|
| **Background & the Parties** | | | |
| 1 | Plaintiff Genevieve Morton is a professional model. | Compl. (ECF No. 2) ¶ 1. | **UNDISPUTED** – (In addition to being a professional model, Ms. Morton was named the Sexiest Woman in the World by a leading men's magazine and had appeared in *Sports Illustrated Swimsuit Issue* for a record six times. Despite multiple offers, Ms. Morton had never posed nude. Ms. Morton is also a Verified User on Twitter and the holder of exclusive rights under the Copyright Act of pictorial works registered with the Copyright Office. Compl. ECF No. 2, ¶ 25 |
| 2 | Twitter is an online social media service that allows users to post and interact with messages known as "Tweets." | *Morton II* Compl. (ECF No. 1) ¶ 16. | **DISPUTED**; The party named in this action is "Twitter, Inc.," a publicly traded company on the New York Stock Exchange that, together with Twitter International Company (now defunct) operates Twitter.com, and grosses annual revenue in excess of $3.5 billion from various revenue streams including collecting and selling user data and advertising. Compl. ECF No. 2 ¶ 2. |

---

[1] This case involves two separate complaints that were consolidated by the Court into a single action. *See* ECF No. 62. Citations to "*Morton II*" refer to 2:21-cv-07145-GW(-KSx). All other citations refer to 2:20-cv-10434-GW(-KSx) (*Morton I*).

-2-

| | | | | It is engaged in the business of content delivery, advertising, and the collection and sale of data.  ECF No. 2 ¶ 19; |
| | | | | Twitter, Inc. is a data broker who sells private user data, incorporating it into its own advertising model. ECF No. 2, ¶ 72; 74 (See also *United States v. Twitter, Inc.*, 3:22-cv-03070, N.D.Ca); Twitter has agreed to pay $150,000,000; Litigation is pending. |
| | | | | Twitter, Inc. also owns and operates a CDN, and it is a data collector and broker, and at the time of the infringement, was the parent company of MoPub, a mobile advertising agency.  Twitter admits this in its Statement of Uncontroverted Facts, referring to Twitter, Inc.'s social media service (Twitter.com) as "Twitter's platform" thereby recognizing that the platform is but one part of Twitter, Inc. or "Twitter". (See this document ¶¶6, 8] |
| | | | | See also *Morton I* Compl. [ECF 2] ¶19. |
| | 3 | Users who post Tweets can include images in those Tweets of their own choosing. | *Morton II* Compl. ¶¶ 16, 26-27. | **DISPUTED**; The images displayed in the Tweets are altered by Twitter's AI crop tool technology, and thus the final image displayed is altered by Twitter, Inc's products; |
| | | | | *Morton II*: [ECF 1] ¶ 29: "Defendant Twitter, Inc., and/or its subsidiaries, had access to the Infringed Images through Twitter user @city_tits who embedded the Infringed Images, and |

-3-

| | | | | |
|---|---|---|---|---|
| | | | | Twitter used the Saliency Algorithm to crop and alter the Infringed Images without<br>Ms. Morton's authorization.<br><br>Twitter, Inc. owns and operates Magic Pony Technology, Inc. (*Morton II*, RFA Set One, #9);<br><br>Twitter, Inc. developed, engineered, and deployed an artificially intelligent algorithm that cropped Plaintiff's photographic images. (*Morton II*, RFA, Set One, #31) (*Id.,* Ex. H: "Sharing Learnings about Our Image Cropping Algorithm" by Rumman Chowdhury) |
| 4 | On November 13, 2020, Plaintiff filed a complaint against Twitter based on three Tweets posted to Twitter's platform on or around May 19, 2020 by a Twitter user operating under the account name @SpyIRL. | Compl.¶ 30. | | **DISPUTED**; Plaintiff filed a complaint against *Twitter, Inc.*, unnamed Doe Defendants and SpyIRL.com <u>based on *four* Tweets posted to Twitter's platform on or about May 19, 2020 by a user operating under the account name @spyirl</u><br><br>Compl. ¶¶37; 183: Ex. C: After Twitter began to partially remove Plaintiff's Images, the @SpyIRL User posted the following Tweet: "**@genevievemorton , even though she copyrighted my images...she is a goddess who should be worshiped I<sic> suggest you go check her out...absolute perfection"**. A true and correct copy of a screenshot of this tweet is attached as Exhibit C." |

| 5 | The three at-issue @SpyIRL Tweets included a total of twelve photographs of Plaintiff that were allegedly posted without her permission. | Compl. ¶¶ 6, 8, 11, 131. | **DISPUTED:** Three of the **Four** Tweets at issue included a total of twelve photographs registered to Plaintiff with the United States Copyright Office within five years of their creation that had been copied, altered, displayed, and distributed without her permission.  The photographs are of Plaintiff's likeness, but this has no bearing on the copyright ownership, only on the state law claims under Cal. Code of Civ. Proc. 3344.

Compl. ¶ 31: "The Images had been *altered* by virtue of being cropped and resized, with the emphasis of the image on the nudity of Plaintiff rather than the broader context of the photograph itself, making the photographs appear to be more of a pornographic nature than in their original, intended fixed expression." FOURTH TWEET: Compl. Ex. A; Photos; Ex. C, ECF 2, Page ID# 75: Tweet #4.

"Photographs of Plaintiff": Twitter improperly focuses on the *subject of the photograph* (Ms. Morton) but moved to dismiss the claims related to the fact that Ms. Morton's name and likeness were used without her authorization in violation of state law. As Twitter continues to emphasize facts solely related to provisionally-dismissed claims on the basis that it was no more than a passive platform, the Court should set aside the order under Fed. R. Civ. P. 54(b) and order |
|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | | | | Twitter to answer all the claims and allegations. |
| | 6 | On September 3, 2021, Plaintiff filed a second complaint against Twitter based on two Tweets posted to Twitter's platform on or around June 18, 2020 and September 10, 2020 by a Twitter user operating under the account name @city_tits. | *Morton II* Compl. ¶¶ 16, 20, 23. | **DISPUTED**; the second complaint, filed against **"Twitter, Inc."** and **Twitter International Company** et. al. is based on **Twitter, Inc.'s direct infringement** by cropping and altering the content with its saliency algorithm.<br><br>*Morton II* Compl. ¶ 28. Defendant Twitter, Inc. developed, engineered, and deployed an artificially intelligent saliency algorithm… See also FN 2: "Theis, Lucas and Wang, Zehan. Twitter.com, Infrastructure: "Speedy Neural Networks for Smart Auto-Cropping of Images…"<br><br>*Id.* ¶ 29. Defendant Twitter, Inc., and/or its subsidiaries, had access to the Infringed Images through Twitter user @city_tits who embedded the Infringed Images, and Twitter used the Saliency Algorithm to crop and alter the Infringed Images without Ms. Morton's authorization and displayed them on Twitter, Inc.'s website, mobile application, and third-party applications and stored and cached on servers worldwide, including servers within the United States. |
| | 7 | The two at-issue @city_tits Tweets included a total of two photographs of Plaintiff that were allegedly | *Morton II* Compl.¶ 13. | **DISPUTED** – The two at-issue @city_tits Tweets included a total of two photographs that appeared to be *altered versions of photographs* registered with the United States Copyright Office at the time of the |

| | | | |
|---|---|---|---|
| | posted without her permission. | | infringement to Plaintiff within five years of their creation, and the registration certificates reflect Ms. Morton's ownership.  Tweets included altered, "flipped," cropped, resized images displayed and distributed without permission.<br><br>*Morton II*: Compl. ¶ 25. Although the Infringed Image 1 and 2 are substantially similar to Plaintiff's original images, Doe Defendant #1 @city_tits "flipped" the Infringed Images before embedding them into Tweets to avoid detection from automated copyright enforcement tools."<br><br>Compl. ¶ 29. "… Twitter used the Saliency Algorithm to crop and alter the Infringed Images… and displayed these on Twitter's website, mobile application, and third-party applications...." |
| 8 | Plaintiff's only remaining claims against Twitter in this action are for direct and secondary copyright infringement under Section 501 of the Copyright Act, 17 U.S.C. § 501. | ECF No. 30; *Morton II*, ECF No. 33. | **DISPUTED**; Also, this is also not a fact issue but calls for a legal conclusion.<br><br>Twitter, Inc. is also vicariously liable for failing to exercise the right to control the infringement to the fullest extent possible and for profiting off the infringement.<br><br>Because Twitter, Inc. altered the copyrighted works through algorithmic technology and displayed the altered works without Plaintiff's authorization, it no longer qualifies for immunity under Section 230 of the Communications Decency Act and the state law claims should not |

-7-

| | | | have been dismissed. (Other non-copyright claims must be reviewed in light of new facts and new case law.) |
|---|---|---|---|
| **Creation of the Photographs** | | | **The Calendar is also at issue** |
| 9 | There are thirteen distinct nude photographs of Plaintiff at issue in this lawsuit (the "Photographs"). | Compl. ¶ 131; *Morton II* Compl. ¶ 13. | **DISPUTED** – e.g. the collective work (i.e. the calendar) was also infringed. Compl. ¶¶ 27, 28 |
| 10 | Derek Riker took each Photograph during a photoshoot in Borneo in 2016. | Ex. 1 (Morton Tr.) at 119:7-9, 119:14-19, 102:5-13, 157:8-22, 176:22-24, 181:6-9; Ex. 2 (Riker Tr.) at 98:12-99:2, 107:13-108:25, 120:24-121:11; Ex. 13 at 68. | **DISPUTED** – each Photograph was taken in Borneo, but during different photoshoot sessions planned and coordinated by Ms. Morton. Compl. ¶ 27 (See Objection to Deposition Transcripts in Evidentiary Objections) |
| 11 | At the time of the Borneo photoshoot, Mr. Riker had over 25 years of experience as a photographer. | Ex. 2 (Riker Tr.) at 108:8-11. | **DISPUTED-** this statement misstates the fact that there were multiple photoshoots.  See No. 10, above. (See Objection to Transcript) |
| 12 | As a professional photographer, Mr. Riker is engaged in a skilled occupation. | Ex. 2 (Riker Tr.) at 101:2-12. | Objection: Mr. Riker is not qualified to offer opinion testimony.  See FRE 701 |

| | | | | (See Objection to Transcript) |
|---|---|---|---|---|
| | 13 | Plaintiff chose Mr. Riker for the Borneo photoshoot because she trusted him, he had photographed her numerous times before, and because she considered him an excellent photographer with extensive experience. | Ex. 1 (Morton Tr.) at 187:8-11, 221:7-8, 170:23-25; Ex. 2 (Riker Tr.) 107:25-108:11. | **DISPUTED**  While these factors played a part in the decision, Ms. Morton testified she also considered rights issues and percentage splits. Morton also testified that Mr. Riker's new camera was a factor in deciding who to employ.  (Also, there was more than one photoshoot).<br><br>(Objection to deposition transcript) |
| | 14 | Mr. Riker brought his own camera to the Borneo photoshoot and chose how to operate it during the photoshoot. | Ex. 1 (Morton Tr.) at 190:4-6; Ex. 2 (Riker Tr.) at 107:25-108:11, 109:16-110:2. | **DISPUTED** – Morton testified she consulted with Riker on the technical aspects of the camera and its operation and framed the shots. (Again there were multiple photo shoots).<br><br>(Objection to Deposition transcripts) |
| | 15 | Mr. Riker was responsible for developing the digital negatives of the Photographs after the photoshoot. | Ex. 2 (Riker Tr.) at 101:2-12, 104:9-12, 104:20-105:3. | **DISPUTED** – "developing the digital negatives" is not a technically accurate term. (There was more than one photoshoot). (Objection to deposition transcript) |
| | 16 | Mr. Riker was responsible for "retouching" (or editing) the Photographs after the photoshoot. | Ex. 2 (Riker Tr.) at 99:8-100:12. | **DISPUTED** – Morton testified she controlled the retouching and editing, <u>and this was one of the factors in deciding to employ Mr. Riker.</u> (Objection to deposition transcript) |

-9-

| 17 | Mr. Riker used his own software to develop and retouch the Photographs. | Ex. 2 (Riker Tr.) at 100:10-16, 109:16-21. | **DISPUTED** – factually impossible – digital photographs are not developed. (Objection to deposition transcript) |
|---|---|---|---|
| 18 | Mr. Riker decided when and where he developed and retouched the Photographs. | Ex. 2 (Riker Tr.) 105:16-106:14. | **DISPUTED** - Riker had a due date to complete editing.  Ms. Morton supervised the limited retouch. (Objection to deposition transcript) |
| 19 | Mr. Riker was not directly supervised by Plaintiff when he was developing and retouching the Photographs. | Ex. 2 (Riker Tr.) 105:16-106:14. | **DISPUTED** – Morton testified she directly supervised the editing. Objection: "Developing" is not a concept in digital photography (Objection to deposition transcript) |
| 20 | While developing and retouching the Photographs, Mr. Riker also worked for and photographed other clients. | Ex. 2 (Riker Tr.) at 169:8-16. | **DISPUTED** – It is a factual impossibility to be photographing other clients while retouching the Photographs.  It would be impossible to do both at the same time. (Objection to deposition transcript) |
| 21 | For the Borneo photoshoot, Plaintiff paid Mr. Riker a percentage of profits attributable to the Photographs, not a salary. | Ex. 1 (Morton Tr.) at 255:20-256:1, 290:12-13; Ex. 2 (Riker Tr.) at 112:4-9. | **DISPUTED** – (there were multiple photoshoots). Mr. Riker's compensation package included a percentage of the profits. Compl. ¶ 27: 27. Ms. Morton incurred significant expenses in producing photo shoots to create the Images, and incurred costs associated with the production of the photo shoot. Ms. Morton spent extensive time preparing for, shooting, editing, and creating the website and calendars for sale of the Images. Ms. Morton paid for and |

-10-

| | | | |
|---|---|---|---|
| | | | arranged Mr. Riker's travel expenses, accommodations, and incidentals.<br><br>(Objection to deposition transcript) |
| **Plaintiff's Conflicting Ownership Claims** | | | **There are no conflicting ownership claims. Plaintiff owns the copyrights. Twitter, Inc. admits this by its own conduct in its responses to DMCA Notices from Plaintiff. Twitter, Inc. did not receive any DMCA counternotice from any other claimant, and Twitter, Inc. has ignored Plaintiff's defamation claim against @SpyIRL re: the 4th Tweet in this action *Morton I*, ECF 2: (Ex. C, Page ID#75)** |
| 22 | Plaintiff claims that she owns the copyrights in the Photographs because they were created as "works made for hire." | 17 U.S.C. §§ 101, 201(b);<br><br>Ex. 6 at 20;<br><br>Ex. 12 at 55-56;<br><br>Ex. 13 at 67;<br><br>Ex. 2 (Riker Tr.) at 200:17-201:3. | **DISPUTED** – Morton claims she owns the copyrights because she is the registered owner as it appears on the Certificate of Registration.<br><br>Compl. ¶ 25: "Ms. Morton has been and remains the holder of the exclusive rights under the Copyright Act of 1976 (17 U.S.C. §§ 101 et. seq. and all amendments thereto) (the "Copyright Act") of black-and-white pictorial works ("Images") registered with the U.S. Copyright Office. The proof of registration with the U.S. Copyright Office is available both on the U.S. Copyright website and true and correct copies of screenshots of the registration are attached as Exhibit E.<br><br>17 U.S.C. § 201(b)Works Made for Hire: "In the case of a work made for hire, *the employer or other person for* |

-11-

| | | | | |
|---|---|---|---|---|
| | | | | *whom the work was prepared* is considered the author for purposes of this title, and unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all the rights comprised in the copyright." |
| | 23 | Plaintiff registered the Photographs with the U.S. Copyright Office as part of three separate group registrations of published photographs. | Compl. ¶ 25; Exs. 3-5. | UNDISPUTED |
| | 24 | The effective date of Plaintiff's "Borneo" Registration was June 8, 2020. | Ex. 4 at 15. | UNDISPUTED |
| | 25 | The effective date of Plaintiff's "Borneo 2017" Registration was June 21, 2020. | Ex. 5 at 17. | UNDISPUTED |
| | 26 | The effective date of Plaintiff's "Borneo 2016" Registration was July 28, 2020. | Ex. 3 at 10. | **DISPUTED:** The Certificate lists an effective date of July 28, 2020, but the second page of the document lists June 21, 2020.  There appears to be a mistake on the registration document which the Copyright Office must resolve. |
| | 27 | In her Borneo Registration, Plaintiff asserted | Ex. 4 at 15. | **DISPUTED:**  Ms. Morton does not assert anything in the Registration |

-12-

| | | | |
|---|---|---|---|
| | that the Photographs registered therein were "works made for hire." | | Certificate, the Copyright Office asserts facts.<br><br>(The Certificate of Registration reflects that the Copyright Office registered the works as works-made-for-hire.)<br><br>(Objection foundation) |
| 28 | In a DMCA takedown notice submitted by Plaintiff's attorney, Plaintiff's attorney claimed that the twelve Photographs included in the at-issue @SpyIRL Tweets were "commissioned . . . works." | Ex. 6 at 20;<br>Zelinger Decl. ¶ 20. | **DISPUTED** The DMCA Reports speak for themselves. Objection: Foundation.<br><br>Compl. Ex. B, ECF 2, page ID #67: "This account has posted 3 tweets containing images that are protected under copyright held by model Genevieve Morton (Twitter account @GenevieveMorton) who commissioned the works and sells them exclusively on her website.  The content of this tweet and two others are copyrighted.  Please take down the content and suspend the account."<br><br>Compl. Ex. B, ECF 2, page ID #70: "This is the third of three tweets from this account that contain photography protected under copyright registered to Ms. Morton. The images are for sale exclusively on Ms. Morton's website and this use is not authorized."<br><br>Compl. Ex. B, ECF 2, page ID #73: "Ms. Morton sells these images exclusively on her website, and this tweet (and two others posted by this account) have taken the images and posted them, infringing her copyright." |

| 29 | In response to Twitter's Requests for Admission, Plaintiff claimed that "some of the PHOTOGRAPHS were commissioned by Plaintiff" as part of "collected works" (supposedly pursuant to a work-made-for-hire agreement), while others were "taken in the course of employment by a photographer Plaintiff employed." | Ex. 12 at 55-56. | The Requests for Admission speak for themselves.<br><br>See also: Morton I, Paragraphs 26-28: "Ms. Morton elected only to pose nude in a manner whereby she could create the work…incurred significant expenses in producing photoshoots to create the Images…. spent extensive time preparing for, shooting, editing, and creating the calendars…" |
|---|---|---|---|
| 30 | In an unverified interrogatory response, Plaintiff asserted that all the Photographs were taken by Mr. Riker in Borneo pursuant to an "employment agreement that provided Ms. Morton would retain all copyrights to the Photographs that were taken in | Ex. 13 at 67. | It is impossible to determine whether Twitter seeks an admission that Plaintiff asserted a fact or the truth of the fact asserted. Plaintiff disputes that the interrogatory responses were not verified. |

-14-

| | | | |
|---|---|---|---|
| association with the project." | | | |
| **Plaintiff's Obstruction of Discovery and Sanctions** | | **Plaintiff did not obstruct discovery, and sanctions were awarded by a disqualified magistrate judge who has since recused** | |
| | | "Prior to his recusal on April 19, 2022, the Magistrate Judge acknowledged he "does not have the authority to rule on evidentiary issues that bear on the merits of the case." | |
| 31 | Magistrate Judge McDermott issued four orders requiring Plaintiff to produce documents and information related to the creation, ownership, and registration of the Photographs. | ECF No. 125 at 2-4; ECF No. 53 at 5; ECF No. 58 at 2-3; ECF No. 97 at 3-4; Zelinger Decl. ¶¶ 7, 8, 10, 12. | **This is not a factual dispute but an evidentiary issue that is inappropriate for a Motion for Summary Judgment.** Magistrate Judge McDermott was disqualified at the time the orders were issued due to financial conflicts with Twitter. [ECF 147] Ms. Morton nevertheless produced responsive documents (See e.g. Ex. 14). Magistrate Judge McDermott issued an Order August 3, 2021 commanding Twitter to disclose information about Twitter's user @SpyIRL.  To date, Twitter has not complied with the order, withholding data in its possession about the users. Twitter objected to a subsequent DMCA Subpoena after Magistrate Judge McDermott issued the order. |
| 32 | Plaintiff did not produce any agreement or other document relating to her purported | ECF No. 125 at 2-4; Zelinger Decl. ¶¶ 12-13. | **DISPUTED** Morton is entitled to the safe harbor afforded to her under 17 U.S.C. § 410 Ms. Morton initially provided the DMCA Notice and Takedown |

-15-

| | | | |
|---|---|---|---|
| | ownership of the Photographs. | | Reports, submitted to Twitter, Inc. through Twitter.com's portal and the subsequent responses she received. These documents contain the requisite DMCA 512(f) Acknowledgment regarding ownership.  See *Morton I*, ECF 2, Ex. B, Page ID #s: 66, 66, 67, 68, 69, 70, 71, 72, 73.<br><br>Ms. Morton provided the print screens from the U.S. Copyright Office showing evidence of ownership in advance of the Certificates of Registration.  See *Morton I:* Ex. E, Page ID# 78, 79, 80.<br><br>In August 2021, Morton produced an 81-page sales report.  (Plaintiff's Exhibit  0028-0118).  Morton also produced evidence of an advertisement she sent out for the collections of photographs that included a copyright notice. (Plaintiff's Exhibit 0019) |
| 33 | Plaintiff did not produce any documents reflecting her communications with Mr. Riker. | ECF No. 125 at 2-4;<br><br>Zelinger Decl. ¶¶ 12-13. | UNDISPUTED; Ms. Morton does not possess any responsive, unprivileged, relevant documents regarding the shoots which occurred six years ago, and Plaintiff timely objected to this discovery request. |
| 34 | In ruling on Twitter's Motion for Sanctions, Magistrate Judge McDermott recommended that Plaintiff be precluded from "from relying, for | ECF No. 125 at 4;<br><br>ECF No. 126 at 2-3;<br><br>ECF No. 127 at 2. | Twitter made false representations about Ms. Morton's discovery conduct to obtain the sanctions awarded by Magistrate Judge McDermott, filing a seven-hundred-page motion on the discovery cutoff date while violating L.R. 37.  In the Motion, Twitter falsely claimed Ms. |

| 1  2  3  4  5  6  7  8  9  10  11  12 | | any purpose whatsoever, on the statutory presumption of ownership that may arise from copyright registration under 17 U.S.C. § 410." | | Morton violated court orders and did not produce discovery.  Magistrate Judge McDermott recused himself from the case when presented with evidence of his financial conflicts with Twitter, and his orders are subject to vacatur. Moreover, this order is contrary to law.  Plaintiff is entitled to the statutory safe harbor. See 17 U.S.C. § 411(b)(1)(A).  See also: *Unicolors v. H&M Hennes & Mauritz, L.P.* 2022: ("411(b) does not distinguish between a mistake of law and a mistake of fact; lack of either factual or legal knowledge can excuse an inaccuracy in a copyright registration owner's safe harbor"). |
|---|---|---|---|---|
| 13  14  15  16  17  18  19  20  21  22  23  24 | 35 | This Court accepted the recommendation of Magistrate Judge McDermott and has precluded Plaintiff "from relying, for any purpose whatsoever, on the statutory presumption of ownership that may arise from copyright registration under 17 U.S.C. § 410." | ECF No. 127 at 2. | The sanction was based upon false representations made to the Court. Plaintiff concurrently files a Motion for Relief from Nondispositive Pretrial Orders. |
| 25  26  27 | 36 | Plaintiff did not produce any documents subsequent to the | Zelinger Decl. ¶¶ 12-13. | **DISPUTED**  First, the Orders are subject to vacatur.  (See above) |
| 28 | | | | |

-17-

| | | | |
|---|---|---|---|
| | March 17, 2022 Sanctions Order. | | Morton attempted to deliver a copy of the original certificates to Twitter, Inc.'s attorneys in New York on March 24, 2022, but Twitter's attorneys said their New York office was closed.  Plaintiff therefore included the documents as exhibits on file on the record. |
| | **Plaintiff Cannot Establish That the Photographs Were Commissioned** | | **Plaintiff is not required to establish that the Photographs were commissioned** |
| 37 | Plaintiff did not produce any written work for hire agreement with Mr. Riker concerning the Photographs. | Zelinger Decl. ¶ 12-13; ECF No. 125 at 2-4. | **UNDISPUTED** Objection, Fed. R. Civ. P 32(c): form. It is unclear whether Twitter is implying that Mr. Riker should be joined as a plaintiff or if Ms. Morton should supplement her copyright registration. Plaintiff was not obligated to provide any written work for hire agreement to the U.S. Copyright Office in her application to register her works, and Twitter has failed to allege any fact to trigger a referral to the Copyright Office per 17 U.S.C. § 411(c). |
| 38 | Plaintiff testified that she does not recall whether she and Mr. Riker executed a written agreement before the photoshoot in Borneo. To the extent Plaintiff and Mr. Riker executed a written agreement before the Borneo | Ex. 1 (Morton Tr.) at 245:8-15, 248:1-2, 252:24-253:17, 260:17-262:4, 252:14-17. | Objection, Fed. R. Civ. P 32(c): form, compound, vague, misstates testimony as to "Borneo Photoshoot" as there were multiple shoots. Plaintiff was not obligated to provide any written work for hire agreement to the U.S. Copyright Office to register her works.  The parties have performed as though an agreement existed.  If the Registration documents need to be supplemented, Twitter, Inc. simply needs to allege |

-18-

| | | | |
|---|---|---|---|
| | photoshoot, Plaintiff could not remember who drafted it, what the document might have said, whether it included the words "commissioned," "employee," "copyright," "ownership," or "work for hire" or whether Mr. Riker even signed it. | | what it believes is deficient or incorrect in the registration documents. |
| 39 | Mr. Riker testified that he does not recall whether he and Plaintiff entered into any written agreement prior to the Borneo photoshoot. | Ex. 2 (Riker Tr.) at 87:14-23, 88:4-15, 88:23-89:13, 89:21-90:5. | UNDISPUTED<br><br>Objection, Fed. R. Civ. P 32(c): form, vague, misstates testimony as to "Borneo Photoshoot" as there were multiple shoots. |
| 40 | Mr. Riker typically did not sign written agreements before a photoshoot when he had an existing relationship with the client and had photographed them before. | Ex. 2 (Riker Tr.) at 90:6-17. | UNDISPUTED<br><br>Objection, Fed. R. Civ. P 32(c): form. |
| 41 | Plaintiff claimed in an unverified discovery response that Mr. Riker "signed another | Ex. 14 at 72; Zelinger Decl. ¶¶ 8, 12-13. | UNDISPUTED as to the existence of a document, DISPUTED that the response was not verified.<br><br>Objection.  The discovery responses were verified.  The agreement |

-19-

| | | | |
|---|---|---|---|
| | agreement acknowledging the existence of a previous agreement when Plaintiff was in process of registering the copyrights," but that document was not produced in discovery. | | Plaintiff references is privileged and was not required to register documents. |
| 42 | Plaintiff testified that she does not know which of the four Photographs in one of the at-issue @SpyIRL Tweets were supposedly commissioned. | Ex. 1 (Morton Tr.) at 340:16-341:2. | **DISPUTED** Objection, Fed. R. Civ. P 32(c); Form, misstates testimony, misstates the record.  There are not "*four photographs in one of the at-issue@SpyIRL Tweets [that] were supposedly commissioned.*"  Ms. Morton testified she commissioned a Calendar. |
| **Plaintiff Cannot Establish That Mr. Riker Was Her Employee When He Took the Photographs** | | | **Plaintiff is not obligated to establish that Mr. Riker was her employee when he took the Photographs, only that her copyright is valid.** |
| 43 | Plaintiff has not produced any employment agreement with Mr. Riker concerning the Photographs or any other documents reflecting the | Zelinger Decl. ¶¶ 12-13; ECF No. 125 at 2-4. | **DISPUTED**; No such documents are required by the United States Copyright Office to register the copyrighted works.  Ms. Morton produced sales reports and disclosed video evidence available on Sports Illustrated's website. |

STATEMENT OF GENUINE DISPUTES RE: TWITTER'S MSJ
CASE NO. 2:20-cv-10434-GW(KSx) (c/w 2:21-cv-07145-GW(KSx))

| | | | |
|---|---|---|---|
| | existence of such an agreement. | | |
| 44 | Plaintiff testified that she does not recall discussing an employment relationship with Mr. Riker before the Borneo photoshoot. | Ex. 1 (Morton Tr.) at 231:10-17. | **DISPUTED**<br><br>Objection, Fed. R. Civ. P 32(c): form, vague, calls for a legal conclusion as to "employment" relationship, misstates testimony. Ms. Morton testified she produced the photoshoots and made all arrangements for Mr. Riker to travel to Borneo for the project and negotiated terms (i.e. paying for travel and accommodation, retention of IP rights, the parties' percentage splits, the right to supervise the editing and any retouching). |
| 45 | Mr. Riker testified that he does not recall ever discussing an employment relationship in advance of any photoshoot with Plaintiff. | Ex. 2 (Riker Tr.) at 44:4-11, 44:21-45:2, 188:20-189:3. | **DISPUTED:** once again, there was more than one photoshoot in Borneo.<br><br>Objection: Fed. R. Civ. P 32(c): calls for legal conclusion as to "employment relationship." It is self-evident that if Mr. Riker packed and boarded an airplane to Borneo to photograph Ms. Morton for her project, the parties would have had to have had some previous discussion to discuss the plan and arrangements. |
| 46 | Mr. Riker testified that he does not recall the last time he was someone else's employee. | Ex. 2 (Riker Tr.) at 39:21-40:1, 41:10-16. | Objection, Fed. R. Civ. P 32(c): form, misstates testimony and calls for legal conclusion.<br><br>Mr. Jih questioned Mr. Riker asking if Mr. Riker knew whether there is a difference between working for |

| | | | | |
|---|---|---|---|---|
| | | | | yourself and being someone else's employee.<br><br>Mr. Riker testified that he does not know "legally" the last time he was someone's employee, acknowledging he does not understand the legal definition.  This is different than stating he does not recall the last time he was someone else's employee. |
| | 47 | Plaintiff did not provide Mr. Riker with a W-2 tax form in connection with his work photographing Plaintiff. | Ex. 2 (Riker Tr.) at 45:3-45:15. | Objection, Fed. R. Civ. P 32(c): form, vague, misstates testimony, hearsay.<br><br>The transcript reflects that Mr. Jih asked the Witness if Ms. Morton had ever given him a W2, and Mr. Riker responded: "I don't… I don't believe so."  However, Mr. Jih did not define "W2" or previously contextualize the question.<br><br>Moments later, Mr. Riker responded that Ms. Morton *had* provided tax documents to Mr. Riker, but Mr. Riker could not recall if he had personally paid tax on the money or if it had been paid out by his LLC.  Mr. Riker testified that he had received tax documents and paid tax on income received from Ms. Morton for the photo shoots.  See Ex. 2: p. 45-49 |
| | 48 | Plaintiff did not obtain workers compensation insurance for Mr. Riker. | Ex. 1 (Morton Tr.) at 287:6-13. | Objection, Fed. R. Civ. P 32(c): The entirety of Ms. Morton's transcript must be considered. |

-22-

## II.    CONCLUSIONS OF LAW

| No. | Conclusions of Law | Authority | OPPONENT |
|-----|--------------------|-----------|----------|
| | **Summary Judgment Standard** | | |
| 49 | A court shall grant summary judgment when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. | Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). | **UNDISPUTED** However, the moving party is not entitled to summary judgment if there is evidence on which a jury could reasonably find for the non-moving party." *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). |
| 50 | On an issue as to which the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. | *Rivers v. Skate Warehouse, LLC*, No. CV 12-9946 MMM (CWx), 2013 U.S. Dist. LEXIS 206824, at *19-20 (C.D. Cal. Dec. 20, 2013); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). | **UNDISPUTED** Defendant has the burden of proof once Plaintiff submitted her Certificate of Registration. There is ample evidence of ownership. |
| 51 | Plaintiff's unverified discovery responses are inadmissible on summary judgment and at trial. | Fed. R. Civ. P. 33(b)(3), (5); *Blevins v. Marin*, No. 11-cv-03475-KJN-P, 2013 U.S. Dist. LEXIS 153157, at *4 (E.D. Cal. Oct. 11, 2013); | **DISPUTED** The discovery responses were not unverified. If there was a discovery issue, it should have been |

-23-

| | | | |
|---|---|---|---|
| | | *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1212 (N.D. Cal. 2017); *Lafferty v. Liu*, No. C17-0749RSM, 2018 U.S. Dist. LEXIS 158158, at *10-11 (W.D. Wash. Sept. 17, 2018). | raised before the Motion for Summary Judgment. |
| 52 | Plaintiff is precluded from raising triable issues of material fact on summary judgment on issues she refused to discuss at her deposition. | *United States v. Hansen*, No. 05cv0921-L(CAB), 2006 U.S. Dist. LEXIS 54496, at *17-19 (S.D. Cal. May 31, 2006). | **DISPUTED** (CASE CITED IS NOT BINDING ON THIS COURT) |
| | **Copyright Ownership Standards** | | |
| 53 | To be entitled to sue for copyright infringement, the plaintiff must be the legal or beneficial owner of an exclusive right under a copyright. | 17 U.S.C. § 501(b); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). | **DISPUTED** As of March 4, 2019, the Supreme Court held that to be entitled to sue for copyright infringement, a Plaintiff must have registered the copyright with the United States Copyright Office. *Fourth Estate Publ. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. ____ (2019) citing 17 U.S.C. § 411(a) (subject to two exceptions that are not relevant to this action). |

-24-

| | | | |
|---|---|---|---|
| | | | If registration is made within five years of the creation of the work, the registrant is entitled to a safe harbor presumption of validity and may use the Certificate as *prima facie* evidence of ownership. |
| 54 | Copyright ownership is both a substantive element of the infringement claim and a necessary predicate for standing to bring the claim. | 17 U.S.C. § 501(b); *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 986 (9th Cir. 2017); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013). | **UNDISPUTED** |
| 55 | It is Plaintiff's burden to prove that she owns the copyrights in the Photographs. | *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 986 (9th Cir. 2017); *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 962 (9th Cir. 2011). | **UNDISPUTED** Plaintiff offered prima facie evidence of ownership via the Certificates of Registration to meet her burden that she is the owner of the copyright as she is entitled to the safe harbor provisions of 17 U.S.C. § 410(c). If Twitter, Inc. identified an issue |

| | | | with the registration, it should have pleaded facts with particularity. |
|---|---|---|---|
| 56 | Because Plaintiff is precluded from relying on the statutory presumption of ownership under 17 U.S.C. § 410(c), it is her burden to proffer affirmative evidence establishing her ownership of the Photographs as works made for hire. | ECF No. 127 at 2; 17 U.S.C. § 410(c); *Rivers v. Skate Warehouse, LLC*, No. CV 12-9946 MMM (CWx), 2013 U.S. Dist. LEXIS 206824, at *24 (C.D. Cal. Dec. 20, 2013); *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021). | **DISPUTED** Twitter has waived its argument that Plaintiff is not the rightful owner of the copyright by failing to object to the DMCA Subpoenas Morton has served in the past 30 days while this Motion is pending. Plaintiff is entitled to the statutory safe harbor under 17 U.S.C. § 410 (c). |
| 57 | Copyright ownership vests initially in the "author" of a work. | 17 U.S.C. § 201(a). | **UNDISPUTED** |
| 58 | As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection. | 17 U.S.C. § 102(a); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *Garcia v. Google, Inc.*, 786 F.3d 733, 743-44 (9th Cir. 2015) (en banc). | **DISPUTED** The case law cited does not support the statement. Nevertheless, Ms Morton actually did create the work: a calendar containing photographs. She planned the shoots, |

| | | | | |
|---|---|---|---|---|
| 1 | | | | and she employed the photographer. |
| 2 | | | | |
| 3 | | | | *Cmty. for Creative Non-Violence v. Reid* involves competing authors in a work-for-hire sculpture, not an infringer attempting to evade liability for intellectual property theft. |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | Twitter improperly cites *Garcia v. Google* which holds that a *performer* does not have a claim to authorship of a video. |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | 59 | Mr. Riker, the photographer who took each Photograph, is presumptively the "author" of those Photographs. | 17 U.S.C. § 102(a); Ex. 13 at 68; *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *Garcia v. Google, Inc.*, 786 F.3d 733, 743-44 (9th Cir. 2015) (en banc); *Rivers v. Skate Warehouse, LLC*, No. CV 12-9946 MMM (CWx), 2013 U.S. Dist. LEXIS 206824, at *23 (C.D. Cal. Dec. 20, 2013); *Sisyphus Touring, Inc. v. TMZ Prods., Inc.*, 208 F. Supp. 3d 1105, | **DISPUTED** Mr. Riker was the photographer Ms. Morton employed for the project. |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |
| 25 | | | | |
| 26 | | | | |
| 27 | | | | |
| 28 | | | | |

| | | | | |
|---|---|---|---|---|
| | | | 1111 (C.D. Cal. 2016); *Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-cv-01842-JST, 2014 U.S. Dist. LEXIS 75345, at *13 (N.D. Cal. June 2, 2014); *Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1008  (N.D. Ill. 2000); *Bell v. Maloney*, No. 1:16-cv-01193-RLY-DLP, 2019 U.S. Dist. LEXIS 192125, at *14 (S.D. Ind. May 23, 2019); *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884). | |
| | 60 | To succeed on her copyright infringement claim, Plaintiff must prove that she owns the copyrights in the Photographs because they were created as "works made for hire." | 17 U.S.C. § 201(b); 17 U.S.C. § 101; *Rivers v. Skate Warehouse, LLC*, No. CV 12-9946 MMM (CWx), 2013 U.S. Dist. LEXIS 206824, at *24 (C.D. Cal. Dec. 20, 2013); *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021). | **DISPUTED** Ms. Morton can supplement her registration in the event of a good faith mistake in the registration. She can, for example, supplement the registration to include Mr. Riker and claim ownership via transfer. See *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941 (2022) See also *Cmty. for* |

| | | | | *Creative Non-Violence v. Reid*, 490 U.S. 730, 738-39 (1989) (remanding the case to the trial court to determine whether the parties were joint authors). |
|---|---|---|---|
| | **Work Made for Hire Standard: Commissioned Works** | | |
| 61 | A work that is "specially ordered or commissioned for use as a contribution to a collective work" will only constitute a "work made for hire" "if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." | 17 U.S.C. § 101 (defining "work made for hire"); *Rivers v. Skate Warehouse, LLC*, No. CV 12-9946 MMM (CWx), 2013 U.S. Dist. LEXIS 206824, at *21 (C.D. Cal. Dec. 20, 2013); *Oddo v. Ries*, 743 F.2d 630, 634 (9th Cir. 1984); *Sisyphus Touring, Inc. v. TMZ Prods., Inc.*, 208 F. Supp. 3d 1105, 1112 (C.D. Cal. 2016). | The Registration Certificate is proof of Plaintiff's ownership. 17 U.S.C. § 410. |
| 62 | The written instrument required for a work-made-for-hire agreement needs to be signed prior to the date the works came into existence. | *Rivers v. Skate Warehouse, LLC*, No. CV 12-9946 MMM (CWx), 2013 U.S. Dist. LEXIS 206824, at *25 (C.D. Cal. Dec. 20, 2013); *Sisyphus Touring, Inc. v. TMZ Prods., Inc.*, 208 F. Supp. 3d 1105, | **DISPUTED** – the Copyright Office does not require evidence of a work-for-hire agreement to register works as works-for-hire. |

| | | | |
|---|---|---|---|
| | | 1112 (C.D. Cal. 2016); *Gladwell Gov't Servs., Inc. v. Cnty. of Marin*, 265 F. App'x 624, 626 (9th Cir. 2008). | The parties do not dispute that Ms. Morton is the owner. |
| 63 | There is no evidence that Plaintiff's Photographs were commissioned pursuant to a signed, written work-made-for-hire agreement between her and Mr. Riker executed before the Photographs were taken. | Ex. 1 (Morton Tr.) at 245:8-15, 248:1-2, 252:14-17, 252:24-253:17, 260:17-262:4, 260:17-262:3, 252:14-17, 340:16-341:2;<br><br>Ex. 2 (Riker Tr.) at 88:23-89:13;<br><br>*Rivers v. Skate Warehouse, LLC*, No. CV 12-9946 MMM (CWx), 2013 U.S. Dist. LEXIS 206824, at *21 (C.D. Cal. Dec. 20, 2013); *Oddo v. Ries*, 743 F.2d 630, 634 (9th Cir. 1984). | There is also no evidence that they were not. The parties do not recall if they executed an agreement before the photographs were taken, but if the registration needs to be supplemented, Ms. Morton can make a change to reflect joint authorship or ownership by transfer. |
| **Made for Hire Standard: Works Prepared by Employee Within Scope of Employment** | | | |
| 64 | A work will be considered a work for hire if the work is "prepared by an employee within the scope of his or her employment." | 17 U.S.C. § 101;<br>17 U.S.C. §201(b). | **UNDISPUTED** |
| 65 | Under 17 U.S.C. § 101, whether the creator of a work was acting as an employee is determined by the general common law of agency. | 17 U.S.C. § 101;<br><br>*Softketeers, Inc. v. Regal W. Corp.*, No. SACV 19-519 JVS (JDEx), 2019 U.S. Dist. LEXIS 171240 (C.D. Cal. May 6, 2019); *Johannsen v.* | **UNDISPUTED** |

| | | | | |
|---|---|---|---|---|
| | | | *Brown*, 797 F. Supp. 835 (D. Or. 1992). | |
| | 66 | The Supreme Court rejected the argument that an employment relationship exists whenever the hiring party retains the right to control the product or when the hiring party has actually wielded control with respect to the creation of a particular work. | *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 738-39 (1989). | **UNDISPUTED, but this may have been abrogated by** ***Unicolors.*** |
| | 67 | In determining whether a person is an employee or independent contractor for purposes of the work-made-for-hire doctrine, courts consider the hiring party's right to control the manner and means by which the product is accomplished, based on a number of factors. | *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989); *Softketeers, Inc. v. Regal W. Corp.*, No. SACV 19-519 JVS (JDEx), 2019 U.S. Dist. LEXIS 171240 (C.D. Cal. May 6, 2019); *Johannsen v. Brown*, 797 F. Supp. 835 (D. Or. 1992). | **UNDISPUTED** and this is a fact sensitive inquiry. |
| | 68 | The provision of employee benefits and tax treatment of the hired party are factors that should be given more weight in the employee-independent contractor analysis, because they will usually be highly probative of the true nature of the employment relationship. | *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 731 (1989); *Jou v. Accurate Research, Inc.*, 73 F. App'x 964, 966 (9th Cir. 2003); *Johannsen v. Brown*, 797 F. Supp. 835, 841 (D. Or. 1992); *Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992). | **UNDISPUTED,** but "usually" does not indicate that the court *must* give these factors more weight. |
| | 69 | Payment for the creation of a work based on a | *Cmty. for Creative Non-Violence v. Reid*, 490 | **DISPUTED:** There is no |

| | | | |
|---|---|---|---|
| | percentage of future profits attributable to that work, rather than a salary, is typical for independent contractors and generally weighs against finding an employment relationship exists. | U.S. 730, 752-53 (1989); *Livingston v. Morgan*, No. C-06-2389 MMC, 2007 U.S. Dist. LEXIS 55605, at *8 (N.D. Cal. July 25, 2007); *Fairview Dev. Corp. v. Aztex Custom Homebuilders, LLC*, No. CV-07-0337-PHX-SMM, 2009 U.S. Dist. LEXIS 16501, at *22 (D. Ariz. Mar. 3, 2009); Restatement (Second) of Agency § 220 cmt. j. | evidence Mr. Riker was paid solely based on a percentage of future profits. |
| 70 | There is no evidence that Mr. Riker was Plaintiff's employee acting "within the scope of . . . employment" when he took the Photographs. | Ex. 1 (Morton Tr.) at 289:9-18, 286:19-287:5, 288:4-8, 287:6-13, 288:9-289:8, 292:19-24;<br>Ex. 2 (Riker Tr.) at 45:3-45:15. | **DISPUTED**<br>Mr. Riker was employed to take photographs in Borneo – this is the scope of employment. |
| 71 | Twitter is entitled to summary judgment because Plaintiff cannot establish that the Photographs were (i) specially ordered or commissioned pursuant to a work-made-for-hire agreement executed before the Photographs were taken or (ii) that Mr. Riker was Plaintiff's employee acting "within the scope of . . . employment" when he took the Photographs. | *Rivers v. Skate Warehouse, LLC*, No. CV 12-9946 MMM (CWx), 2013 U.S. Dist. LEXIS 206824, at *29 (C.D. Cal. Dec. 20, 2013); *Sisyphus Touring, Inc. v. TMZ Prods., Inc.*, 208 F. Supp. 3d 1105, 1112 (C.D. Cal. 2016); *Jou v. Accurate Research, Inc.*, 73 F. App'x 964, 965 (9th Cir. 2003). | **DISPUTED**<br>Case law does not support this finding, and it is improper in light of new authority in *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941 (2022). This is a factual dispute, and if ownership is at issue, Plaintiff can supplement her registration. |

1

2

3

4    Dated:  AUGUST 4, 2022

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

JENNIFER HOLLIDAY

By: /s/ _____ *JENNIFER HOLLIDAY*
                    JENNIFER HOLLIDAY

*Attorney for Plaintiff Genevieve Morton*